**WILENCHIK & BARTNESS**
A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone: 602-606-2810   Facsimile: 602-606-2811

Dennis I. Wilenchik, #005350
John "Jack" D. Wilenchik, #029353
admin@wb-law.com
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| AUSTIN and LOGAN FLAKE, husband and wife,<br><br>PLAINTIFFS,<br><br>v.<br><br>JOSEPH MICHAEL ARPAIO, in his official capacity as Sheriff of the Maricopa County Sheriff's Office, and in his personal capacity along with his wife AVA J. ARPAIO; MARICOPA COUNTY, by and through the MARICOPA COUNTY BOARD OF SUPERVISORS Denny Barney, Steve Chucri, Andy Kunasek, Clint Hickman, and Steve Gallardo, in their official capacities,<br><br>DEFENDANTS. | Case No. _____<br><br>**COMPLAINT**<br><br>**(Violations of 42 U.S.C. § 1983, Abuse of Process, Malicious Prosecution)**<br><br>**(JURY TRIAL DEMANDED)** |

Plaintiffs Austin and Logan Flake ("Plaintiffs"), for their Complaint against Defendants Joseph Michael Arpaio and Ava J. Arpaio, and Maricopa County, by and through the Maricopa County Board of Supervisors, hereby allege:

## JURISDICTION

1. This action is brought pursuant to 42 U.S.C. §1983 and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§1331 and 1343(a)(3) and (4) and the aforesaid statutory and constitutional provisions.

2. Plaintiffs have satisfied the provisions of A.R.S. §12-821.01 by serving upon Defendants a Notice of Claim more than sixty (60) days prior to the date of the filing of this Amended Complaint. Defendants have not responded to the Notice of Claim. The Notice of Claim is attached as Exhibit "A" hereto, and its facts and allegations are specifically incorporated by reference herein.

3. Venue is proper because the events at issue occurred in Maricopa County, Arizona.

## GENERAL ALLEGATIONS

4. Plaintiffs Austin and Logan Flake (the "Flakes") were a married couple during the time of the events described herein. A divorce proceeding was commenced on April 14, 2015.

5. At all relevant times herein, Defendants Joseph Michael Arpaio ("Arpaio," or "Sheriff Arpaio") and Ava J. Arpaio were a married couple residing in Maricopa County, Arizona. Defendant Arpaio is named in both his official capacity as the Sheriff of Maricopa County, and in his personal capacity. At all relevant times, Defendant Arpaio was acting in furtherance of his marital community.

6. Defendant Maricopa County is a political subdivision of the State of Arizona, and a person within the meaning of 42 U.S.C. § 1983. Maricopa County is formally named as a Defendant by and through its Board of Supervisors, which is comprised of Denny Barney, Steve Chucri, Andy Kunasek, Clint Hickman, and Steve Gallardo, in their official capacities. The Maricopa County Sheriff's Office ("MCSO"), a non-jural subdivision of Maricopa County, is actually responsible for the events described herein, and the Board is named as a legal fiction.

**GENERAL ALLEGATIONS**

7. In June 2014, Austin and Logan Flake were a happily married couple living in Provo, Utah, where Austin was attending Brigham Young University.

8. Austin was 21 years old, and Logan was 20. Austin expected to graduate Brigham Young University in the fall of 2015.

9. Austin Flake is the son of Senator Jeff Flake of Arizona ("Senator Flake").

10. In 2011, Defendant Arpaio publicly announced that he was contemplating a campaign against Jeff Flake for the United States Senate. Arpaio never ran.

11. Previous to June 2014, Senator Flake had publicly voiced opinions critical of the so-called "birther" movement, of which Defendant Arpaio is a prominent member. Arpaio conducted a bogus six-month investigation into the birthplace of the President of the United States, which culminated in him publicly announcing that "probable cause exist[ed]" to accuse the President of the United States of forgery and fraud.

12. Defendant Arpaio has a long history of abusing his office to conduct investigations and/or press charges without probable cause, whether for spite or publicity. His targets have ranged from ordinary people like a mailman or a police officer, to respected public officials like judges and their family.

13. In summer and fall of 2014, Defendant Arpaio and the MCSO illegally investigated and pressed felony charges against Plaintiffs without probable cause, and in violation of their constitutional rights.

14. Defendant Arpaio has made statements that he loves this case, and others like it, because the more he publicizes them, the more money that he receives in campaign contributions.

15. Defendant Arpaio knew that the Flake name would garner publicity, and publicized the criminal case against the Flakes heavily.

3

16. Arpaio specifically targeted Plaintiffs Austin and Logan Flake, partly for the benefit of harming Senator Flake, a politician who had disagreed with him on such issues as immigration and the legitimacy of the President's birth certificate.

