Stephen Montoya (#011791)
**Montoya, Jimenez & Pastor, P.A.**
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
602-256-6718 (telephone)
602-256-6667 (fax)
stephen@montoyalawgroup.com

Richard Trujillo (#002730)
**Rader Lucero, PLLC**
11260 North Tatum Boulevard, Suite 143D
Phoenix, Arizona 85028
480-636-1888 (telephone)
480-393-8888 (fax)
vega@raderlucero.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Austin Flake and Logan Flake,<br><br>Plaintiffs,<br><br>v.<br><br>Joseph Arpaio, in his personal and official capacities, Ava J. Arpaio, in her personal capacity as the spouse of Joseph Arpaio, Marie Trombi, in her personal capacity, John Doe Trombi, in his personal capacity as the spouse of Marie Trombi, and Maricopa County, Arizona, a political subdivision of the State of Arizona,<br><br>Defendants. | No. CV 15-01132-PHX-NVW<br><br>**AMENDED COMPLAINT**<br><br>(Jury trial demanded) |

For their <u>Amended Complaint</u> against Defendants, Plaintiffs allege the following:

1. This is a civil action seeking to redress the violation of the rights of Austin Flake and Logan Flake under the Fourth and Fourteenth Amendments to the Constitution of the United States and the common law of Arizona.

2. Plaintiffs assert their federal claims against Defendants under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the doctrine of supplemental jurisdiction under 28 U.S.C. § 1367 as to Plaintiffs' state law claims.

3. Austin Flake is an adult male residing in Maricopa County, Arizona.

4. Logan Flake is an adult woman residing in Maricopa County, Arizona.

5. Defendant Joseph Arpaio is the Sheriff of Maricopa County, Arizona.

6. Defendant Ava Arpaio is the wife of Joseph Arpaio.

7. Sheriff Arpaio was acting for the benefit of his marital community with Ava Arpaio at all times material to this Amended Complaint.

8. Defendant Marie Trombi is a law enforcement officer who was employed by the Maricopa County Sheriff's Office as a detective at all times material to this Amended Complaint.

9. Defendant John Doe Trombi is the spouse of Marie Trombi.

10. Marie Trombi was acting for the benefit of her marital community with John Doe Trombi at all times material to this Amended Complaint.

11. Marie Trombi was acting under color of state law and within the scope of her employment with the Maricopa County Sheriff's Office at all times material to this Amended Complaint.

12. Defendant Maricopa County, Arizona is a political subdivision of the state of Arizona.

13. The Maricopa County Sheriff's Office ("MCSO") is owned and operated by Maricopa County, Arizona.

14. In his capacity as Sheriff of Maricopa County, Sheriff Arpaio is the final decision-maker regarding matters of law-enforcement in Maricopa County, Arizona.

15. Sheriff Arpaio was acting under of color of state law and within the course and scope of his office as Maricopa County Sheriff at all times material to this Amended Complaint.

16. In June of 2014, Austin and Logan Flake were a young married couple from the

East Valley of Maricopa County, Arizona living in Provo, Utah, where Austin was a student at Brigham Young University.

17. Austin was 21 years-old, and Logan was 20 years-old.

18. Austin is the son of United States Senator Jeff Flake of Arizona.

19. In late June of 2014, Plaintiffs were back in Gilbert, Arizona house-sitting for Logan's parents, Jesse and MaLeisa Hughes, who were out-of-state on a short vacation.

20. Austin and Logan were responsible for taking care of Logan's siblings, as well as tending to the dog kennel that Logan's parents operated out of their home.

21. The kennel at times boarded approximately 20 to 30 dogs for short stays.

22. In the early morning hours of Friday, June 20, 2014, the air conditioning unit that cooled the kennel unexpectedly malfunctioned and stopped working.

23. Because the air conditioning unit unexpectedly failed, the temperature in the kennel increased substantially overnight and this ultimately resulted in the tragic deaths of twenty-one dogs from heat stroke—including Logan's own family pet, "Patrick."

24. When Austin and Logan discovered the dogs at approximately 5:30 a.m. on June 20, 2014, the pets were nearly all already dead or dying from what appeared to be heat stroke.

25. Although Austin and Logan tried to cool the pets down with water and ice, their efforts were unavailing.

26. On the very next day, June 21, 2014, deputies from the Maricopa County Sheriff's Office responded to calls about the deaths of the dogs at the kennel.

27. The owner of the kennel and the home, Logan's step-father Jesse Hughes, told the deputies that the dogs had died during the night because the air conditioning unit in the kennel had unexpectedly failed. He also speculated that the unit might have failed because an electrical wire in the room may have been chewed-through by a dog.

28. Austin told the deputies that when he checked on the dogs before going to bed at around 11:00 p.m. on Thursday, June 19, 2014, the kennel was cool and the air conditioning unit was working, but that when he went back to check on the dogs early the next morning (Friday, June 20, 2014) at around 5:30 a.m., the room was more than 100 degrees and the air conditioning unit was <u>not</u> working.

