Jeffrey S. Leonard (SBN 003809)
Jeffrey.Leonard@SacksTierney.com
Sharon B. Shively (SBN) 009292)
Sharon.Shively@SacksTierney.com
Evan F. Hiller (SBN) 028214)
Evan.Hiller@SacksTierney.com
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone: 480.425.2600

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Austin and Logan Flake, husband and wife,<br><br>Plaintiffs,<br>v.<br><br>Joseph Michael Arpaio; et al.,<br><br>Defendants. | No. CV-15-01132-PHX-NVW<br><br>**DEFENDANTS' BRIEF RE: USE AND DISTRIBUTION OF DEPOSITION TESTIMONY** |

## I.   INTRODUCTION

To put the legal issues addressed in this brief in perspective, it is important that the Court be aware of the following. Counsel for the parties have had negotiations concerning the proper use of information disclosed in the discovery process. For example, Flakes alleged that Austin Flake was suspended from Brigham Young University ("BYU") because of the indictment. In support of that allegation, Flakes disclosed a letter from BYU stating that the suspension due to the indictment was in addition to the academic issues that also needed to be resolved before he could be readmitted to BYU. When counsel requested a copy of Austin Flake's academic records, Flakes' counsel stated that he "will be happy consider you [sic] request after we agree on a protective order and the court signs it." *See* email dated June 15, 2016, attached hereto as Exhibit A. Shortly thereafter, counsel received a draft "Stipulation and Joint Motion for Protective Order," a copy of which is attached hereto as Exhibit B ("Draft Protective Order"). The Draft Protective Order

addressed only the Austin Flake educational records and provided that the parties agree "not to disclose these documents to any third-party for any purpose unrelated to litigating the claims and/or defenses of this lawsuit." Defendants were willing to entertain a stipulation for a protective order but believed it should cover more than just the academic records and Flakes then suggested a draft protective order that was broader and encompassed all discovery materials. *See* copy of suggested protective order attached hereto as Exhibit C.[1] While this issue was under discussion, Defendant Arpaio's deposition was noticed.

Defendant Arpaio's deposition was originally noticed by plaintiffs on June 20, for a deposition on July 14. No press coverage followed. On July 11, plaintiffs served an amended notice of defendant Arpaio's July 14 deposition, stating that the deposition would be recorded on video. Substantial press and social media coverage immediately followed. Indeed, Flakes' counsel informed undersigned counsel that he had contacted David Bodney, a well-known media attorney. He presumably did this to ensure media interest. Defendants then requested an agreement that the deposition (and this would be true of all the depositions, which included depositions of the individual defendants and the individual plaintiffs) be used only for the purposes of this litigation or otherwise in compliance with the rules of civil procedure, but not for other non-litigation purposes, such as release to the press. The request was refused.

## II. LEGAL STANDARDS GOVERNING PUBLICATION OF DEPOSITION TESTIMONY

There are generally two different bases which the Courts address when analyzing whether parties to civil litigation have a right to disseminate, in advance of trial, information gained through the pretrial discovery process: the First Amendment and the Federal Common law.

---

[1] Flake also prepared another draft protective order relating to certain portions of the grand jury transcript. *See* Exhibit D attached hereto.

2

### (A) The First Amendment Does Not Prevent A Court From Entering A Protective Order On A Showing Of Good Cause

In 1984, the United States Supreme Court addressed the issue of whether parties to civil litigation have a First Amendment right to disseminate, in advance of trial, information gained through the pretrial discovery process. *See Seattle Times v. Rhinehart*, 467 U.S. 20 (1984). The Court started with the premise that pretrial depositions and interrogatories are not public components of a civil trial, that such proceedings were not open to the public at common law, and that, in general, are conducted in private as a matter of modern practice. *Id.* at 33.

> Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovery, but not yet admitted, information are not a restriction on a traditionally public source of information.

*Id.* at 33. In *Seattle Times*, the spiritual leader of a religious group, Rhinehart, brought a court action in Washington against the Seattle Times and others, claiming that certain published stories contained statements that were false and were written to hold the spiritual leader up to public scorn, hatred and ridicule. Rhinehart moved for a protective order pursuant to Rule 26(c), Washington Rules of Civil Procedure, to prevent the news organizations from disseminating any information gained through discovery. Although initially denied, the Court reconsidered and issued the protective order for good cause shown. The order prohibited the news organizations "from publishing, disseminating, or using the information in any way except where necessary to prepare for and try the case." *Id.* at 27.

In analyzing the issue, the Court recognized that there can be a public interest in knowing more about a party to a lawsuit, including what is revealed in pretrial discovery. But the Court also made clear that a litigant does not have an unrestrained right to disseminate information that has been obtained through pretrial discovery. *Id.* at 31. Notwithstanding the impairment of First Amendment rights that a protective order may cause, a litigant has no First Amendment right of access to information made available only

1509215.v1

for purposes of trying his suit. *Id.* at 32, citing *Zemel v. Rusk*, 381 U.S. 1 (1965) ("The right to speak and publish does not carry with it the unrestrained right to gather information.")

Accordingly, the Court held that when a protective order is issued on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment. Indeed, the Court noted that an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny. *Id.* at 33.

> Rule 26(c) furthers a substantial governmental interest unrelated to the suppression of expression. . . . Liberal discovery is provided for the sole purpose of assisting the preparation and trial, or the settlement of litigated disputes. . . . It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties.

*Id.* at 34-45 (citations omitted).

