**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Austin Flake and Logan Flake, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>Joseph Michael Arpaio, in his official capacity as Sheriff of the Maricopa County Sheriff's Office, and in his personal capacity along with his wife Ava J. Arpaio; Maricopa County, by and through the Maricopa County Board of Supervisors Denny Barney, Steve Chucri, Andy Kunasek, Clint Hickman, and Steve Gallardo, in their official capacities,<br><br>Defendants. | No. CV-15-01132-PHX-NVW<br><br>**ORDER** |

Defendant Sheriff Joseph Arpaio seeks to prevent Plaintiffs Austin and Logan Flake from disseminating copies of his deposition in this matter. (Doc. 80.) For the reasons that follow, the request for a protective order will be denied.

**I.    BACKGROUND**

In June 2014, Austin and Logan Flake spent a week house-sitting for Logan's parents in Gilbert, Arizona. Their duties included tending to a dog kennel that Logan's

parents operated out of their home. One night, the air conditioning system that cooled the kennel failed, causing the dogs to die from heat stroke.

Days later, Maricopa County Sheriff Arpaio issued a press release describing himself as "aggressive" on animal abuse and promising a "full investigation" in which "no stone will go unturned." (Doc. 91-1 at 2.) The press release identified Austin and Logan Flake by name and described their account of the incident as "highly suspect." (*Id.* at 2–3.) Later that week, Sheriff Arpaio issued another press release stating his plans to attend a vigil for the dogs. (*Id.* at 5–6.) Weeks later, Sheriff Arpaio issued another press release describing his ongoing investigation and mentioning that the Flakes "would not return detective phone calls" and "refused to answer any questions." (*Id.* at 8–9.)

At the conclusion of his investigation, Sheriff Arpaio held a press conference and publicly recommended that the Flakes be charged with felony and misdemeanor counts of animal cruelty. (*Id.* at 14–19.) In October 2014, the County Attorney's Office presented the case to a grand jury, which issued an indictment. In December 2014, however, the County Attorney's Office voluntarily dismissed the case. Despite the dismissal, Sheriff Arpaio issued another press release assuring readers that the "case is far from over" and that "justice will be served." (*Id.* at 11.) He also issued a videotaped message online, stating that he "anticipate[s] the charges will be re-filed" and that "justice will be done." (Doc. 91-4 at 2.)

In June 2015, the Flakes sued Sheriff Arpaio for malicious prosecution and related counts. (Doc. 1.) They claim that Sheriff Arpaio had no probable cause to recommend criminal charges and that the reason he did it was to garner publicity and smear Logan Flake's father, Senator Jeff Flake. (Doc. 61.)

On June 20, 2016, the Flakes served a notice scheduling Sheriff Arpaio's deposition for July 14. No press coverage followed. On July 11, three days before the deposition, the Flakes served an amended notice specifying that the deposition would be videotaped. Substantial press and social media coverage immediately followed. For

example, on July 12 *The Arizona Republic* featured an online article entitled "Did Arpaio set up Sen. Jeff Flake's son in Green Acre case?" (Doc. 91-4 at 4.) The article describes the "heart of the question" in this lawsuit as whether Sheriff Arpaio's investigators "intentionally lied" to a grand jury or "simply did not know what they were talking about." (*Id.* at 7.) The article also identifies the date of Sheriff Arpaio's deposition and states: "That's one deposition that voters – the people who regularly pay for Arpaio's screw-ups – should see as they consider whether to re-elect him." (*Id.* at 5.)

Sheriff Arpaio asked the Flakes to agree not to release his deposition to the press. The Flakes refused. Accordingly, the parties presented the Court with a "Joint Statement of Discovery Dispute Concerning Use and Distribution of Deposition Testimony." (Doc. 80.) Essentially, Sheriff Arpaio seeks a protective order prohibiting the release of his deposition to the press and other interested persons.[1]

The parties briefed the issue. Sheriff Arpaio's brief invokes the Court's power to issue protective orders under Federal Rule of Civil Procedure 26(c) and argues that a protective order here would not offend the First Amendment or the public's common law right to access judicial records. (Doc. 90.) The Flakes' brief argues that there is no good cause for a protective order and that public interest in Sheriff Arpaio's deposition outweighs any private harm in disseminating it. (Doc. 91.)[2]

---

[1] In subsequent briefing, Sheriff Arpaio asked permission to file a separate "Motion for Protective Order." (Doc. 90 at 7.) No separate motion is necessary. Such a motion would simply argue that "pretrial discovery, unfiled with the Court, should not be disseminated to third parties." (*Id.*) Sheriff Arpaio has already presented this position in briefing and oral argument. As explained below, this position is unpersuasive in the circumstances of this case.

[2] The Flakes also oppose the issuance of a protective order as to the deposition of Detective Marie Trombi, one of Sheriff Arpaio's subordinates. (Doc. 91 at 11.) As far as the Court can tell, no such order has been requested. (*See* Docs. 80, 90.) Thus, the Court addresses only the protective order sought by Sheriff Arpaio.

At oral argument, the Court issued its decision in open court. This order documents and explains that decision.

