Jeffrey S. Leonard (SBN 003809)
Jeffrey.Leonard@SacksTierney.com
Evan F. Hiller (SBN 028214)
Evan.Hiller@SacksTierney.com
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone: 480.425.2600
Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Austin and Logan Flake, husband and wife,

Plaintiffs,

v.

Joseph Michael Arpaio; et al.,

Defendants.

No. CV-15-01132-PHX-NVW

**MOTIONS IN LIMINE**

Pursuant to the Court's Order Setting Final Pretrial Conference (Doc. 135), as amended (Docs. 139, 141), Defendants hereby submit their motions in limine.

### Motion in Limine No. 1:  Compensatory Damages

Fed.R.Civ.P. 26(a)(1)(A)(iii) requires parties to disclose "a computation of each category of damages claimed by the disclosing party."  Fed.R.Civ.P. 26(e)(1)(A) requires that party to timely supplement or correct its disclosure.  Plaintiffs' initial disclosures contained only the following two paragraphs regarding Plaintiffs' computation of damages:

> Plaintiffs seek awards of nominal, compensatory, and punitive damages against Defendants, in addition to attorney fees and costs.

> Plaintiffs have also suffered emotional distress as a proximate result of Defendants' misconduct.  The amount to be attributed to Plaintiffs' pain and suffering – like any appropriate measure of punitive damages – can only be reasonably calculated by the finder-of-fact at trial.

*See* Plaintiff's [sic] Initial Disclosure Statement, attached as **Exhibit 1**, at 4.  Plaintiffs served a supplemental disclosure statement on April 13, 2016, but it did not address

Plaintiffs' computation of damages. *See* Plaintiff's [sic] First Supplemental Disclosure Statement, attached as **Exhibit 2**, at 1.

Defendants requested that Plaintiffs produce documents supporting their allegations. The relevant request for production follows[1]:

**REQUEST FOR PRODUCTION NO. 1**:

All Documents evidencing, concerning, or relating to the cause of the air conditioning events at the Green Acre Dog Boarding on June 19-20, 2014.

**RESPONSE**:

All documents in Plaintiffs' possession or control responsive to this request have already been produced, see FLAKE 1-3059, except for FLAKE 3060-3494, copies of which are attached, including the book regarding Sheriff Arpaio by Brian Sands, Arpaio De Facto Lawman: Second Edition (2014), FLAKE 3103-3276, which recites numerous examples of Sheriff Arpaio's reckless disregard for the law. See also entire case file[2] in State of Arizona v. Austin Flake and Logan Flake, Nos. CR2014-002799-003 and CR2014-002799-004.

* * *

**REQUEST FOR PRODUCTION NO. 6**:

All Documents evidencing, concerning, or relating to damages you claim to have suffered or incurred as a consequence of defendants' actions.

**RESPONSE**:

See Response to Request No. 1 above.

*See* Plaintiff Austin Flake's Response to Defendants' Request for Production of Documents, attached as **Exhibit 3**, at 3-4; Plaintiff Logan Flake's Response to Defendants' Request for Production of Documents, attached as **Exhibit 4**, at 3-4 (same).

These written responses do not adequately identify which of the documents produced by Plaintiffs related to their alleged damages. Moreover, *none* of the documents produced by Plaintiffs include any computation of Plaintiffs' alleged damages, nor even of

---

[1] Request for Production No. 1, and the response thereto, are presented for context because Response No. 1 is referenced by Response No. 6.

[2] Plaintiffs did not produce the "entire case file" in the criminal cases, so it is unclear which if any documents from those separate proceedings allegedly support Plaintiffs' claims.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

1946776.v1

any element of such damages or portion thereof. Nor do the documents produced by Plaintiffs (and referenced *en masse* in Response No. 1) provide any basis for computing Plaintiffs' alleged damages.

Moreover, Defendants' counsel pressed for information about Plaintiffs' computation of damages in Plaintiff Logan Brown's deposition, taken on August 1, 2016:

> **Q.** Okay. And are you seeking recovery for lost income?
>
> MR. MONTOYA: Objection; foundation.
>
> **A.** I'm not sure. I'm just seeking -- I'm really not sure if I am or not. I just want my good name cleared.
>
> **Q.** Do you attach a monetary amount to clearing your good name?
>
> **A.** I haven't, no. I haven't attached that, I don't think.

*See* Transcript of Deposition of Logan Laine Brown (Aug. 1, 2016), relevant portions attached as **Exhibit 5**, at 230:23-231:8.

Plaintiffs' disclosures, written discovery responses, and deposition testimony did not provide Defendants with any basis to calculate Plaintiffs' damages. Nor did Defendants have any basis to understand *Plaintiffs'* calculation of those damages. Accordingly, Defendants served interrogatories specifically requesting that Plaintiffs state, in detail, the factual and legal bases for their damages claims and, in particular, provide a computation their claimed damages. Defendants' relevant interrogatories follow:

**Interrogatory No. 19** State in detail all factual and legal (as applied to the facts of this case) bases for Your allegations that the Flakes have been damaged in their reputations and careers, that they have endured death threats, undue stress, anxiety, embarrassment and humiliation, public disrepute, contempt, ridicule, repeated threats of violence, lost income, lost educational opportunities, fear, and depression.

**Interrogatory No. 20** Identify the persons most knowledgeable about the facts underlying Your allegation, as described in No. 19, above.

**Interrogatory No. 21** Identify all documents, communications, and Electronically Stored Information that concern, relate to, or evidence Your allegation, as described in number 19, above.

**Interrogatory No. 22** Provide a calculation of every element of damage You claim to have suffered as a result of the acts of the Defendants, as alleged in this case.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

1946776.v1

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

*See* Defendants' First Set of Interrogatories to Plaintiff Austin Flake, attached as **Exhibit 6**; Defendants' First Set of Interrogatories to Plaintiff Logan Flake, attached as **Exhibit 7**. Plaintiffs did not respond to these interrogatories.[3]

Before discovery closed on December 23, 2016, Plaintiffs never supplemented their disclosure statement or discovery answers to provide a damage computation or to provide documents relevant to their compensatory damages claims. Nor did Plaintiffs supplement their testimony failing to articulate their alleged damages in this case, or designate an expert to testify about damages and produce an expert report in compliance with Rule 26.

Simply stated, Plaintiffs have wholly failed to comply with Rules 26, 33, and 34 with regard to their claims for compensatory damages. Evidence may be excluded as a sanction for Plaintiffs' failure to properly disclose or supplement, *see* Fed.R.Civ.P. 37(c)(1), and Plaintiffs may be prohibited from supporting designated claims and introducing designated matters in evidence as a sanction for failure to answer interrogatories, *see* Fed.R.Civ.P. 37(d)(3). Plaintiffs never disclosed a computation of damages claimed or provided any evidence to support such a computation, and failed to respond to interrogatories seeking this information, and therefore cannot maintain a compensatory damages claim.

**Accordingly, Defendants respectfully request that this Court preclude Plaintiffs from presenting any calculation of damages or seeking to introduce any evidence of alleged compensatory damages.**

**Motion in Limine No. 2:  Allegations that Deputy Trombi or MCSO Lied to, Misled, Presented False Information to, or Withheld Information from Prosecutors**

Plaintiffs may seek to offer evidence to support their accusation that Trombi and MCSO intentionally or recklessly presented false information to MCAO. This issue was already fully briefed to the Court, and has already been ruled upon. In the Court's words:

---

[3] Plaintiffs also failed to respond to Defendants' Second Request for Production of Documents, served contemporaneously on each of Plaintiffs, which requested "All Documents identified in your response to Defendants' First Set of Interrogatories."

4

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

> [T]he Flakes point to supposed discrepancies between Trombi's grand jury testimony and her deposition testimony that they say amount to circumstantial evidence that she either lied to or materially misled the prosecutors. (Doc. 114 at 4-5.) But no reasonable finder of fact could conclude Trombi did either of those. At most the evidence in the record shows she misunderstood the law of animal cruelty but pursued charges against the Flakes in good faith. It is not inferable that she knew what she said was false as opposed to mistaken or incomplete. But mistaken or incomplete testimony does not support an inference of a knowing falsehood. There is no evidence suggesting she exhibited an improper motive that interfered with the prosecutors' decision.

Doc. 134 at 9. There is simply no evidence from which a reasonable finder of fact could infer that Deputy Trombi or MCSO lied to, intentionally misled, or withheld information from MCAO.

The only information that Plaintiffs have *ever* identified as even potentially false or incomplete, in *all* of the information provided by MCSO to MCAO, is Marie Trombi's (presumed) characterization of the SRP Report as failing to support the possibility that there were issues with the air conditioning unit. Although the parties disagree whether the air conditioning unit failed (as Plaintiffs allege) or was instead inadequate and improperly designed and configured (as Defendants allege), this is not a disputed issue of *material* fact. The Court has already resolved, as a matter of law, the issue of whether there was probable cause to indict Plaintiffs for felony animal cruelty.[4] The Court found that the indictment of Plaintiffs was without probable cause because there was "no evidence reasonably indicating that the Flakes actually intended to deprive the dogs of necessary food, water or shelter" or "that they knew their actions would produce such a result." *See* Doc. 134 at 11. The status of the air conditioner plays no role in this probable cause determination, and the Court could not have granted summary if it did. To the extent that MCAO's prosecution of Plaintiffs lacked probable cause, that error is traceable to an incorrect assessment of evidence of Plaintiffs' intent and not to any information regarding the air conditioner.

The status of the air conditioner is irrelevant to the determination of any issue remaining in this case, as is Deputy Trombi's characterization of evidence regarding the

---

[4] Defendants disagree with the Court's ruling on probable cause and reserve the right to challenge such ruling on appeal, but accept that the "no probable cause" determination is the law of the case.

1946776.v1

status of the air conditioner. However, the allegation that MCSO presented false information to MCAO, for which Plaintiffs lack evidence sufficient to allow a reasonable jury to so find, is extremely prejudicial. Because this potential prejudice greatly outweighs the (non-existent) probative value of evidence regarding the status of the air conditioner or MCSO's characterizations thereof, such allegations should be excluded.

**Accordingly, Defendants respectfully request that this Court prohibit Plaintiffs from asserting, suggesting, implying, or seeking to introduce evidence that Deputy Trombi or MCSO lied to prosecutors, misled prosecutors, withheld information from prosecutors, or presented false or incomplete information to prosecutors.**

## Motion in Limine No. 3:  Grand Jury Proceedings

Plaintiffs seek to introduce a transcript of grand jury proceedings into evidence in this matter. *See* [Proposed] Joint Final Pretrial Order, Exhibit C. Plaintiffs have previously argued that Deputy Trombi's grand jury testimony is circumstantial evidence that she either lied to or materially misled the prosecutors, but the Court has already ruled that no reasonable finder of fact could reach this conclusion. Doc. 134 at 9. Moreover, witness testimony in grand jury proceedings carries absolute immunity from civil suits. *Rehberg v. Paulk*, 566 U.S. 356, 360-61 (2012).