17. Arpaio even went so far as to direct the Maricopa County Sheriff's Office to try to connect Senator Flake to the investigation of Plaintiffs.

18. In around June 2014, MCSO Deputy Chief David Trombi went through Austin and Logan Flake's phone records, specifically searching for any calls to or from Senator Flake or his wife during the time of the incident described herein. He found none.

19. On June 27th, 2014, the Maricopa County Sheriff's Office surveilled Senator Flake and his wife at their home, even though Austin and Logan Flake were out-of-state in Utah.

20. At Defendant Arpaio's direction, the MCSO intentionally and/or knowingly lied to the grand jury, and presented a theory of the case that was unsupported by reasonably trustworthy facts and circumstances.

21. At Defendant Arpaio's direction, the MCSO knowingly provided misinformation to the prosecution, omitted relevant information, and concealed exculpatory evidence.

22. These actions directly resulted in the wrongful indictment of Plaintiffs, and pretrial deprivation of their constitutional rights without probable cause, in violation of their clearly established federal constitutional rights. As a result, their reputations have been immeasurably harmed.

## Rigged Investigation

23. In June 2014, Plaintiffs were house-sitting for Logan's Flake's parents for a week. Plaintiffs were responsible for taking care of the several children who lived in the home, as well as tending to the kennel that Logan Flake's parents operated out of their home. The home regularly boarded upwards of 25 to 30 or more dogs.

4

24. At approximately 12:00 a.m. on the morning of June 20th, the air conditioning unit that serviced the kennel shut down. The temperature in the kennel rose substantially overnight. This resulted in the tragic deaths of twenty-one dogs from heat stroke in the subsequent hours, including Logan's family's dog.

25. When the Flakes discovered the animals in the early morning, they were nearly all already dead or dying. The Flakes tried to cool them down with water and ice, but to no avail.

26. On June 21st, 2014, MCSO deputies responded to calls about the deaths of the animals. The owner of the kennel and the home, Logan Flake's step-father, informed deputies that the dogs had died during the night, because the air conditioning had failed. He speculated that it might have failed because there was a wire in the room that had been chewed-through.

27. Austin Flake told deputies that when he checked on the dogs before going to bed, the room was cool, and the air conditioning was working; but that when he discovered the dogs in the morning, the room was more than 100 degrees, and the air conditioning had failed.

28. On June 22nd, a Maricopa County Sheriff's Deputy stated that it was a "horrible, tragic accident at this point."

29. On June 23rd, Defendant Arpaio put out a press release calling himself "aggressive" on "animal abuse and neglect," and promising a "full investigation."

30. At Arpaio's direction, the MCSO hired an expert on air conditioning systems, and directed the expert to investigate whether the chewed-through wire could have caused the air conditioning to fail.

31. On July 12th, 2014, the expert concluded that it was "very likely" that that the air conditioning unit shut down "completely." He concluded the cause was that the homeowners, Logan's parents, had failed to clean or replace the filters, causing the evaporative coil to freeze.

32. At Arpaio's direction, the MCSO obtained a court order for the home's electrical records.

5

33. On July 16th, MCSO Deputy Robert Walter Kalinowski received a report from the Salt River Project ("SRP") detailing the electrical usage in the home on the night of the incident and surrounding months. The report showed a 40% drop-off in electrical usage starting at around midnight on the night of the incident, as compared to every other night during that week, and the previous weeks. The usage on that night also flat-lined for hours, instead of cycling as it had on every other night.

34. Deputy Kalinowski called the Salt River Project to ask if there were any black-outs reported that night. The Salt River Project confirmed that there were no black-outs.

35. Deputy Kalinowski subsequently authored a report which falsely stated that the electrical usage on the night of the incident was "consistent" with previous days.

36. The information then known to the MCSO did not support a reasonable suspicion that a crime had been committed.

37. There was never any genuine doubt that the air conditioning had failed, directly leading to the dogs' deaths.

38. On July 18th, two days after the MCSO received the SRP report, Defendant Arpaio asked Attorney General Tom Horne, whom he was supporting for re-election, if Horne's office could potentially handle the case.

39. By law, Defendant Arpaio was required to send his cases to the Maricopa County Attorney.

40. Upon information and belief, Defendant Arpaio asked Attorney General Horne about handling the case because Arpaio believed that the Maricopa County Attorney's Office would reject it, given that there was no probable cause to suspect the commission of a crime.

41. On September 9, 2014, Defendant Arpaio held a press conference to publicly announce that he was recommending that Austin and Logan Flake be charged with 21 felony counts of animal cruelty.

42. This conference served absolutely no valid law enforcement purpose, and was held in violation of both police and prosecutorial ethics.