29. Neither Austin nor Logan had any reason to anticipate that the air conditioning unit cooling the kennel would fail.

30. As indicated above, Austin and Logan did <u>not</u> live in the Hughes' home and were only there for the week to care for the children and dogs while the Hughes were away on vacation.

31. Austin and Logan had arrived at the Hughes' home on approximately Friday, June 13, 2014, and the air conditioning unit in the kennel had worked fine without any incident until it unexpectedly failed in the early hours of June 20, 2014.

32. Accordingly, on June 22, 2014, a Maricopa County Sheriff's Deputy acknowledged that the death of the pets was a "tragic accident . . . ."

33. However, only a day later, on June 23, 2014, Sheriff Arpaio unilaterally issued a press release (a) proclaiming himself "aggressive" on "animal abuse and neglect," (b) promising a "full investigation" in which "no stone will go unturned," (c) claiming that information "given by the owners and caretakers [was] highly suspect," and (d) identifying Logan and Austin Flake by name as the wrongdoers.

34. Sheriff Arpaio's press release falsely implied that Austin and Logan had recklessly or intentionally caused the deaths of over twenty dogs and then tried to cover it up by lying about it.

35. Sheriff Arpaio's press release brought Austin and Logan into public disrepute, contempt, and ridicule and also invaded their personal privacy.

36. Sheriff Arpaio was eager to publicly accuse the Flakes of criminal conduct in order to embarrass Senator Jeff Flake, Austin Flake's father, who had been

critical of Sheriff Arpaio's conduct in office; Sheriff Arpaio knew that his accusations of criminal conduct against Austin would garner local and national media attention to the detriment of Senator Flakes' reputation, all the while garnering favorable publicity for Sheriff Arpaio, self-described as "America's toughest Sheriff."

37. Moreover, under Sheriff Arpaio's supervision, direction, or approval, the MCSO proceeded to hire an "expert" on air conditioning systems and directed the expert to investigate whether the chewed-through wire could have caused the air conditioning to fail.

38. On July 12, 2014, after examining the evidence, the expert that the MCSO hired concluded that (a) it was "very likely" that that the air conditioning unit shut down "completely" and (b) the cause of the unit's failure was that the homeowners, i.e., Logan's parents, had failed to clean or replace the filters on the unit and dirty filters ultimately caused the unit to fail.

39. Soon thereafter, under Sheriff Arpaio's supervision and/or direction, the MCSO obtained a court order for the Hughes' home electrical usage records from the Salt River Project.

40. On July 16, 2014, MCSO Deputy Robert Walter Kalinowski received a report from the Salt River Project detailing the electrical usage in the Hughes' home on the night of the incident (June 20, 2014) and surrounding months.

41. Salt River Project's report showed a forty percent (40%) drop in electrical usage at the Hughes' home starting in the early morning hours of June 20, 2014, as compared to every other night during that week and the previous weeks.

42. The electrical usage at the home on June 20, 2014 also flat-lined for hours, instead of cycling as it had on every other night.

43. Deputy Kalinowski also asked the Salt River Project if there were any electrical "black-outs" reported in the area that night.

44. The Salt River Project responded that there were no electrical black-outs in the area that night.

45. Notwithstanding Salt River Project's report, Deputy Kalinowski subsequently authored a report which falsely stated that the electrical usage at the home on the night of the incident was "consistent" with previous days.

46. The information then known to the MCSO did <u>not</u> support a finding of probable cause that the Flakes had intentionally or recklessly harmed the deceased dogs in any way or had otherwise engaged in any criminal conduct.

47. To the contrary, the evidence indicated the air conditioning unit cooling the kennel had suddenly failed early in the morning of June 20, 2014, and that failure had directly caused the pets' accidental deaths due to heat strokes.

48. Notwithstanding this evidence, on September 9, 2014, Defendant Arpaio unilaterally held a twenty-two (22) minute press conference to publicly announce that he was "recommending" that Austin and Logan Flake be charged with twenty-one (21) felony counts of animal cruelty and several related misdemeanors.

49. Sheriff Arpaio's press conference served <u>no</u> valid law enforcement purpose and was designed to (a) pressure the Maricopa County Attorney's Office into bringing felony charges against Austin and Logan, (b) embarrass Senator Jeff Flake, and (c) garner favorable publicity for Sheriff Arpaio in Arizona and throughout the Country.

50. Sheriff Arpaio's remarks at his press conference regarding the Flakes (a) falsely implied that the Flakes were guilty of numerous felonies, (b) were factually false, (c) were in reckless disregard of the truth, and (d) constituted slander <u>per se</u> because they implied that the Flakes had engaged in serious criminal conduct.