### (B)  A Protective Order Issued On A Showing Of Good Cause Does Not Offend the Federal Common Law Right of Access to Information

This analysis starts with the legal principle that the public has a federal common law right of access to inspect various judicial documents; those documents **filed** with the court. *Philips v. General Motors Corp.*, 307 F.3d 1266 (9th Cir. 2002). Nonetheless, Rule 26(c) authorizes a district court to override this presumption where "good cause is shown." The issue in *Philips* was whether the strong presumption of access applies to materials **filed** with the court under seal pursuant to a valid protective order. In a case of first impression in the Ninth Circuit, the *Philips* Court agreed with numerous other Circuit Courts and stated:

> When a court grants a protective order for information produced during discovery, it already has determined that "good cause" exists to protect this information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality. Applying a strong

1509215.v1

> presumption of access to documents a court has already decided should be shielded from the public would surely undermine, and possibly eviscerate, the broad power of the district court to fashion protective orders.

*Id.* at 1213.

Importantly, the *Philips* Court was addressing "judicial documents," not unfiled depositions or other unfiled discovery documents, a critical distinction that Flakes overlook and ignore in the case they cite for support in their portion of the Joint Statement of Discovery Dispute (Doc. 80). *San Jose Mercury News v. U.S. Dist. Ct.*, 187 F.3d 1096 (9th Cir. 1999) addressed whether the public has a prejudgment right of access to **judicial records** in civil cases. "Judicial records" include pretrial documents that are *filed* in court, not depositions that are not filed. *See Apple iPod iTunes Antitrust Litigation*, 75 F. Supp. 3d 1271 (N.D. Cal. 2014). The *Apple* case noted that the Ninth Circuit had not yet squarely addressed the issue of whether to allow the public copying access to a videotaped deposition used during a civil trial and not admitted into evidence as an exhibit. The Court noted the strong judicial presumption that favors public access to judicial records, but concluded as did the Eighth Circuit in *United States v. McDougal*, 103 F.3d 651 (8th Cir. 1996), that a videotaped deposition is not a judicial record to which the common law right of public access attaches. *Id.* at 1274. Moreover the *Apple* Court noted that "even where a particular item is found to be a judicial record, and notwithstanding the presumption favoring access, courts in the Ninth Circuit must also evaluate the risk that the material at issue would be put to an improper use." *Id.* at 1273. *See also Humboldt Baykeeper v. Union Pacific Railroad,* 244 F.R.D. 560 (N.D. Cal. 2007).

While some courts, including *Philips*, have used broad language in discussing the federal common law right of access to ostensibly encompass even unfiled discovery documents, the cited decisions all addressed documents that were filed with the court -- judicial records. Indeed, the Court in *Bond v. Utreras*, 585 F.3d 1061 (7th Cir. 2009) explained that to the extent the "presumptive right of access to discovery materials"

> suggests the existence of a general public right to access the materials that

1509215.v1

litigating parties exchange in response to discovery requests, it sweeps too broadly. …while the public has a presumptive right to access discovery materials that are filed with the court, used in a judicial proceeding, or otherwise constitute 'judicial records,' the same is not true of materials produced during discovery but not filed with the court. Generally speaking, the public has no constitutional, statutory (rule-based), or common-law right of access to *unfiled* discovery.

*Id.* at 1073 (emphasis in original).

### III. THIS COURT HAS BROAD DISCRETION TO ISSUE PROTECTIVE ORDERS UNDER RULE 26(c)

District courts have broad latitude to grant protective orders to prevent disclosure of materials for many types of information. *Philips*, 307 F.3d at 1211. Rule 26(c) authorizes the district court to issue "*any* order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden." Fed. R. Civ. P. 26(c)(7). The *Seattle Times* Court interpreted this language as conferring "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times*, 467 U.S. at 36.

> The trial court is in the best position to weigh the fairly competing needs and interests of the parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders.

*Id.*

In this case, we are not dealing with "judicial records." Videotaped depositions are not judicial records. No parts have been filed with the Court. Indeed, no deposition has yet even been transcribed, no less reviewed. Accordingly, based on the above analysis, the Flakes do not have a First Amendment right to disseminate information made available to them only for purposes of trying their lawsuit. Moreover, given that the video deposition is not a "filed" judicial record, there is no federal common law right of access to third parties to unfiled discovery materials.

6

1509215.v1

## IV. CONCLUSION

In the event that this Court concludes that pretrial discovery, depositions and interrogatories are public components of civil litigation, it is respectfully requested that the Court set a briefing schedule for the Defendants to bring a Motion for Protective Order pursuant to Rule 26(c), Federal Rules of Civil Procedure. It should be noted that Defendants will simply be requesting that pretrial discovery, unfiled with the Court, should not be disseminated to third parties and should be used solely for the purposes of this litigation and preparing for trial. This request is substantially less comprehensive than the draft protective orders prepared by Flakes when Flakes desired document protection. *See* Exhibits B, C and D.

DATED this 22nd day of July, 2016.

SACKS TIERNEY P.A.

*s/ Jeffrey S. Leonard*
Jeffrey S. Leonard
Sharon B. Shively
Evan F. Hiller
Attorneys for Defendants

7

1509215.v1

## CERTIFICATE OF SERVICE

I hereby certify that on July 22nd, 2016, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Stephen Montoya
MONTOYA, JIMENEZ, LUCERO & PASTOR, P.A.
The Great American Tower
3200 North Central Avenue, Suite 2550
Phoenix, AZ 85012

Richard Trujillo
RADER, SHELDON & STOUTNER, PLLC
11260 North Tatum Blvd., Ste. 143D
Phoenix, AZ 85028
*Attorneys for Plaintiffs*

*s/ Toni Cooper*

8

1509215.v1