## II. ANALYSIS

Under Rule 26(c), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). This rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

The protective order sought here would prohibit the release of a prominent public official's deposition in a civil case. That kind of prohibition raises issues of First Amendment rights, the public's common law right to access judicial records, and the proper interpretation of the Federal Rules of Civil Procedure. The parties conflate these issues, overlooking differences in the applicable legal standards. The Court analyzes each issue separately.

### A. First Amendment

Prohibiting a litigant from publicizing discovered information could conceivably infringe two First Amendment rights: (1) the litigant's right to express that information and (2) the public's right to access that information.

The Supreme Court addressed the litigant's right of expression in *Seattle Times Co. v. Rhinehart*: "This case presents the issue whether parties to civil litigation have a First Amendment right to disseminate, in advance of trial, information gained through the pretrial discovery process." 467 U.S. at 22. The Court held that a litigant's right to publicize discovered information is not violated by a protective order that "is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources." *Id.* at 37. Here, the protective order sought by Sheriff Arpaio would be limited

to his pretrial deposition and would not restrict the Flakes from disseminating information gained from other sources. Thus, whether the protective order would violate the Flakes' right of expression turns on whether Sheriff Arpaio has shown good cause under Rule 26(c), which the Court addresses in Part II.C below.

Strictly speaking, the *Seattle Times* holding concerns *litigants'* rights to express discovered information, not the public's right to access it. Nevertheless, parts of the opinion are relevant to determining the public's right of access, such as the observation that pretrial discovery is not "a traditionally public source of information" and is "conducted in private as a matter of modern practice." *Id.* at 33. Thus, some circuits have interpreted *Seattle Times* as limiting the public's First Amendment right to access discovery. *See, e.g.*, *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 6 (1st Cir. 1986) ("*Seattle Times* has foreclosed any claim of an absolute public right of access to discovery materials.").

The Ninth Circuit appears not to have entirely foreclosed a First Amendment public right to access discovered information, at least if that information is contained in court records. *San Jose Mercury News, Inc. v. U.S. Dist. Court--N. Dist. (San Jose)*, 187 F.3d 1096, 1102 (9th Cir. 1999) ("We leave for another day the question of whether the First Amendment also bestows on the public a prejudgment right of access to civil court records."). But the parties do not cite any Ninth Circuit case endorsing this right, nor does the Court know of any. Thus, the protective order sought by Sheriff Arpaio would not violate a First Amendment public right of access.

That conclusion does not end the matter, since the First Amendment is not the only potential source of rights to publish or access discovery material. Ninth Circuit case law on this subject is grounded not in the First Amendment, but in federal common law and the Federal Rules of Civil Procedure.

### B.     Common law

In *Nixon v. Warner Communications*, the Supreme Court recognized the public's federal common law right "to inspect and copy public records and documents, including judicial records and documents." 435 U.S. 589, 597 (1978). The right to inspect court records is necessary for federal courts "to have a measure of accountability and for the public to have confidence in the administration of justice." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). In the Ninth Circuit, this right creates a "strong presumption" favoring public access to court documents, which can be overcome upon a showing of a "compelling reason" to seal the document at issue. *Id.* at 1096–97.

The common law right of access does not apply to unfiled discovery, however. Only when "discovered information is filed with the court" do "the public policy reasons behind a presumption of access to judicial documents (judicial accountability, education about the judicial process etc.) apply." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1134 (9th Cir. 2003). Here, Sheriff Arpaio's deposition testimony has not been filed with the Court. Thus, the protective order sought would not violate the public's common law right of access to court documents.

### C.     Federal Rules of Civil Procedure

The Ninth Circuit interprets the Federal Rules of Civil Procedure as establishing a presumption of public access to discovered information: "Generally, the public can gain access to litigation documents and information produced during discovery unless the party opposing disclosure shows 'good cause' why a protective order is necessary." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002). This presumption of public access is "separate and independent" from the "federal common law right of access to all information filed with the court." *Id.* at 1212.

The justification for this presumption is shaky with respect to discovery that has not been filed in court. The Ninth Circuit adopted the presumption in 1999, declaring:

"It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public." *San Jose*, 187 F.3d at 1103. The court cited three cases in support of this presumption: (1) *Citizens First National Bank v. Cincinnati Insurance Co.*, 178 F.3d 943 (7th Cir. 1999); (2) *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775 (1st Cir. 1988); and (3) *In re Agent Orange Product Liability Litigation*, 821 F.2d 139 (2d Cir. 1987). The court also noted that Rule 26(c) requires a showing of "good cause" for protective orders.