Plaintiffs have provided no other justification for the use of evidence relating to testimony at grand jury proceedings, and Defendants cannot infer any relevance of grand jury proceeding testimony to Plaintiffs' claims.

**Accordingly, Defendants respectfully request that this Court prohibit Plaintiffs from seeking to introduce evidence regarding testimony during the grand jury proceedings.**

## Motion in Limine No. 4:  Evidence Relating to the Air Conditioning Unit

As noted in Motion in Limine No. 2, *supra*, the Court has already determined that Deputy Trombi did not lie to or mislead prosecutors or the grand jury regarding the status of the air conditioning unit. The Court has already determined, based upon a lack of evidence of Plaintiffs' knowledge or intent regarding harm to the dogs, that there was no

1946776.v1

probable cause to prosecute Plaintiffs. *See* Doc. 134. The issue of whether the air conditioning unit was functional when the dogs died is relevant only to the questions of probable cause and of whether Deputy Trombi misrepresented that information, both of which have already been resolved by the Court. Thus, evidence regarding the status of the air conditioner is not probative of any of the remaining issues in the case. However, full presentation of evidence on this issue (which would include testimony by at least three and at most six expert witnesses) would consume significant trial time and is highly likely to distract the jury from actual issues in this litigation.

**Accordingly, Defendants respectfully request that this Court prohibit the parties from seeking to introduce evidence concerning the status and functionality of the air conditioning unit.**

**<u>Motion in Limine No. 5: Tom Stone, Wayne Wisdom, and Melinda Merck</u>**

The Scheduling Order in this matter provides that "[t]he propounding party(s) shall provide full and complete expert disclosures as required by Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure no later than August 26, 2016." Doc. 58. This Court warned the parties that "[n]o expert witness not timely disclosed will be permitted to testify unless the party offering such witness demonstrates: (a) that the necessity of such expert witness could not have been reasonably anticipated at the time of the deadline for disclosing such expert witness…" Doc. 37 at 3. Plaintiffs did not disclose any expert witnesses under Rule 26(a)(2) prior to the August 26, 2016 deadline, or even prior to the close of discovery on December 16, 2016.

Instead, Plaintiffs on October 17, 2017 for the first time disclosed their intention to call Tom Stone, Wayne Wisdom, and Dr. Melinda Merck to provide testimony in this matter.[5] Plaintiffs have never identified Mr. Stone, Mr. Wisdom, or Dr. Merck as persons with knowledge or as potential witnesses, other than possibly through a blanket reference to

---

[5] Plaintiffs identified Mr. Stone, Mr. Wisdom, and Dr. Merck as witnesses who may be called at trial for the first time on October 17, 2017. Plaintiffs for the first time disclosed that they intend to present these individuals as "fact" witnesses on October 23, 2017.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

"All witnesses that have been identified or disclosed in <u>State of Arizona v. Hughes, et al.</u>, No. CR2014-002799."[6]  *See* Plaintiff's [sic] Initial Disclosure Statement (**Exhibit 1**), at 2-3.  In CR2014-002799, Austin and Logan Flake identified Mr. Stone, Mr. Wisdom, and Dr. Mack as *expert* witnesses.  *See* Rule 15.2 Notice of Defenses and Disclosure by Defendant, attached as **Exhibit 8**, at 3.

Mr. Stone submitted a declaration in CR2014-002799.  *See* Declaration of Tom Stone, attached as **Exhibit 9**.  Mr. Stone's declaration was attached an exhibit to Austin and Logan Flake's December 2, 2014 Motion for Remand to the Grand Jury in CR2014-002799.  Mr. Stone is a "professional licensed mechanical engineer who specializes in HVAC analysis."  *Id.* at ¶ 1.  In his declaration, Mr. Stone (who had no first-hand knowledge of events) relied upon his review of SRP energy readings from the Hughes residence (the "SRP report") and an engineering report prepared by the State's engineering expert to arrive at an opinion that "[t]he SRP report clearly indicates that the AC Unit was not 'on, all night' between 12:00 AM and 5:30 AM on June 20th."  *Id.* at ¶¶ 2-9.  Although Plaintiffs now characterize Mr. Stone as a fact witness, there can be no question that Mr. Stone's declaration was submitted in CR2014-002799 as expert testimony, and that his proposed testimony in this matter "in accordance with [that] statement" is expert testimony.

Mr. Wisdom submitted an affidavit, dated November 12, 2014, in CR2014-002799.  *See* Affidavit of Wayne Wisdom, attached as **Exhibit 10**.  He is a registered professional engineer.  *Id.* at ¶ 1.  Much like Mr. Stone, Mr. Wisdom (who had no first-hand knowledge of events) relied upon his review of the SRP report to form opinions regarding energy usage on the property.  *See generally id*.  Although Plaintiffs now characterize Mr. Wisdom as a fact witness, there can be no question that Mr. Wisdom's affidavit was submitted in CR2014-002799 as expert testimony, and that his proposed testimony in this matter "in accordance with [that] statement" is expert testimony.

---

[6] This category of individuals was disclosed under Rule 26(a)(1), not 26(a)(2).

8

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

Dr. Merck submitted an "Expert Consultation Report," dated November 19, 2014, in CR2014-002799. *See* Expert Consultation Report of M. Merck, attached as **Exhibit 11**. Dr. Merck provided this report as a veterinarian, had no first-hand knowledge of events, and relied upon "necropsy findings, photographs and the circumstances surrounding the death of the dogs" to opine on the cause of death of the dogs and respond to the expert report of the State's veterinary expert. *See id.* Although Plaintiffs now characterize Dr. Merck as a fact witness, there can be no question that Dr. Merck's report was submitted in CR2014-002799 as expert testimony, and that her proposed testimony in this matter "in accordance with [that] statement" is expert testimony.

In short, Plaintiffs never properly disclosed any expert witnesses in this matter, but now seek to call three witnesses to provide expert testimony at trial. Expert witnesses that were not timely disclosed are not permitted to testify, absent good cause. *See* Doc. 37; *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005). The testimony Plaintiffs seek to offer from these witnesses is consistent with statements made no later than December 2, 2014, so there can be no basis for Plaintiffs not to have known such testimony was necessary prior to the August 2016 expert disclosure deadline in this matter.

**Accordingly, Defendants respectfully request that this Court prohibit Plaintiffs from calling Tom Stone, Wayne Wisdom, and Dr. Melinda Merck as trial witnesses.**

### Motion in Limine No. 6: Prior Acts of Joseph Arpaio

Throughout this litigation, Plaintiffs have attempted to introduce evidence of past acts by former Sheriff Joseph M. Arpaio. For example, Plaintiffs questioned Mr. Arpaio regarding *Lovejoy v. Arpaio*, *Melendres v. Arpaio*, racial profiling, and criminal contempt proceedings at his deposition. Plaintiffs also attempted to discuss the criminal contempt proceedings at oral argument on the parties' motions for summary judgment.

Fed.R.Evid. 404(b) prohibits the use of evidence of crimes, wrongs, or other acts to prove that a person acted similarly in a particular instance. Plaintiffs' attempts to introduce other "bad acts" of Joseph Arpaio are a textbook example of what Rule 404 prohibits.

**Accordingly, Defendants respectfully request that this Court preclude Plaintiffs**

**from seeking to introduce evidence of prior acts by Joseph Arpaio, including but not**

**limited to references to *Lovejoy v. Arpaio* and *Melendres v. Arpaio*.**

\*　　　\*　　　\*

Defendants respectfully request that the Court grant the above motions in limine.

DATED October 27, 2017.                    SACKS TIERNEY P.A.


                                            *s/Jeffrey S. Leonard*
                                            Jeffrey S. Leonard
                                            Evan F. Hiller
                                            Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2017, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

> Stephen Montoya
> Richard Trujillo
> MONTOYA, LUCERO & PASTOR, P.A.
> The Great American Tower
> 3200 North Central Avenue, Suite 2550
> Phoenix, AZ 85012
> *Attorneys for Plaintiffs*

*s/ Mary Chapa*

1946776.v1

**EXHIBIT 1**

Stephen Montoya (#011791)
**Montoya, Jimenez & Pastor, P.A.**
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
602-256-6718 (telephone)
602-256-6667 (fax)
stephen@montoyalawgroup.com

Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Austin Flake and Logan Flake,<br><br>Plaintiffs,<br><br>v.<br><br>Joseph Michael Arpaio, et al.,<br><br>Defendants. | No. CV 15-01132-PHX-NVW<br><br>**PLAINTIFF'S INITIAL DISCLOSURE STATEMENT** |

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Plaintiff provides the following information to Defendant:

**A.** **The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.**

      1.     Austin Flake
             c/o Stephen Montoya
             Montoya, Jimenez & Pastor, P.A.
             3200 North Central Avenue, Suite 2550
             Phoenix, Arizona 85012
             (602) 256-6718

             Mr. Flake is believed to have information regarding the factual claims set forth in his <u>Complaint</u>. He may also have information regarding Defendant's affirmative defenses.

2.     Logan Flake
c/o Stephen Montoya
Montoya, Jimenez & Pastor, P.A.
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
(602) 256-6718

Ms. Flake is believed to have information regarding the factual claims set forth in her <u>Complaint</u>. She may also have information regarding Defendant's affirmative defenses.

3.     Deputy Marie Trombi
Maricopa County Sheriff's Office
c/o Jeffrey S. Leonard
Sacks Tierney, P.A.
4250 North Drinkwater Blvd., 4th Floor
Scottsdale, Arizona 85251
(480) 425-2600

Deputy Trombi is believed to have information regarding the factual claims set forth in Plaintiffs' <u>Complaint</u>. She may also have information regarding Defendant's affirmative defenses.

4.     Deputy Robert Kalinowski
Maricopa County Sheriff's Office
c/o Jeffrey S. Leonard
Sacks Tierney, P.A.
4250 North Drinkwater Blvd., 4th Floor
Scottsdale, Arizona 85251
(480) 425-2600

Deputy Kalinowski is believed to have information regarding the factual claims set forth in Plaintiffs' <u>Complaint</u>. He may also have information regarding Defendant's affirmative defenses.