43. Upon information and belief, Arpaio publicly recommended charges because he intended to pressure the Maricopa County Attorney's Office into bringing charges, and to garner publicity for himself.

44. Defendant Arpaio lacked probable cause to recommend or press felony charges against the Flakes.

45. By law, animal cruelty can only be a felony if the offender "intentionally" or "knowingly" committed a crime. Even misdemeanor animal cruelty requires, at the minimum, that the offender act with a "reckless" level of intent, which is defined as "that a person is aware of and consciously disregards a substantial and unjustifiable risk."

46. Defendant Arpaio lacked any evidence to show that the Flakes acted with the requisite level of intent to commit animal cruelty. There was no evidence that the Flakes intentionally, knowingly, or recklessly meant to harm any animal or otherwise violate the animal cruelty statute.

47. Defendant Arpaio intended to signal to the media and public that the charges had merit, in order to pressure the prosecution to bring charges without probable cause. Arpaio knew that prosecutors would be accused of dropping the case because of the Flake name, rather than the complete lack of probable cause and criminal intent.

48. The media played right into Arpaio's hands, with many reporters and members of the public openly questioning whether prosecutors were reluctant to prosecute a Senator's son.

### **False Testimony to the Grand Jury**

49. On Friday, October 10, 2014, the Maricopa County Attorney's Office—under pressure as a result of Arpaio's public recommendation of felony charges—brought the case to a grand jury.

50. A Detective at the MCSO named Marie Trombi had been anxious to bring the case to a grand jury, and personally pressured prosecutors. Nine days before the grand jury proceedings, Ms. Trombi received an email from the prosecutor stating, "Case still being reviewed but if/when goes to GJ you will be the first to know. :-)"

51. Detective Marie Trombi is closely related to Deputy Chief David Trombi, who is a close confidant of Defendant Arpaio. David Trombi is also the head of the "animal crimes" unit in which Detective Marie Trombi works.

52. At Defendant Arpaio's direction, Detective Marie Trombi knowingly provided misinformation to the prosecutor, omitted relevant information, and concealed exculpatory evidence.

53. The prosecutor called Detective Marie Trombi to testify before the grand jury.

54. At Defendant Arpaio's direction, Detective Trombi lied to the grand jury, and intentionally or knowingly presented a theory of the case that was unsupported by reasonably trustworthy facts and circumstances.

55. The MCSO presented a case to the grand jury that the air conditioning never shut down; that the kennel in which the dogs were kept was always kept at "100 degrees"; and therefore that the Flakes intentionally caused serious injury to the animals by putting them in the room.

56. During the grand jury proceedings, the prosecutor conducting the proceedings asked Detective Trombi if the HVAC investigator's report indicated that the air conditioning was working.

57. Detective Trombi falsely stated that the investigators' report indicated that the air conditioning "was working."

58. In fact, the actual report stated at the top of the first page that it was "very likely" that the unit failed "completely."

59. The prosecutor twice asked Detective Trombi if the records from SRP showed that the air was "working fine all night." Detective Trombi twice answered, "yes."

60. A grand juror specifically asked Detective Trombi if the SRP records showed that "the air was working and on" during the night of the incident. Detective Trombi repeatedly answered in the affirmative:

> GRAND JUROR: I'd like to clarify also. So the air was working and on until 5:30 that morning when he tried to fix it, Austin Flake tried to fix it, correct? That's what SRP said?
>
> THE WITNESS: That's going by the SRP records, yes.
>
> GRAND JUROR: That it was on?
>
> THE WITNESS: It was on, all night.
>
> GRAND JUROR: All night?
>
> THE WITNESS: All night.
>
> GRAND JUROR: Thank you.

61. The MCSO knew that this was false, and that it was directly contradicted by clear evidence.

62. The only other witness in the grand jury proceedings was a veterinarian who worked for the MCSO named Bernard Mangone. Mangone testified that no food was found in the dogs' stomachs, and implied that the dogs were not fed. He withheld that he had determined that the dogs showed no actual signs of malnourishment, i.e. that they were in "good flesh," as he had written in his report. He also failed to testify that the lack of food in their stomachs was easily explained by the dogs vomiting and defecating while they died of heat stroke—also accounting for why the room was full of feces and vomit when they were found.

9

63. Based on the MCSO's material lies and omissions, the grand jury indicted the Flakes for 21 felony counts of animal cruelty, and 6 counts of misdemeanor animal cruelty, on Tuesday, October 14, 2014.

64. Because of the Indictment, Austin Flake was suspended from Brigham Young University.

65. The Flakes were fingerprinted and their mugshots taken, which quickly spread through the media.

66. Arpaio and the MCSO intentionally and widely publicized the Flakes' indictment, causing irreparable harm to their lives and reputations.