51. Sheriff Arpaio's remarks regarding Austin and Logan at his press conference subjected Austin and Logan to public disrepute, contempt, ridicule, and repeated threats of physical violence.

52. Under pressure from Sheriff Arpaio's repeated public accusations that Austin and Logan had engaged in felonious misconduct, the Maricopa County

Attorney's Office presented the allegations against Austin and Logan to a grand jury on Friday, October 10, 2014.

53. The case that the Maricopa County Attorney's Office presented to the grand jury against Austin and Logan was based on material misrepresentations and omissions of fact made by Sheriff Arpaio and his subordinates at the MCSO.

54. For example, MCSO Detective Marie Trombi falsely told the prosecutors at the Maricopa County Attorney's Office that the air conditioning unit in the kennel "was on all night"; that the kennel was always kept at "100 degrees"; and that the Flakes recklessly and/or intentionally killed the dogs by putting them in the kennel.

55. Detective Trombi also falsely told the prosecutors at the Maricopa County Attorney's Office that the report from the Salt River Project regarding electrical consumption at the Hughes' home on June 20, 2014 showed that the air conditioning unit was "working fine all night."

56. In fact, the actual Salt River Project report indicated that electrical usage at the Hughes' home on June 20, 2014 "was not similar to the energy readings on the previous days during the same time or with following days during the same time" because it was approximately 40% lower on June 20.

57. In fact, the MCSO's own expert also concluded that it was "very likely" that the unit had failed "completely" on June 20, 2014.

58. The material misstatements and omissions of the MCSO prevented the Maricopa County Attorney's Office from exercising independent prosecutorial judgment in seeking an indictment against Austin and Logan.

59. As a proximate result of the MCSO's material misrepresentations and omissions to prosecutors, the grand jury ultimately indicted the Flakes for twenty-one (21) felony counts of animal cruelty, and six (6) counts of misdemeanor animal cruelty, on Tuesday, October 14, 2014.

60. On December 2, 2014, the Flakes' legal counsel filed a Motion to Dismiss and Remand the Indictment based on the MCSO's material misrepresentations and

omissions to the grand jury.

61. After an investigation into the grand jury proceedings and the circumstances alleged in the Flakes' <u>Motion to Dismiss</u>, the Maricopa County Attorney's Office moved to voluntarily dismiss the case against them on December 23, 2014.

62. The criminal proceedings against the Flakes terminated in their favor when the Court ultimately dismissed the State's charges on January 7, 2015.

63. There was <u>no</u> probable cause for Defendants to recommend felony charges against the Flakes to the Maricopa County Attorney's Office, and Defendants did so in violation of the Flakes' clearly established rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and the common law of Arizona.

64. Sheriff Arpaio's various public statements implying that the Flakes were animal abusers and criminals also constituted the torts of false light invasion of privacy and defamation of character under the common law of Arizona.

65. As a result of the misconduct by Defendants summarized above, the Flakes have suffered (among other things) repeated threats of physical violence, lost income, lost educational opportunities, loss of reputation, embarrassment, humiliation, fear, depression, and anxiety.

66. Pursuant to Rule 38 (b) of Federal Rules of Civil Procedure, the Flakes hereby demand a trial by jury.

**WHEREFORE**, Plaintiffs respectfully request the Court to:

    A. Issue a judgment declaring that the conduct of Defendants as described above violated Plaintiffs' rights under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the common law of Arizona;

    B. Issue preliminary and permanent injunctions against Defendants enjoining them from committing similar unlawful acts in the future;

    C. Issue a judgment awarding Plaintiffs nominal, compensatory, and punitive damages against Defendants, jointly and severally, in

amounts to be determined by the finder-of-fact at trial;

D. Issue a judgment awarding Plaintiffs reasonable costs and attorney fees against Defendants pursuant to 42 U.S.C. § 1988 and any other applicable law; and

E. Issue a judgment awarding Plaintiffs all other relief that is just and proper against Defendants under the circumstances.

Respectfully submitted this 15th day of January 2016.

**MONTOYA, JIMENEZ & PASTOR, P.A.**

s/ Stephen Montoya
Stephen Montoya
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
Attorney for Plaintiffs

**RADER LUCERO, PLLC**

s/ Richard Trujillo
Richard Trujillo
11260 North Tatum Boulevard, Suite 143D
Phoenix, Arizona 85028
Attorney for Plaintiffs

| 1 | I hereby certify that on January 15, 2016, I electronically transmitted the foregoing document to the Clerk of Court using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrant: |
|---|---|
| 2 | |
| 3 | |
| 4 | Jeffrey S. Leonard<br>Sacks Tierney, P.A.<br>4250 North Drinkwater Blvd., 4th Floor<br>Scottsdale, Arizona 85251<br>Attorneys for Defendants |
| 5 | |
| 6 | |
| 7 | |
| 8 | s/ Stephen Montoya |