As the Seventh Circuit has pointed out, the cases cited by the Ninth Circuit were based on the pre-2000 Federal Rules of Civil Procedure, which generally required all discovery materials to be filed with the court unless ordered otherwise. *Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009) (citing prior version of Rule 5(d)). Because the pre-2000 Rules evinced a preference of making discovered information public, some courts concluded that the Rules "implied the existence of a public right to access discovery even if the discovery was not filed with the court." *Id.* at 1075–76. But in 2000, the Rules took the opposite tack, requiring that discovered information *not* be filed with the court until used in the court proceeding or until the court orders otherwise. *Id.* at 1076 (citing current version of Rule 5(d)). Based on this rule change, the Seventh Circuit deemed the pre-2000 cases unpersuasive and concluded that "nothing in Rule 26(c)—either standing alone or when read in conjunction with the current version of Rule 5(d)—confers substantive rights upon third parties seeking access to the fruits of discovery." *Id.* A prominent treatise agrees that the rule change "weakened arguments that there is a presumptive public right of access" to discovery not used in judicial proceedings. 8A Charles A. Wright, Arthur R. Miller, et al., *Federal Practice & Procedure* § 2042 (3d ed., Apr. 2016 update).

The Ninth Circuit has not squarely addressed whether the 2000 amendments to the Rules affect the Rule-based presumption of public access to discovery. However, the Ninth Circuit appears to have applied this presumption in cases after 2000, *e.g.*, *Phillips*,

307 F.3d at 1210, including a case where the discovery material at issue had not been filed with the court, *see Foltz*, 331 F.3d at 1130–31. Thus, although the presumption rests on uncertain legal footing, it is not clear whether this Court may abandon it.

Fortunately that question is academic here. Whether or not the public enjoys a presumption of access to Sheriff Arpaio's deposition, the public's legitimate interest in the deposition justifies its release for two reasons. First, the deposition pertains to allegedly illegal conduct of a public official in the exercise of his official duties. There is "a strong public interest in free access to discovery documents where the litigation involve[s] 'elected officials and the performance of their governmental responsibilities.'" *Condit v. Dunne*, 225 F.R.D. 113, 117 (S.D.N.Y. 2004) (quoting *Flaherty v. Seroussi*, 209 F.R.D. 295, 300 (N.D.N.Y. 2001)). Second, and more importantly, Sheriff Arpaio invited media attention in this matter by repeatedly publicizing his investigation of the Flakes and publicly recommending felony charges against them. He issued press releases, held a press conference, and posted a video online. To allow Sheriff Arpaio to engage the media only on his terms would sanction an impermissible double standard. Having heard Sheriff Arpaio's earlier account of his investigation and recommended charges, the public has an interest in hearing his current account, under oath and cross-examination, now that the investigation and charges have been called into question. *Cf. Condit*, 225 F.R.D. at 114–15, 118–19 (declining to prohibit dissemination of videotaped deposition where deponent publicly accused opposing counsel of bullying during deposition).[3]

In the specific circumstances of this case, the public interest in dissemination outweighs countervailing private interests in a protective order. Sheriff Arpaio argues that it would be unfair to publicize his deposition without also publicizing the Flakes'

---

[3] Although the Court does not address Detective Trombi's deposition, the public's interest in her deposition before trial is comparatively weak.

depositions. But he does not identify any legitimate public interest in the Flakes' depositions, and in any event the Flakes have not requested a blanket protective order.

At oral argument, Sheriff Arpaio also argued that publication of his deposition might cause this case to be "tried in the media." He has a point. The day after the Flakes announced that the deposition would be videotaped, an article in *The Arizona Republic* entitled "Did Arpaio set up Sen. Jeff Flake's son in Green Acre case?" described this lawsuit in terms unfavorable to Sheriff Arpaio, referred to the Sheriff's regular "screw-ups," and urged voters to watch the deposition in anticipation of the upcoming election. (Doc. 91-4 at 4–7.) Thus, there is a possibility that the media may sensationalize the deposition. This risk is more acute with respect to video footage, since videos "can be cut and spliced and used as 'sound-bites' on the evening news or sports shows, or even worse, on 'celebrity gossip' talk shows." *Stern v. Cosby*, 529 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) (citation omitted). Indeed, courts sometimes release only the transcript of a public official's deposition, not the accompanying video. *See United States v. McDougal*, 940 F. Supp. 224, 228 (E.D. Ark. 1996) (releasing transcript of President Clinton's deposition but not video), *aff'd*, 92 F.3d 701 *and* 103 F.3d 651 (8th Cir. 1996); *Jones v. Clinton*, 12 F. Supp. 2d 931, 935 (E.D. Ark. 1998) (same).

However, Sheriff Arpaio's fear of "trial by media" is newfound. It did not stop him from repeatedly thrusting into the media himself, his investigation, and his recommendation of charges against the Flakes. Even after the charges were dropped, he posted a video online predicting that the charges would be re-filed. (Doc. 91-4 at 2.) He thereby forfeited any substantial claim to privacy regarding the rest of his own account of the investigation and charges. "While sound bites are a recognized Achilles heel of videotaped depositions, the fact that the media may edit a tape that may or may not be released by the parties does not warrant a protective order barring all public dissemination of the videotape in this case." *Condit*, 225 F.R.D. at 118 (citations

omitted). Accordingly, Sheriff Arpaio has not shown good cause for a protective order under Rule 26(c).

IT IS THEREFORE ORDERED that Sheriff Arpaio's request for a protective order (Doc. 80) is denied.

Dated this 2nd day of August, 2016.

                                          Neil V. Wake
                            Senior United States District Judge