5.     Deputy S. Mendoza
Maricopa County Sheriff's Office
c/o Jeffrey S. Leonard
Sacks Tierney, P.A.
4250 North Drinkwater Blvd., 4th Floor
Scottsdale, Arizona 85251
(480) 425-2600

Deputy Mendoza is believed to have information regarding the factual claims set forth in Plaintiffs' <u>Complaint</u>. He may also have information regarding Defendant's affirmative defenses.

6. Deputy D. Beck
Maricopa County Sheriff's Office
c/o Jeffrey S. Leonard
Sacks Tierney, P.A.
4250 North Drinkwater Blvd., 4th Floor
Scottsdale, Arizona 85251
(480) 425-2600

Deputy Beck is believed to have information regarding the factual claims set forth in Plaintiffs' <u>Complaint</u>. He may also have information regarding Defendant's affirmative defenses.

7. Bernard Mangone, DVM
Palm Glen Animal Hospital
7771 North 43rd Avenue
Phoenix, Arizona 85051
(623) 688-5362

Dr. Mangone is believed to have information regarding the factual claims set forth in Plaintiffs' <u>Complaint</u>. He may also have information regarding Defendant's affirmative defenses.

8. Jesse Hughes
(Present address unknown)

Mr. Hughes is believed to have information regarding the factual claims set forth in Plaintiffs' <u>Complaint</u>. He may also have information regarding Defendant's affirmative defenses.

9. Malesia Hughes
(Present address unknown)

Ms. Hughes is believed to have information regarding the factual claims set forth in Plaintiffs' <u>Complaint</u>. She may also have information regarding Defendant's affirmative defenses.

10. All witnesses that have been identified or disclosed in <u>State of Arizona v. Hughes, et al.</u>, No. CR2014-002799.

**B.** **A copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment.**

    1.    Case file in <u>State of Arizona v. Hughes, et al.</u>, No. CR2014-002799, already in Defendants' possession.

    2.    Any documents disclosed or produced in the course of discovery.

**C.** **A computation of any category of damages claimed by the disclosing party, making available for inspection and copying under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.**

Plaintiffs seek awards of nominal, compensatory, and punitive damages against Defendants, in addition to attorney fees and costs.

Plaintiffs have also suffered emotional distress as a proximate result of Defendants' misconduct. The amount to be attributed to Plaintiffs' pain and suffering—like any appropriate measure of punitive damages—can only be reasonably calculated by the finder-of-fact at trial.

**D.** **For inspection and copying under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part of all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.**

Inapplicable.

Respectfully submitted this 16th day of November 2015.

**MONTOYA, JIMENEZ & PASTOR, P.A.**

<u>s/ Stephen Montoya</u>
Stephen Montoya
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
Attorney for Plaintiffs

I hereby certify that on November 16, 2015, the foregoing document was sent via email to:

Jeffrey S. Leonard
Sacks Tierney, P.A.
4250 North Drinkwater Blvd., 4th Floor
Scottsdale, Arizona 85251
Attorneys for Defendants

s/ Stephen Montoya

**EXHIBIT 2**

Stephen Montoya (#011791)
**Montoya, Jimenez, Lucero & Pastor, P.A.**
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
602-256-6718 (telephone)
602-256-6667 (fax)
stephen@montoyalawgroup.com

Attorney for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Austin Flake and Logan Flake,<br><br>Plaintiffs,<br><br>v.<br><br>Joseph Michael Arpaio, et al.,<br><br>Defendants. | No. CV 15-01132-PHX-NVW<br><br>**PLAINTIFF'S FIRST SUPPLEMENTAL DISCLOSURE STATEMENT** |

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Plaintiff provides the following information to Defendant:

**B.** **A copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment.**

1. Documents (FLAKE 1-2510), attached as Exhibit A.

2. Documents (FLAKE CONFIDENTIAL-SEALED 2511-3059), attached as Exhibit A.

Respectfully submitted this 13th day of April 2016.

**MONTOYA, JIMENEZ, LUCERO & PASTOR, P.A.**

s/ Stephen Montoya
Stephen Montoya
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
Attorney for Plaintiffs

I hereby certify that on April 13, 2016, the foregoing document was sent via email and First-Class Mail to:

Jeffrey S. Leonard
Sacks Tierney, P.A.
4250 North Drinkwater Blvd., 4th Floor
Scottsdale, Arizona 85251
Attorneys for Defendants


s/ Stephen Montoya

**EXHIBIT 3**

Stephen Montoya (#011791)
**Montoya, Jimenez, Lucero & Pastor, P.A.**
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
602-256-6718 (telephone)
602-256-6667 (fax)
stephen@montoyalawgroup.com

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Austin Flake and Logan Flake, | No. CV 15-CV-01132-PHX-NVW |
| Plaintiffs, | **PLAINTIFF AUSTIN FLAKE'S RESPONSE TO DEFENDANTS' REQUEST FOR PRODUCTION OF DOCUMENTS** |
| v. | |
| Joseph Michael Arpaio, et al., | |
| Defendants. | |

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Austin Flake hereby responds to Defendants' Request for Production of Documents.

## <u>OBJECTIONS</u>

Plaintiff asserts the following standing objections to Defendants' Request:

1.     Plaintiff objects to Defendants' Request to the extent they impose obligations beyond those required under Federal Rules of Civil Procedure 26 or 34.

2.     Plaintiff objects to Defendants' Request as unduly burdensome, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence given that the request is not reasonably limited in geographic or temporal scope.

3.     Plaintiff objects to Defendants' Request to the extent that several requests seek categories of documents protected from discovery by the attorney-client, attorney work-product, doctor-patient and/or joint prosecution privileges.     Plaintiff objects to identifying documents responsive to these requests on a privilege log to the extent that (a) the request is not reasonably calculated to lead to the discovery of admissible evidence;

(b) the documents are not otherwise discoverable; and/or (c) identification of each document itself would disclose Plaintiff's attorney work-product.

4.     Because the discovery process is ongoing, Plaintiff reserves the right to amend, modify or supplement any of her responses based on the discovery of additional information.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All Documents evidencing, concerning, or relating to the cause of the air conditioning events at Green Acre Dog Boarding on June 19-20, 2014.

**RESPONSE:**

All documents in Plaintiffs' possession or control responsive to this request have already been produced, see FLAKE 1-3059, except for FLAKE 3060-3494, copies of which are attached, including the book regarding Sheriff Arpaio by Brian Sands, Arpaio De Facto Lawman: Second Edition (2014), FLAKE 3103-3276, which recites numerous examples of Sheriff Arpaio's reckless disregard for the law. See also entire case file in State of Arizona v. Austin Flake and Logan Flake, Nos. CR2014-002799-003 and CR2014-002799-004.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents evidencing, concerning or relating to your training to care for large numbers of boarded dogs.

**RESPONSE:**

Although both Logan Flake and Austin Flake received training in caring for the dogs in the kennel directly from the owners of the kennel, Logan's parents, Jesse and MaLeisa Hughes, no documents reflect this training other than the forms generated for each canine guest.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents evidencing, concerning, or relating to information in your possession during the time period June 15-20, 2014 regarding veterinarian contacts in the event of medical emergencies with respect to the dogs being boarded at Green Acre Dog Boarding.

**RESPONSE:**

None in Plaintiffs' possession or control, but that information may be obtained directly from Jesse and MaLeisa Hughes.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents supporting your allegation that your reputation has been marred as a consequence of defendants' actions.

**RESPONSE:**

See Exhibits to Plaintiffs' <u>Second Amended Complaint</u> and Response to Request No. 1 above, specifically FLAKE 1035-1272.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents supporting your allegation that your prospects for education, employment, earning capacity and friendships have been adversely affected by defendants' actions.

**RESPONSE:**

See FLAKE 1035-1272 and FLAKE 3277, copies of which are attached.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents evidencing, concerning, or relating to damages you claim to have suffered or incurred as a consequence of defendants' actions.

**RESPONSE:**

See Response to Request No. 1 above.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents supporting your allegation that defendants specifically targeted you for the purpose of harming Senator Jeff Flake.

**RESPONSE:**

See document numbers MCRFP2-1-10098, produced by Defendant Arpaio in <u>Reza v. Maricopa County</u>, No. CV 10-02313-PHX-TMB. <u>See also</u> Brian Sands, <u>Arpaio De Facto Lawman: Second Edition</u> (2014), FLAKE 3103-3276. Plaintiffs will supplement when additional documents are obtained by Plaintiffs from Defendants by means of discovery.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents supporting your allegation that defendants directed MCSO to try to

connect Senator Jeff Flake to the investigation of plaintiffs.

**RESPONSE:**

See Response to Request No. 7 above, and FLAKE 3278-3282.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents supporting your allegation that in around June 2014, MCSO Deputy Chief David Trombi went through plaintiffs' phone records specifically searching for any calls to or from Senator Jeff Flake or his wife during the time of the incidents described in the Complaint.

**RESPONSE:**

See Response to Request No. 7 above, and FLAKE 3278-3282.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents supporting your allegation that defendant Arpaio directed MCSO deputies to lie to the grand jury and to present a theory of the case that was unsupported by reasonably trustworthy facts and circumstances.

**RESPONSE:**

See Response to Request No. 7 above.  See also Judge Snow's contempt finding against Sheriff Arpaio, FLAKE 3333-3494.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents supporting your allegation that defendant Arpaio directed MCSO deputies to provide misinformation to the prosecution, to omit relevant information, and to conceal exculpatory evidence.

**RESPONSE:**

See Response to Request No. 7 above.  See also Judge Snow's contempt finding against Sheriff Arpaio, FLAKE 3333-3494.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents supporting your allegation that defendant Arpaio asked Attorney General Tom Horne to handle the criminal prosecution.

**RESPONSE:**

See Response to Request No. 7 above.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents supporting your allegation that defendant Arpaio believed that MCAO would reject the case.

**RESPONSE:**

See Response to Request No. 7 above and Exhibits to the Flakes' Motion to Remand and Dismiss in State of Arizona v. Austin Flake and Logan Flake, Nos. CR2014-002799-003 and CR2014-002799-004.

**REQUEST FOR PRODUCTION NO. 14:**

All Documents supporting your allegation that defendant Arpaio publicly recommended charges because he intended to pressure MCAO to bring charges.

**RESPONSE:**

See Sheriff Arpaio's various press releases and the transcript of his press conference attached to Plaintiffs' Second Amended Complaint. See also http://www.youtube.com/watch?v=bjCZy2G4g00&sns=em, a copy of which is being electronically provided to Defendants' counsel by means of "Dropbox."