67. The Flakes were subjected to pretrial release conditions preventing them from leaving the State of Arizona, under penalty of arrest.

68. On December 2, 2014, the Flakes' counsel filed a Motion to Dismiss and Remand the Indictment based on the MCSO's material lies and omissions to the grand jury.

69. After an investigation into the grand jury proceedings and the circumstances alleged in the Motion, the County Attorney's Office moved to voluntarily dismiss the case on December 23, 2014.

70. At a press conference, the County Attorney remarked: "[i]t's not a complex decision. It's rather straightforward and easy for us to make – if our goal is to ensure that we arrive at a just result."

71. On May 6th, 2015, the Maricopa County Attorney's Office announced that it had indicted Logan's parents, but that it would not pursue a re-indictment of the Flakes.

72. Defendant Arpaio responded to this announcement by telling media that he was "disappointed," and without even commenting on the re-indictment of Logan's parents—making it clear that the Flakes were always his true target.

73. There was no probable cause for Defendants Arpaio and the MCSO to investigate and press felony charges against the Flakes, and they did so in violation of the Flakes' clearly established constitutional rights, causing irreparable harm.

## COUNT I
### (Violations of 42 U.S.C. § 1983: Malicious and Selective Prosecution, Abuse of Process – All Defendants)

74. Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

75. At all times material hereto, Defendants were acting under color of law.

76. The wrongful conduct of all Defendants alleged herein constitutes violations of the United States Constitution, Amendments IV, V, and XIV, and 42 U.S.C. § 1983, in that Plaintiffs were deprived of rights, privileges and immunities guaranteed to all citizens of the United States by being subjected to a malicious and selective investigation and prosecution without probable cause, with an unconstitutional motive, and with deliberate and callous indifference to their clearly-established, federally-protected rights.

77. Defendants knowingly and intentionally presented false evidence used to support criminal charges against Plaintiffs, omitted or withheld evidence, and/or presented evidence with a reckless disregard for the truth.

78. Defendants knew that there was no proper or probable cause to investigate and encourage the Indictment and prosecution of Plaintiffs.

79. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs' constitutional rights were violated, and they have suffered harm and been injured.

80. Defendant Arpaio has final policymaking authority, and made a deliberate choice to engage in conduct that violated Plaintiffs' civil rights, resulting in municipal liability.

11

81. Defendants acted for personal, political gain and publicity, and pursuant to a custom and/or practice of targeting, investigating, and prosecuting individuals without probable cause; and the constitutional deprivations and injuries sustained by Plaintiffs as described herein have been caused by such custom and/or practice.

82. Defendants were consciously aware of the wrongfulness and harmfulness of their conduct and yet continued to act in the same manner, in deliberate contravention to the rights of Plaintiffs. Punitive damages are therefore warranted.

### COUNT II
**(Malicious Prosecution – All Defendants)**

83. Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

84. Defendants initiated or procured the institution of criminal proceedings against Plaintiffs without probable cause and with malice, or primarily for a purpose other than that of bringing an offender to justice.

85. The proceedings have terminated in favor of the accused.

86. Defendants were consciously aware of the wrongfulness and harmfulness of their conduct and yet continued to act in the same manner, in deliberate contravention to the rights of Plaintiffs. Punitive damages are therefore warranted.

### COUNT III
**(Abuse of Process – All Defendants)**

87. Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

88. Defendants used the criminal legal process against Plaintiffs to accomplish a purpose for which it is not designed—to garner publicity, and to dig for information on and

12

harm a rival politician and his family. Defendants are subject to liability to the Plaintiffs for harm caused by the abuse of process.

89.  Defendants were consciously aware of the wrongfulness and harmfulness of their conduct and yet continued to act in the same manner, in deliberate contravention to the rights of Plaintiffs. Punitive damages are therefore warranted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for damages for judgment against Defendants as follows:

A. General damages in an amount to be proven at trial;

B. Punitive damages in an amount deemed just and reasonable against Defendants and others that discovery will identify as to the causes of action alleged herein;

C. Costs and attorneys' fees against Defendants as to the causes of action alleged under the Constitution and laws of the United States, pursuant to 42 U.S.C. § 1988;

D. The costs of litigation;

E. All remedies provided by 42 U.S.C. § 1983; and

F. Such other and further relief which may seem just and reasonable under the circumstances.

**RESPECTFULLY SUBMITTED** this June 19, 2015.

**WILENCHIK & BARTNESS, P.C.**

*/s/ Dennis I. Wilenchik*
Dennis I. Wilenchik, Esq.
John "Jack" D. Wilenchik, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2015, I electronically transmitted the attached document using the CM/ECF system for filing, and which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

/s/ Hilary Myers