**REQUEST FOR PRODUCTION NO. 15:**

All Documents supporting your allegation that Deputy Marie Trombi personally pressured prosecutors.

**RESPONSE:**

See Grand Jury Transcripts, FLAKE CONFIDENTIAL-SEALED 2411-3059, which demonstrates that Defendant Marie Trombi lied to the Grand Jury.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents supporting your allegation that Deputy Marie Trombi knowingly provided misinformation to the prosecutor, omitted relevant information, and concealed exculpatory evidence.

**RESPONSE:**

See Flakes' <u>Motion to Remand</u>, including exhibits and Grand Jury Transcripts, FLAKE CONFIDENTIAL-SEALED 2411-3059.

**REQUEST FOR PRODUCTION NO. 17:**

All Documents supporting your allegation that defendant Arpaio directed Deputy Trombi to lie to the grand jury.

**RESPONSE:**

See Arpaio video regarding the dismissal of charges against Logan and Austin Flake, http://www.youtube.com/watch?v=bjCZy2G4g00&sns=em, sent via separate Dropbox link.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents supporting your allegation that because of the indictment Logan Flake was suspended from Brigham Young University.

**RESPONSE:**

See Flake 3277.

**REQUEST FOR PRODUCTION NO. 19:**

All Documents supporting your allegation that publicity of the indictment caused you irreparable harm.

**RESPONSE:**

See Response to Request No. 1 above.

**REQUEST FOR PRODUCTION NO. 20:**

All Documents supporting your allegation that defendants knowingly and intentionally presented false evidence used to support criminal charges against you, omitted or withheld evidence, and/or presented evidence with a reckless disregard for the truth.

**RESPONSE:**

See Response to Request No. 1 above.

**REQUEST FOR PRODUCTION NO. 21:**

All Documents supporting your allegation that defendants acted pursuant to a custom and/or practice of targeting, investigating, and prosecuting individuals without probable cause.

**RESPONSE:**

<u>See</u> Responses to Requests Nos. 1 and 7 above.

**REQUEST FOR PRODUCTION NO. 22:**

All Documents supporting your allegation that defendants were consciously aware of the wrongfulness and harmfulness of their conduct.

**RESPONSE:**

<u>See</u> Responses to Request Nos. 1 and 7 above.

**REQUEST FOR PRODUCTION NO. 23:**

The <u>complete</u> grand jury transcript, as referenced in plaintiffs' Complaint, not limited to those portions quoted or otherwise referred to in the Complaint.

**RESPONSE:**

Not in Plaintiffs' possession or control.

Respectfully submitted this 25th day of May 2016.

**MONTOYA, JIMENEZ, LUCERO & PASTOR, P.A.**


Stephen Montoya
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
Attorney for Plaintiffs

-8-

I hereby certify that on May 25, 2016, the foregoing document was sent via email to:

Jeffrey S. Leonard
Sacks Tierney, P.A.
4250 North Drinkwater Blvd., 4th Floor
Scottsdale, Arizona 85251
jeffrey.leonard@sackstierney.com
Attorneys for Defendant Maricopa County

**EXHIBIT 4**

1  Stephen Montoya (#011791)
2  **Montoya, Jimenez, Lucero & Pastor, P.A.**
   3200 North Central Avenue, Suite 2550
3  Phoenix, Arizona 85012
   602-256-6718 (telephone)
4  602-256-6667 (fax)
   stephen@montoyalawgroup.com
5
   Attorney for Plaintiff
6
7            **IN THE UNITED STATES DISTRICT COURT**

8                 **FOR THE DISTRICT OF ARIZONA**

9
   Austin Flake and Logan Flake,            No. CV 15-CV-01132-PHX-NVW
10
   Plaintiffs,                              **PLAINTIFF LOGAN FLAKE'S
11                                          RESPONSE TO DEFENDANTS'
                                            REQUEST FOR PRODUCTION OF
12 v.                                       DOCUMENTS**

13 Joseph Michael Arpaio, et al.,

14 Defendants.

15
16        Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Logan Flake

17 hereby responds to Defendants' Request for Production of Documents.

                                  **OBJECTIONS**
18
19        Plaintiff asserts the following standing objections to Defendants' Request:

20        1.      Plaintiff objects to Defendants' Request to the extent they impose

21 obligations beyond those required under Federal Rules of Civil Procedure 26 or 34.

22        2.      Plaintiff objects to Defendants' Request as unduly burdensome, overly

23 broad, and not reasonably calculated to lead to the discovery of admissible evidence given

24 that the request is not reasonably limited in geographic or temporal scope.

25        3.      Plaintiff objects to Defendants' Request to the extent that several requests

26 seek categories of documents protected from discovery by the attorney-client, attorney

27 work-product, doctor-patient and/or joint prosecution privileges.   Plaintiff objects to

28 identifying documents responsive to these requests on a privilege log to the extent that (a)

   the request is not reasonably calculated to lead to the discovery of admissible evidence;

(b) the documents are not otherwise discoverable; and/or (c) identification of each document itself would disclose Plaintiff's attorney work-product.

4.      Because the discovery process is ongoing, Plaintiff reserves the right to amend, modify or supplement any of her responses based on the discovery of additional information.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All Documents evidencing, concerning, or relating to the cause of the air conditioning events at Green Acre Dog Boarding on June 19-20, 2014.

**RESPONSE:**

All documents in Plaintiffs' possession or control responsive to this request have already been produced, see FLAKE 1-3059, except for FLAKE 3060-3494, copies of which are attached, including the book regarding Sheriff Arpaio by Brian Sands, Arpaio De Facto Lawman: Second Edition (2014), FLAKE 3103-3276, which recites numerous examples of Sheriff Arpaio's reckless disregard for the law.  See also entire case file in State of Arizona v. Austin Flake and Logan Flake, Nos. CR2014-002799-003 and CR2014-002799-004.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents evidencing, concerning or relating to your training to care for large numbers of boarded dogs.

**RESPONSE:**

Although both Logan Flake and Austin Flake received training in caring for the dogs in the kennel directly from the owners of the kennel, Logan's parents, Jesse and MaLeisa Hughes, no documents reflect this training other than the forms generated for each canine guest.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents evidencing, concerning, or relating to information in your possession during the time period June 15-20, 2014 regarding veterinarian contacts in the event of medical emergencies with respect to the dogs being boarded at Green Acre Dog Boarding.

**RESPONSE:**

None in Plaintiffs' possession or control, but that information may be obtained directly from Jesse and MaLeisa Hughes.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents supporting your allegation that your reputation has been marred as a consequence of defendants' actions.

**RESPONSE:**

See Exhibits to Plaintiffs' Second Amended Complaint and Response to Request No. 1 above, specifically FLAKE 1035-1272.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents supporting your allegation that your prospects for education, employment, earning capacity and friendships have been adversely affected by defendants' actions.

**RESPONSE:**

See FLAKE 1035-1272 and FLAKE 3277, copies of which are attached.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents evidencing, concerning, or relating to damages you claim to have suffered or incurred as a consequence of defendants' actions.

**RESPONSE:**

See Response to Request No. 1 above.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents supporting your allegation that defendants specifically targeted you for the purpose of harming Senator Jeff Flake.

**RESPONSE:**

See document numbers MCRFP2-1-10098, produced by Defendant Arpaio in Reza v. Maricopa County, No. CV 10-02313-PHX-TMB. See also Brian Sands, Arpaio De Facto Lawman: Second Edition (2014), FLAKE 3103-3276. Plaintiffs will supplement when additional documents are obtained by Plaintiffs from Defendants by means of discovery.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents supporting your allegation that defendants directed MCSO to try to

connect Senator Jeff Flake to the investigation of plaintiffs.

**RESPONSE:**

See Response to Request No. 7 above, and FLAKE 3278-3282.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents supporting your allegation that in around June 2014, MCSO Deputy Chief David Trombi went through plaintiffs' phone records specifically searching for any calls to or from Senator Jeff Flake or his wife during the time of the incidents described in the Complaint.

**RESPONSE:**

See Response to Request No. 7 above, and FLAKE 3278-3282.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents supporting your allegation that defendant Arpaio directed MCSO deputies to lie to the grand jury and to present a theory of the case that was unsupported by reasonably trustworthy facts and circumstances.

**RESPONSE:**

See Response to Request No. 7 above. See also Judge Snow's contempt finding against Sheriff Arpaio, FLAKE 3333-3494.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents supporting your allegation that defendant Arpaio directed MCSO deputies to provide misinformation to the prosecution, to omit relevant information, and to conceal exculpatory evidence.

**RESPONSE:**

See Response to Request No. 7 above. See also Judge Snow's contempt finding against Sheriff Arpaio, FLAKE 3333-3494.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents supporting your allegation that defendant Arpaio asked Attorney General Tom Horne to handle the criminal prosecution.

**RESPONSE:**

See Response to Request No. 7 above.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents supporting your allegation that defendant Arpaio believed that MCAO would reject the case.

**RESPONSE:**

See Response to Request No. 7 above and Exhibits to the Flakes' Motion to Remand and Dismiss in State of Arizona v. Austin Flake and Logan Flake, Nos. CR2014-002799-003 and CR2014-002799-004.

**REQUEST FOR PRODUCTION NO. 14:**

All Documents supporting your allegation that defendant Arpaio publicly recommended charges because he intended to pressure MCAO to bring charges.

**RESPONSE:**

See Sheriff Arpaio's various press releases and the transcript of his press conference attached to Plaintiffs' Second Amended Complaint. See also http://www.youtube.com/watch?v=bjCZy2G4g00&sns=em, a copy of which is being electronically provided to Defendants' counsel by means of "Dropbox."

**REQUEST FOR PRODUCTION NO. 15:**

All Documents supporting your allegation that Deputy Marie Trombi personally pressured prosecutors.

**RESPONSE:**

See Grand Jury Transcripts, FLAKE CONFIDENTIAL-SEALED 2411-3059, which demonstrates that Defendant Marie Trombi lied to the Grand Jury.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents supporting your allegation that Deputy Marie Trombi knowingly provided misinformation to the prosecutor, omitted relevant information, and concealed exculpatory evidence.

**RESPONSE:**

See Flakes' <u>Motion to Remand</u>, including exhibits and Grand Jury Transcripts, FLAKE CONFIDENTIAL-SEALED 2411-3059.

**REQUEST FOR PRODUCTION NO. 17:**

All Documents supporting your allegation that defendant Arpaio directed Deputy Trombi to lie to the grand jury.

**RESPONSE:**

See Arpaio video regarding the dismissal of charges against Logan and Austin Flake, http://www.youtube.com/watch?v=bjCZy2G4g00&sns=em, sent via separate Dropbox link.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents supporting your allegation that because of the indictment Logan Flake was suspended from Brigham Young University.

**RESPONSE:**

Plaintiffs never made this allegation.

**REQUEST FOR PRODUCTION NO. 19:**

All Documents supporting your allegation that publicity of the indictment caused you irreparable harm.

**RESPONSE:**

See Response to Request No. 1 above.

**REQUEST FOR PRODUCTION NO. 20:**

All Documents supporting your allegation that defendants knowingly and intentionally presented false evidence used to support criminal charges against you, omitted or withheld evidence, and/or presented evidence with a reckless disregard for the truth.

**RESPONSE:**

See Response to Request No. 1 above.

**REQUEST FOR PRODUCTION NO. 21:**

All Documents supporting your allegation that defendants acted pursuant to a custom and/or practice of targeting, investigating, and prosecuting individuals without probable cause.

**RESPONSE:**

<u>See</u> Responses to Requests Nos. 1 and 7 above.

**REQUEST FOR PRODUCTION NO. 22:**

All Documents supporting your allegation that defendants were consciously aware of the wrongfulness and harmfulness of their conduct.

**RESPONSE:**

<u>See</u> Responses to Request Nos. 1 and 7 above.

**REQUEST FOR PRODUCTION NO. 23:**

The <u>complete</u> grand jury transcript, as referenced in plaintiffs' Complaint, not limited to those portions quoted or otherwise referred to in the Complaint.

**RESPONSE:**

Not in Plaintiffs' possession or control.

Respectfully submitted this 25th day of May 2016.

**MONTOYA, JIMENEZ, LUCERO & PASTOR, P.A.**

Stephen Montoya
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
Attorney for Plaintiffs

I hereby certify that on May 25, 2016, the foregoing document was sent via email to:

Jeffrey S. Leonard
Sacks Tierney, P.A.
4250 North Drinkwater Blvd., 4th Floor
Scottsdale, Arizona 85251
jeffrey.leonard@sackstierney.com
Attorneys for Defendant Maricopa County

**EXHIBIT 5**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


AUSTIN and LOGAN FLAKE, husband )
and wife,                        )
                                 )
        Plaintiffs,              )
                                 )No.
        v.                       )CV-15-01132-PHX-NVW
                                 )
JOSEPH MICHAEL ARPAIO, in his    )
official capacity as Sheriff of  )
the Maricopa County Sheriff's    )
Office, and in his personal      )
capacity along with his wife AVA )
J. ARPAIO; MARICOPA COUNTY, by   )
and through the MARICOPA COUNTY  )
BOARD OF SUPERVISORS Denny       )
Barney, Steve Chucri, Andy       )
Kunasek, Clint Hickman, and Steve )
Gallardo, in their official      )
capacities,                      )
        Defendants.              )
_____)




        VIDEOTAPED DEPOSITION OF LOGAN LAINE BROWN
                Scottsdale, Arizona
                August 1, 2016




                        Prepared by:
                        CINDY MAHONEY, RPR, RMR
                        Certified Court Reporter
                        Certificate No. 50680

DRAFT COPY

1    but --

2        Q    Yes.

3        A    -- in Lindon, yes.

4        Q    Okay.  What were you being paid at Tilton &

5    Co.?

6        A    $12 an hour.

7        Q    For how many hours a week?

8        A    Gosh, it was different.  During tax season --

9    well, during some of the weeks I was working, it could

10    have been 30.  Other weeks, once that was done, probably

11    10 or 15.  I don't even -- I don't remember my schedule.

12    I didn't really have a set schedule.  I just came in

13    when I kind of could when I didn't have class or had to

14    study.

15        Q    What are you being paid at the Elias firm?

16        A    The work I do actually isn't paid by hour, so I

17    don't have an hourly rate or a salary.  It's -- I'm paid

18    by each project I make, and it's 30 percent -- for the

19    job that I do, it's 30 percent of what -- it's -- my

20    boss has actually created a new system, so it's kind of

21    confusing.  But basically I don't have an hourly wage or

22    a salary.  I'm just paid by project.

23        Q    Okay.  And are you seeking recovery for lost

24    income?

25          MR. MONTOYA:  Objection; foundation.

DRAFT COPY

1          THE WITNESS:  I'm not sure.  I'm just

2    seeking -- I'm really not sure if I am or not.  I just

3    want my good name cleared.

4    BY MR. LEONARD:

5      Q    Do you attach a monetary amount to clearing

6    your good name?

7      A    I haven't, no.  I haven't attached that, I

8    don't think.

9      Q    Well, you know that a, you know, a prerequisite

10   to filing a lawsuit is the service of a notice of claim;

11   right?

12     A    Yes, that sounds familiar.

13          MR. MONTOYA:  Objection; foundation.

14          MR. LEONARD:  Asking her if she knows.

15          MR. MONTOYA:  I know, but I have an

16   objection.

17          MR. LEONARD:  Okay.

18          MR. MONTOYA:  You can answer.  She did

19   already.

20          THE WITNESS:  Yeah, I did.  I said yes, I

21   think I'm familiar with that.

22   BY MR. LEONARD:

23     Q    And you know that in that notice of claim there

24   was a statement made that you and Mr. Flake would settle

25   for -- I think it was $8,000,000?

DRAFT COPY

**EXHIBIT 6**

Jeffrey S. Leonard (SBN 003809)
Jeffrey.Leonard@SacksTierney.com
Sharon B. Shively (SBN 009292)
Sharon.Shively@SacksTierney.com
Evan F. Hiller (SBN 028214)
Evan.Hiller@SacksTierney.com
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone: 480.425.2600

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Austin and Logan Flake, husband and wife, | No. CV-15-01132-PHX-NVW |
| Plaintiffs, | **DEFENDANTS' FIRST SET OF INTERROGATORIES TO PLAINTIFF AUSTIN FLAKE** |
| v. | |
| Joseph Michael Arpaio; et al., | |
| Defendants. | |

Pursuant to Rule 33 of the Federal Rules of Civil Procedure ("FRCP"), defendants serve the following interrogatories on plaintiff Austin Flake, for response within 30 days from the date of service.

## DEFINITIONS

1. "Identify," when used in connection with a person, means to state that person's name, address, telephone number, employer, and position of employment.

2. "Identify," when used in connection with a document, means to state the date, author and/or creator, and present custodian of any such document.

3. "Identify," when used in connection with a communication, means to state the names of those participating in the communication, the date of the communication, the substance of the communication, whether or not the communication was in written or recorded form, and to identify any documents reflecting the communication.

4. "Person" means any individual, firm, partnership, corporation, association,

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

governmental body, or any other organization or entity, and any predecessor or successor in interest to any of the foregoing.

5.     "Document" is defined in the broadest manner permissible pursuant to the Federal Rules of Civil Procedure and shall include, without limitation, any written memorandum, letter, e-mail, report, note, correspondence, statement, photograph, video, recording, drawing, map, record, chart, contract, book, manual, treatise, periodical, bill, statement, invoice, journal or diary entry, or other written instrument, any copy of any of the foregoing, in the event the copy is different from the original, plus any tape recording or any other means of electronic, photographic, or video reproduction.

6.     The term "describe," with respect to communications, shall mean to state or identify the date, time, duration, location, persons involved, witnesses, and a summary of the substance of any conversations. With respect to documents, "describe" shall mean to identify the type of document, its date, its author, and its recipients, and to provide a summary of the substance thereof.

7.     Whenever the terms "and" or "or" are used they are to be construed both disjunctively and conjunctively as necessary to bring within the scope of these interrogatories responses that might otherwise be construed to be outside the scope.

8.     "Communication" or "communications" means the transmittal of information by any means between two or more persons and includes, without limitation, written contacts (whether by letter, memoranda, telegram, telex, facsimile, electronic mail or other document) and notes, memoranda, or other memorialization of any oral contacts (whether by face-to-face meetings, telephone conversations, or otherwise).

9.     "Relating" or "relates" shall mean, in addition to its customary and usual meaning, discussing, referring to, pertaining to, reflecting, showing or recording.

10.     "You" and "Your" refers to Plaintiff Austin Flake.

11.     "Plaintiffs" shall refer to plaintiffs Austin Flake and Logan Flake, either collectively or individually.

12.     "MCSO" means the Maricopa County Sheriff's Office, including without

2

limitation, the Maricopa County Sheriff and any Sheriff's Deputies.

13. "MCAO" means the Maricopa County Attorney's Office, including without limitation, the Maricopa County Attorney and any Assistant Maricopa County Attorneys.

## INTERROGATORIES

### Interrogatory No. 1

State in detail all factual and legal (as applied to the facts of this case) bases for Your allegation in paragraph 75 of Your Third Amended Complaint that "[t]here was no probable cause for Defendants to recommend criminal charges against the Flakes to the Maricopa County Attorney's Office."

### Interrogatory No. 2

Identify the persons most knowledgeable about the facts underlying Your allegation, as described in No. 1, above.

### Interrogatory No. 3

Identify all documents, communications, and Electronically Stored Information that concern, relate to, or evidence Your allegation, as described in number 1, above.

### Interrogatory No. 4

State in detail all factual and legal (as applied to the facts of this case) bases for Your allegation in paragraph 77 of Your Third Amended Complaint that "Sheriff Arpaio maliciously advocated for the indictment of the Flakes to hurt his perceived political enemy, Senator Jeff Flake."

### Interrogatory No. 5

Identify the persons most knowledgeable about the facts underlying Your allegation, as described in No. 4, above.

### Interrogatory No. 6

Identify all documents, communications, and Electronically Stored Information that concern, relate to, or evidence Your allegation, as described in number 4, above.

### Interrogatory No. 7

State in detail all factual and legal (as applied to the facts of this case) bases for

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

Your allegation in paragraph 78 of Your Third Amended Complaint that "Detective Marie Trombi maliciously and intentionally lied to the prosecutors and the grand jury in order to obtain a felony indictment against Plaintiffs."

**Interrogatory No. 8**

Identify the persons most knowledgeable about the facts underlying Your allegation, as described in No. 7, above.

**Interrogatory No. 9**

Identify all documents, communications, and Electronically Stored Information that concern, relate to, or evidence Your allegation, as described in number 7, above.

**Interrogatory No. 10**

State in detail all factual and legal (as applied to the facts of this case) bases for Your allegation in paragraph 81 of Your Third Amended Complaint that "Sheriff Arpaio's remarks regarding You in his press release and in his press conference were false and in reckless disregard of the truth," and specifically Identify every such false and reckless statement.

**Interrogatory No. 11**

Identify the persons most knowledgeable about the facts underlying Your allegation, as described in No. 10, above.

**Interrogatory No. 12**

Identify all documents, communications, and Electronically Stored Information that concern, relate to, or evidence Your allegation, as described in number 10, above.

**Interrogatory No. 13**

State in detail all factual and legal (as applied to the facts of this case) bases for Your allegation in paragraph 84 of Your Third Amended Complaint that "Sheriff Arpaio's remarks regarding the Flakes in his press release and in his press conference created a false impression by innuendo that the Flakes were cruel to animals and had committed twenty-one felonies and other crimes in connection with the death of twenty-one dogs."

**Interrogatory No. 14**     **Interrogatory No. 14**

Identify the persons most knowledgeable about the facts underlying Your allegation, as described in No. 13, above.

**Interrogatory No. 15**

Identify all documents, communications, and Electronically Stored Information that concern, relate to, or evidence Your allegation, as described in number 13, above.

**Interrogatory No. 16**

State in detail all factual and legal (as applied to the facts of this case) bases for Your allegations in paragraph 87 of Your Third Amended Complaint that "Sheriff Arpaio advocated for the indictment of Austin and Logan Flake" and that he did so "in order to retaliate against his perceived political enemy, Senator Jeff Flake, for Senator Flake's public criticism of Sheriff Arpaio."

**Interrogatory No. 17**

Identify the persons most knowledgeable about the facts underlying Your allegations, as described in No. 16, above.

**Interrogatory No. 18**

Identify all documents, communications, and Electronically Stored Information that concern, relate to, or evidence Your allegations, as described in number 16, above.

**Interrogatory No. 19**

State in detail all factual and legal (as applied to the facts of this case) bases for Your allegations that the Flakes have been damaged in their reputations and careers, that they have endured death threats, undue stress, anxiety, embarrassment and humiliation, public disrepute, contempt, ridicule, repeated threats of violence, lost income, lost educational opportunities, fear, and depression.

**Interrogatory No. 20**

Identify the persons most knowledgeable about the facts underlying Your allegation, as described in No. 19, above.

5

**Interrogatory No. 21**

Identify all documents, communications, and Electronically Stored Information that concern, relate to, or evidence Your allegation, as described in number 19, above.

**Interrogatory No. 22**

Provide a calculation of every element of damage You claim to have suffered as a result of the acts of the Defendants, as alleged in this case.

DATED this 8th day of November, 2016.

SACKS TIERNEY P.A.

Jeffrey S. Leonard
Attorneys for Defendants

ORIGINAL and one copy mailed this
8th day of November, 2016, to:

Stephen Montoya
MONTOYA JIMENEZ P.A.
The Great American Tower
3200 North Central Avenue, Suite 2550
Phoenix, AZ 85012

COPY mailed this 8th day of November, 2016, to:

Richard Trujillo
RADER LUCERO, PLLC
11260 North Tatum Blvd., Ste. 143D
Phoenix, AZ 85028
*Attorneys for Plaintiffs*

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

6

1589850.v1

**EXHIBIT 7**

Jeffrey S. Leonard (SBN 003809)
Jeffrey.Leonard@SacksTierney.com
Sharon B. Shively (SBN 009292)
Sharon.Shively@SacksTierney.com
Evan F. Hiller (SBN 028214)
Evan.Hiller@SacksTierney.com
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone: 480.425.2600

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Austin and Logan Flake, husband and wife, | No. CV-15-01132-PHX-NVW |
| Plaintiffs, | **DEFENDANTS' FIRST SET OF INTERROGATORIES TO PLAINTIFF LOGAN FLAKE** |
| v. | |
| Joseph Michael Arpaio; et al., | |
| Defendants. | |

Pursuant to Rule 33 of the Federal Rules of Civil Procedure ("FRCP"), defendants serve the following interrogatories on plaintiff Logan Flake, for response within 30 days from the date of service.

## DEFINITIONS

1.　"Identify," when used in connection with a person, means to state that person's name, address, telephone number, employer, and position of employment.

2.　"Identify," when used in connection with a document, means to state the date, author and/or creator, and present custodian of any such document.

3.　"Identify," when used in connection with a communication, means to state the names of those participating in the communication, the date of the communication, the substance of the communication, whether or not the communication was in written or recorded form, and to identify any documents reflecting the communication.

4.　"Person" means any individual, firm, partnership, corporation, association,

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

1  governmental body, or any other organization or entity, and any predecessor or successor in

2  interest to any of the foregoing.

3      5.    "Document" is defined in the broadest manner permissible pursuant to the

4  Federal Rules of Civil Procedure and shall include, without limitation, any written

5  memorandum, letter, e-mail, report, note, correspondence, statement, photograph, video,

6  recording, drawing, map, record, chart, contract, book, manual, treatise, periodical, bill,

7  statement, invoice, journal or diary entry, or other written instrument, any copy of any of

8  the foregoing, in the event the copy is different from the original, plus any tape recording or

9  any other means of electronic, photographic, or video reproduction.

10      6.    The term "describe," with respect to communications, shall mean to state or

11  identify the date, time, duration, location, persons involved, witnesses, and a summary of

12  the substance of any conversations. With respect to documents, "describe" shall mean to

13  identify the type of document, its date, its author, and its recipients, and to provide a

14  summary of the substance thereof.

15      7.    Whenever the terms "and" or "or" are used they are to be construed both

16  disjunctively and conjunctively as necessary to bring within the scope of these

17  interrogatories responses that might otherwise be construed to be outside the scope.

18      8.    "Communication" or "communications" means the transmittal of information

19  by any means between two or more persons and includes, without limitation, written

20  contacts (whether by letter, memoranda, telegram, telex, facsimile, electronic mail or other

21  document) and notes, memoranda, or other memorialization of any oral contacts (whether

22  by face-to-face meetings, telephone conversations, or otherwise).

23      9.    "Relating" or "relates" shall mean, in addition to its customary and usual

24  meaning, discussing, referring to, pertaining to, reflecting, showing or recording.

25      10.    "You" and "Your" refers to Plaintiff Logan Flake.

26      11.    "Plaintiffs" shall refer to plaintiffs Austin Flake and Logan Flake, either

27  collectively or individually.

28      12.    "MCSO" means the Maricopa County Sheriff's Office, including without

2

limitation, the Maricopa County Sheriff and any Sheriff's Deputies.

13.    "MCAO" means the Maricopa County Attorney's Office, including without limitation, the Maricopa County Attorney and any Assistant Maricopa County Attorneys.

## INTERROGATORIES

### Interrogatory No. 1

State in detail all factual and legal (as applied to the facts of this case) bases for Your allegation in paragraph 75 of Your Third Amended Complaint that "[t]here was no probable cause for Defendants to recommend criminal charges against the Flakes to the Maricopa County Attorney's Office."

### Interrogatory No. 2

Identify the persons most knowledgeable about the facts underlying Your allegation, as described in No. 1, above.

### Interrogatory No. 3

Identify all documents, communications, and Electronically Stored Information that concern, relate to, or evidence Your allegation, as described in number 1, above.

### Interrogatory No. 4

State in detail all factual and legal (as applied to the facts of this case) bases for Your allegation in paragraph 77 of Your Third Amended Complaint that "Sheriff Arpaio maliciously advocated for the indictment of the Flakes to hurt his perceived political enemy, Senator Jeff Flake."

### Interrogatory No. 5

Identify the persons most knowledgeable about the facts underlying Your allegation, as described in No. 4, above.

### Interrogatory No. 6

Identify all documents, communications, and Electronically Stored Information that concern, relate to, or evidence Your allegation, as described in number 4, above.

### Interrogatory No. 7

State in detail all factual and legal (as applied to the facts of this case) bases for

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

1589868.v1

Your allegation in paragraph 78 of Your Third Amended Complaint that "Detective Marie Trombi maliciously and intentionally lied to the prosecutors and the grand jury in order to obtain a felony indictment against Plaintiffs."

**Interrogatory No. 8**

Identify the persons most knowledgeable about the facts underlying Your allegation, as described in No. 7, above.

**Interrogatory No. 9**

Identify all documents, communications, and Electronically Stored Information that concern, relate to, or evidence Your allegation, as described in number 7, above.

**Interrogatory No. 10**

State in detail all factual and legal (as applied to the facts of this case) bases for Your allegation in paragraph 81 of Your Third Amended Complaint that "Sheriff Arpaio's remarks regarding You in his press release and in his press conference were false and in reckless disregard of the truth," and specifically Identify every such false and reckless statement.

**Interrogatory No. 11**

Identify the persons most knowledgeable about the facts underlying Your allegation, as described in No. 10, above.

**Interrogatory No. 12**

Identify all documents, communications, and Electronically Stored Information that concern, relate to, or evidence Your allegation, as described in number 10, above.

**Interrogatory No. 13**

State in detail all factual and legal (as applied to the facts of this case) bases for Your allegation in paragraph 84 of Your Third Amended Complaint that "Sheriff Arpaio's remarks regarding the Flakes in his press release and in his press conference created a false impression by innuendo that the Flakes were cruel to animals and had committed twenty-one felonies and other crimes in connection with the death of twenty-one dogs."

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

1589868.v1

**Interrogatory No. 14**

Identify the persons most knowledgeable about the facts underlying Your allegation, as described in No. 13, above.

**Interrogatory No. 15**

Identify all documents, communications, and Electronically Stored Information that concern, relate to, or evidence Your allegation, as described in number 13, above.

**Interrogatory No. 16**

State in detail all factual and legal (as applied to the facts of this case) bases for Your allegations in paragraph 87 of Your Third Amended Complaint that "Sheriff Arpaio advocated for the indictment of Austin and Logan Flake" and that he did so "in order to retaliate against his perceived political enemy, Senator Jeff Flake, for Senator Flake's public criticism of Sheriff Arpaio."

**Interrogatory No. 17**

Identify the persons most knowledgeable about the facts underlying Your allegations, as described in No. 16, above.

**Interrogatory No. 18**

Identify all documents, communications, and Electronically Stored Information that concern, relate to, or evidence Your allegations, as described in number 16, above.

**Interrogatory No. 19**

State in detail all factual and legal (as applied to the facts of this case) bases for Your allegations that the Flakes have been damaged in their reputations and careers, that they have endured death threats, undue stress, anxiety, embarrassment and humiliation, public disrepute, contempt, ridicule, repeated threats of violence, lost income, lost educational opportunities, fear, and depression.

**Interrogatory No. 20**

Identify the persons most knowledgeable about the facts underlying Your allegation, as described in No. 19, above.

**Interrogatory No. 21**

Identify all documents, communications, and Electronically Stored Information that concern, relate to, or evidence Your allegation, as described in number 19, above.

**Interrogatory No. 22**

Provide a calculation of every element of damage You claim to have suffered as a result of the acts of the Defendants, as alleged in this case.


DATED this 8th day of November, 2016.

SACKS TIERNEY P.A.

Jeffrey S. Leonard
Attorneys for Defendants

ORIGINAL and one copy mailed this
8th day of November, 2016, to:

Stephen Montoya
MONTOYA JIMENEZ P.A.
The Great American Tower
3200 North Central Avenue, Suite 2550
Phoenix, AZ 85012

COPY mailed this 8th day of November, 2016, to:

Richard Trujillo
RADER LUCERO, PLLC
11260 North Tatum Blvd., Ste. 143D
Phoenix, AZ 85028
*Attorneys for Plaintiffs*

Frances Sulunder

1589868.v1

**EXHIBIT 8**

**WILENCHIK & BARTNESS**
— A PROFESSIONAL CORPORATION —

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona 85004

Telephone: 602-606-2810    Facsimile: 602-606-2811

Dennis I. Wilenchik, #005350
John D. Wilenchik, #029353
admin@wb-law.com
*Attorneys for Defendant*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| THE STATE OF ARIZONA, | Case No. CR2014-002799-003 |
| **Plaintiff,** | Case No. CR2014-002799-004 |
| v. | |
| AUSTIN LANE FLAKE, | **RULE 15.2 NOTICE OF DEFENSES AND DISCLOSURE BY DEFENDANT** |
| **Defendant.** | |
| | **(Assigned to the Honorable Richard Nothwehr)** |
| THE STATE OF ARIZONA, | |
| **Plaintiff,** | |
| v. | |
| LOGAN FLAKE, | |
| **Defendant.** | |

Pursuant to Rule 15.2(b), Rule 15.2(c), and Rule 15.2(d), of the Arizona Rules of Criminal Procedure, Defendants Austin and Logan Flake ("Defendants") submit the following disclosure.

**RESPECTFULLY SUBMITTED** this 15th day of December, 2014.

**WILENCHIK & BARTNESS, P.C.**

*/s/ Dennis I. Wilenchik*
Dennis I. Wilenchik, Esq.
John D. Wilenchik, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, AZ 85004
*Attorneys for Defendants*
*Austin Lane Flake and Logan Flake*

FLAKE
2475

## A.  NOTICE OF DEFENSES.

Defendants give notice that they may raise the following defenses at trial: no criminal intent; lack of requisite intent; failure to prove elements of offense; charges are subject to dismissal as a matter of law and are unconstitutionally vague as applied; presumption of innocence; no causation; insufficient evidence. Defendants reserve the right to amend their list of defenses. They incorporate the Motions already filed in this court by reference, which include a detail of various facts and defenses to the State's reports and claims. In essence, Defendants did not do anything intentionally, knowingly or recklessly so as to commit any crime against the animals in question. They acted reasonably at all times to care for the animals left in their care for the week and were not cruel to any animal in their custody or care and followed the instructions given to them to do so.

## B.  DISCLOSURE BY DEFENDANTS.

1.  **In support of each of their defenses, Defendants may call the following witnesses:**

    a.  Austin Flake.

    b.  Logan Flake.

    c.  Maleisa Hughes.

    d.  Todd Hughes.

    e.  Any person referred to or identified in the State's disclosure, grand jury transcripts, police reports, or any State's witness otherwise disclosed.

    f.  Custodian of Records at Salt River Project – Wyla McKay, Robert Romack, Aaron Dock or other designated representative.

    g.  Detectives Trombi and Kalinowski of the Sheriff's Office and any other person who worked on the investigation or who has made statements about it, including the Sheriff himself.

    h.  John Schill - animal rights activist and lawyer who urged the Sheriff to bring charges.

Defendants reserve the right to supplement their list of witnesses.

2

FLAKE
2476

**2. Names and addresses of experts:**

    a.    Dr. Melinda Merck
              1101 West 34th St.
              Suite 433
              Austin, Texas 78705

Dr. Merck's expert opinions in this matter have already been disclosed to the State in the Motion to Remand.

    b.    Tom Stone
              9926 North 16th Place East
              Phoenix, AZ 85020

Mr. Stone has not prepared a written report in this matter.

    c.    Wayne Wisdom
              1521 N Project Drive
              Tempe, AZ

Mr. Wisdom did not prepare a written report in this matter.

    d.    George J. Hogge, Ron Ballard

    e.    Any expert witness referred to or identified in the State's disclosure, grand jury transcripts, police reports, or any State's expert witness otherwise disclosed.

Defendants reserve the right to supplement their list of expert witnesses.

**3. Tangible objects of evidence:**

    a.    The "SRP Report" (as this term is defined in Defendants' Motion to Remand). This includes the SRP usage charts produced by SRP and as shown in billings to the Hughes for the week including and surrounding June 20, 2014.

    b.    The "HVAC Report" (as this term is defined in Defendants' Motion to Remand) and any evidence that is referred to, relied upon by, or related to the HVAC Report and findings by George Hogge.

    c.    Any object, thing or document disclosed by the State in its reports produced or used or referred to at trial by the State including the air filter and samples of tissue used by the State veterinarian.

3

FLAKE
2477

d.     Sheriff departmental records and reports of investigation and reports by its deputies including grand jury transcripts and the report concerning the SRP Report by Deputy Kalinowski.

e.     Emails and correspondence between the Sheriff's Office and media as well as John Schill and the owners of the dogs; and internal e-mails concerning the investigation between Sheriff's deputies and the Sheriff, or executive staff and media personnel.

Defendants reserve the right to supplement their list of tangible objects of evidence.

**RESPECTFULLY SUBMITTED** this 15th day of December, 2014.

**WILENCHIK & BARTNESS, P.C.**

*/s/ Dennis I. Wilenchik*
Dennis I. Wilenchik, Esq.
John D. Wilenchik, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, AZ 85004
*Attorneys for Defendants*
*Austin Lane Flake and Logan Flake*

**ELECTRONICALLY** filed this
15th day of January, 2016, using
the Court's E-Filing Online Website

**COPY** emailed December 15, 2014,
to Commissioner Richard Nothwehr
at schulzel@superiorcourt.maricopa.gov

**COPY** of the foregoing
mailed January 4, 2016, to:

William G. Montgomery, Esq.
Shawn L. Steinberg, Esq.
Maricopa County Attorney's Office
301 W. Jefferson, 8th Floor
Phoenix, AZ 85003
Steinbes@mcao.maricopa.gov
montgomw@mcao.maricopa.gov
*Attorneys for Plaintiff*

By:  */s/ Christine M. Ferreira*

4

FLAKE
2478

**EXHIBIT 9**

# DECLARATION OF TOM STONE

I, Tom Stone, make this Declaration of my own knowledge, and I am competent to testify to the matters contained herein.

1.     I am a professional licensed mechanical engineer who specializes in HVAC analysis.

2.     I have reviewed the energy usage readings for the property located at 15723 E. Appleby Road, Gilbert, Arizona (meter #3288889), which is marked as CR 2014-002799 002253 - 002266 (the "SRP Report").

3.     I have reviewed the "Engineering Examination and Analysis Report #1" that is marked as CR2014-002799 00654 – 00701 (the "EE Report"). The EE Report states that the HVAC unit which serviced the room in which the dogs were kept was a "2 ton Rheem HP model #RQMA-A024JK" (hereinafter referred to as the "AC Unit")(page 17 of the EE Report).

4.     The SRP Report clearly indicates that the AC Unit was not "working and on" for several hours between 12:00 AM and 5:30 AM on the morning of June 20th.

5.     The SRP Report shows that energy usage between 12 AM and 6 AM on June 20th was 6.11 kWh lower than average energy usage during the same hours on the previous five days (June 15th to June 19th). The usage between 12 AM and 6 AM on June 20th was also 6.06 kWh lower than the average energy usage during the same hours on the following five days (June 21st to June 25th).

6.     The decrease in the amount of energy usage between 12:00 AM and 5:30 AM on the morning of June 20th as shown in the SRP Report is consistent with the energy that would have been used by the AC Unit during that same time period.

7.     The SRP Report also shows that energy usage on the days previous to and following June 20th is very cyclical between the hours of 12 AM and 6 AM. The cycles

1

that I observed are clearly consistent with the AC Unit turning on and off between those hours, on an hourly or semi-hourly basis.

8. The energy usage on June 20th between 12 AM and 6 AM is flat except for one cycle that is less than an hour long and peaks at 1:45 AM. This is consistent with the AC Unit running only one cycle between those hours and turning off at around 2:00 AM.

9. The SRP report clearly indicates that the AC Unit was not "on, all night" between 12:00 AM and 5:30 AM on June 20th.

I declare under penalty of perjury under the laws of the State of Arizona that I have read the above Declaration, am familiar with its contents, and know the same to be true and correct of my own personal knowledge.

_____

Tom Stone



GW 03-31-16

2

**EXHIBIT 10**

## AFFIDAVIT OF WAYNE WISDOM

STATE OF ARIZONA    )
                          ) ss.
County of Maricopa    )

I, Wayne Wisdom, being first duly sworn upon my oath, depose and say:

1. I am the Director of Electric System Operations for Salt River Project ("SRP"), and I am authorized to make the statements herein on its behalf. I am a registered professional engineer in the State of Arizona.

2. I have reviewed the energy usage readings for the property located at 15723 E. Appleby Road, Gilbert, Arizona (meter #3288889), which is marked as CR 2014-002799 002253 - 002266 (the "SRP Report") and attached as Exhibit "A" hereto.

3. In the SRP Report for June 20th, 2014, the energy readings between 12:00 AM and 6:00 AM are not similar to the energy readings on previous days during the same time, or with following days during the same time. The energy readings between 12:00 AM and 6:00 AM on June 20th, 2014 are lower.

4. The energy usage between the hours of 12:00 AM and 6:00 AM on June 20th was 10.34 kilowatt-hours (kWh).

5. The energy usage between the same hours on June 19th was 16.61 kWh.

6. The energy usage between the same hours on June 18th was 17.17 kWh.

7. The energy usage between the same hours on June 17th was 17.10 kWh.

8. The energy usage between the same hours on June 16th was 16.25 kWh.

9. The energy usage between the same hours on June 15th was 15.10 kWh.

10. Based on the above, the average energy usage between 12:00 AM and 6:00 AM from June 15th to June 19th was 16.45 kWh, which is 6.11 kWh higher than energy usage between the same hours on June 20th.

11. The energy usage between the same hours on June 21st was 16.42 kWh.

12. The energy usage between the same hours on June 22nd was 19.81 kWh.

13. The energy usage between the same hours on June 23rd was 19.94 kWh.

14. The energy usage between the same hours on June 24th was 13.13 kWh.

1

15. The energy usage between the same hours on June 25th was 12.69 kWh.

16. Based on the above, the average energy usage between 12:00 AM and 6:00 AM from June 21st to June 25th was 16.40 kWh, which is 6.06 kWh higher than energy usage between the same hours on June 20th.

17. In addition, as reflected on Exhibit "A," the energy readings both prior to and after June 20th between 2:00 AM and 6:00 AM reflected cycling. However, the energy readings between 2:00 AM and 6:00 AM on June 20th were not cycling.

18. There is no record by SRP of a power outage in the area of 15723 E. Appleby Road on June 20th, 2014.

19. The above observations indicate a decrease in electrical usage between 12:00 AM and 6:00 AM on June 20th, as well as a change from cycling to non-cycling energy usage between 2:00 AM and 6:00 AM on June 20th, as compared with both the previous and following days that are shown on Exhibit "A."

20. The above observations indicate a change from cycling energy usage to non- cycling energy usage between 2:00 AM and 6:00 AM on June 20th, as compared with both the previous and following days that are shown on Exhibit "A."

I have read the foregoing Affidavit and the statements made therein are true and correct to the best of my knowledge, information, and belief.

FURTHER AFFIANT SAYETH NAUGHT.

_Wayne Wisdom_

Wayne Wisdom

SUBSCRIBED AND SWORN to before me this _12_ day of November, 2014 by

_Wayne Wisdom_

_____
Notary Public

My Commission Expires:
3/27/2017



**EXHIBIT 11**

# EXPERT CONSULTATION REPORT

Prepared by:

Dr. Melinda Merck

Veterinary Forensics Consulting, LLC

1101 West 34th St.

Suite 433

Austin, Texas 78705


Prepared for:

Dennis Wilenchik

The Wilenchik & Bartness Building

2810 North Third Street

Phoenix, Arizona 85004


Materials reviewed for the report:

a) Dr. Mangone's Initial Summary
b) Dr. Mangone's Final Summary
c) Dr. Mangone's grand jury testimony transcript
d) Necropsy photographs
e) EFX report
f) SRP Affidavit
g) HVAC Expert Declaration – Tom Stone

Issues:

1. Dr. Mangone states that the cause of death was undetermined yet speculates on possible causes of heat stroke, hypoxia and hypercapnia. Heat stroke as a cause of death is often a diagnosis through the elimination of other causes and based on the alleged and/or known circumstances surrounding death. In heat stroke deaths of animals, it is common to find permanent rigidity of a portion of the leg or the entire leg, which can affect one or more legs of the animal. Dr. Mangone states that the bodies were frozen then thawed prior to necropsy being performed. In some of the necropsy photos it is obvious that at least some of the legs are stiff when the body was moved which is consistent with heat stroke findings. This is not due to rigor mortis which is the transient stiffening of the body muscles after death. Under high environmental temperatures rigor mortis will dissipate in 24 hours or less. It will dissipate faster with decomposition (significantly present according to Dr. Mangone) and with physical activity

1

such as can be seen during some stages of heat stroke. All of this supports that the leg stiffening seen on the necropsy photos is consistent with heat stroke as a cause of death.

2. Symptoms that can be associated with heat stroke include vomiting and/or diarrhea which may or may not be bloody. Though common, vomiting and diarrhea may not occur in every case of heat stroke. According to information provided by Mr. Dennis Wilenchik, the caretakers found a large amount of vomit and diarrhea on the floor when they entered the dogs' room on that Friday morning, June 20, 2014. In some of the necropsy photos dark red fluid can be seen around the mouth and on the forelegs which could be from vomiting but were not noted or described in Dr. Mangone's report. Evidence of diarrhea that could have been present around the anus or rear aspect of the body could not be assessed because no photos were taken of that area in the necropsied dogs. Dr. Mangone states that the 8 dogs necropsied later did not have food in the stomach or significant amounts of feces in the colon. Furthermore he speculates that this indicates the dogs were not fed or were underfed. He even goes on to suggest the caretakers intentionally withheld food to prevent soiling of the environment citing that the caretakers personal dog did have food in the stomach and some feces in the colon. There is no basis for those suggestions or statements. Dr. Mangone did not take into account the possibility of a *loss* of stomach and colon contents – i.e. through vomiting and diarrhea – which further supports the diagnosis of heat stroke. The fact that the buried dog still had food in the stomach and some feces could simply indicate that the dog did not have vomiting and diarrhea occur even with the heat stroke. It could also mean that the dog had a different or delayed gastric emptying time; or that the dog was fed at a later time than the other dogs. It does not indicate that it was the only dog to have received a meal in comparison to the other 8 dogs that were necropsied. In addition, Dr. Mangone states in his report that all of the dogs necropsied were 'in good flesh' indicating they were not showing physical signs of malnutrition.

3. There was no evidence of dehydration in the dogs that were necropsied. Dr. Mangone testified in grand jury that the presence of excess water inside the room would not have made a difference in the outcome. Furthermore, there is no evidence the dogs did *not* have access to water just prior to going into the room for the night.

4. Not all the dogs were necropsied – only 9 (one in the field). It would have been important to ascertain any grossly visible findings in *all* of the deceased dogs regardless of their decomposition state and the ability to collect viable samples for histopathology or toxicology. The necropsies would have been important to ascertain if other findings consistent with heat stroke were visible, evaluate gastrointestinal contents, and to determine if the individual dog had grossly visible evidence of any other condition that could have contributed to death. It was also noted in the necropsy photos that the dogs necropsied were not shaved to look for evidence of DIC (disseminated intravascular coagulation), i.e. evidence of small hemorrhages on the skin. These hemorrhages from DIC can be one of the findings associated with heat stroke.

5. Dr. Mangone cites the EFX report when addressing airflow and the possibility of decreased oxygen availability in the room. However, he fails to include the statements in the EFX report that it is *likely* the HVAC unit indoor coil would have frozen up due to the plugged air filter and

therefore have ceased operating. This would have resulted in rising environmental temperatures inside the room which provides more support to the diagnosis of heat stroke as the cause of death in the dogs.

6. In Dr. Mangone's grand jury testimony he suggests that a 'tipping point' occurred which caused the death of the large number of dogs due to heat stroke. Without foundation, he suggests there could have been another dog added versus the night before, or there could have been increased agitation such as two dogs getting into a fight (though he states later there was no evidence of dog fighting wounds on the bodies). This is speculation without evidence either of these occurred that night.

7. In grand jury, Dr. Mangone testified that the temperature in the room could have "felt like 100 degrees with those dogs panting" even if the HVAC system was working. This again is speculation and beyond the expertise of a veterinarian.

8. In his testimony, Dr. Mangone states the dogs would have been stressed *prior* to being placed in the room due to the number of dogs and their unfamiliarity with each other. This is pure speculation without foundation. Dr. Mangone has no knowledge of how the dogs interacted together on a daily basis nor their level of stress before being placed in that room. Dogs can also experience stress being placed alone into an individual cage or run. They are social animals and naturally form groups. They can have stress being isolated from other dogs. There is no way to know the presence or level of stress, if any, in these dogs prior to being placed in the room together.

9. The SRP Affidavit and the HVAC Expert Declaration by Tom Stone all support that the HVAC system stopped during the early hours of Friday, June 20, 2014.

10. According to information provided by Mr. Wilenchik from the caretakers, they entered the room where the dogs were to find approximately 20 dogs dead or near death and 4 dogs that appeared fine and walking. There was vomiting, diarrhea and urine all over the room and some of the dying dogs were vomiting, passing diarrhea and urinating. They started removing the dogs that were still breathing from the hot room to outside where it was cooler. Some of the dogs died while moving them out. They started putting water on the dogs that were still alive, then ice per the instructions of the owners of the boarding facility, in an effort to cool the dogs. They stayed with the dogs that were near death to comfort them and all but the 4 dogs that initially appeared fine died within an hour or so. Dr. Mangone testified that hosing a dog with water that is suffering from heat stroke was inappropriate. For the general non-veterinary population that would have been a reasonable reaction. In outdoor animal related events, such as fund raisers involving dog walking, it is common to see children's wading pools placed periodically filled with water for the dogs to get into and cool down. The reaction by the caretakers to use water on the dogs to help cool them was what one would expect a reasonable person to do to render immediate care to help the animal. In heat stroke, once a dog has collapsed the prognosis is guarded. It is unknown whether or not immediate veterinary care would have resulted in a different outcome for the dogs that appeared near death. The actions taken in such an

overwhelming situation by the caretakers of moving the bodies to cooler areas and efforts to cool their temperatures down on dogs that appeared close to dying were reasonable. In heat stroke cases, it is possible for the dog's body temperature to be internally high causing negative physiological changes and damage yet the dog appear normal externally (without clear symptoms of a problem or appear to recover), and then later collapse. This is consistent with what allegedly happened with the dog, Sonny, who appeared to the caretakers to be fine and then a few hours later collapsed and died.

Summary:

Based on the necropsy findings, photographs and the circumstances surrounding death of the dogs (i.e. SRP Affidavit, HVAC Expert Declaration, EFX report, Dr. Mangone's reports) the cause of death for these dogs was heat stroke. The reviewed documents support that the HVAC system was not operating during the early hours of June 20th which is consistent with the EFX statement that the HVAC system indoor coil would likely have frozen and stopped working. The difference in gastric contents and the presence of feces inside the colon between the necropsied dogs can be explained by the vomiting and diarrhea commonly associated with heat stroke. It cannot be stated that the difference is an indicator that only the 'family dog' was being fed. From Dr. Mangone's own report, all of the dogs were in 'good flesh' and showed no signs of malnutrition.

Based on the information provided by Mr. Wilenchik, the caretakers' actions upon findings the live, deceased, and near death dogs were reasonable and for those without veterinary medical training. They provided what they thought was appropriate first aid to alleviate suffering and then stayed with the dogs that were dying. With Sonny appearing to be what they thought was fine, there was no way for them to know he needed medical care. His delay of symptoms, collapse, and death are consistent with heat stroke.

This report was based on materials provided listed at the beginning. It would be helpful to review the standard photo log for the necropsy photographs, videos of the necropsy, histopathology reports and toxicology reports which have not been provided.

Dr. Melinda D. Merck          11/19/14