Jeffrey S. Leonard (SBN 003809)
Jeffrey.Leonard@SacksTierney.com
Evan F. Hiller (SBN 028214)
Evan.Hiller@SacksTierney.com
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone: 480.425.2600
Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Austin Flake and Logan Flake,<br><br>                    Plaintiffs,<br><br>          v.<br><br>Joseph Michael Arpaio; et al.,<br><br>                    Defendants. | No. CV-15-01132-PHX-NVW<br><br>**RESPONSE TO PLAINTIFFS' SECOND MOTION TO COMPEL** |

Plaintiffs' Second Motion to Compel not only misstates facts, but also seeks to expand this proceeding far beyond what the Court has ordered, far beyond the issue that led to the Court's Order, and far beyond anything that is reasonable under the circumstances.[1] The motion should be denied.

### Defendants Have Complied With the Court's Order: The Documents in Question Have Been Located and Provided to Plaintiffs

What the Court ordered is clear. The Court (1) cited two documents that were referred to at trial – a "many feet-long chart or outline of the case," and a "graphic power consumption chart prepared by Ms. Steinberg and her staff," (2) ordered that efforts be made to find the two charts, (3) ordered that, if found, they should be provided to Plaintiffs' counsel, and (4) ordered that, if not found, efforts should be made to determine what

---

[1] What Plaintiffs have not done, however, is to respond to the Court's directive, that is, to explain why Defendants' status reports are not an adequate explanation of the questions raised in the December 14, 2017 Order.

**SACKS TIERNEY** P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251–3693

happened to them, why they were not maintained, and who was responsible for their preservation. Civil Trial Minutes, December 11, 2017 (Doc. 184).

As Defendants reported to the Court on January 5 (Supplemental Status Report, Doc. 204), the charts were located. The Supplemental Status Report explained the circumstances.

With respect to the "many feet-long" chart, Defendants suggested that, because of its size (which turns out to be approximately 18 feet in length), it initially be made available for inspection by Plaintiffs' counsel at the offices of Defendants' counsel. (Doc. 204, page 3). Plaintiffs' counsel conducted that inspection on January 19. Following that inspection by counsel, the chart was sent to a copy service that had the ability to copy a document that large by first scanning and then printing the document. A copy was produced (at a cost of more than $700), and the copy was delivered to Plaintiffs' counsel immediately upon receipt – at 12:26 p.m. on January 26, approximately five hours before Plaintiffs filed their response to the Court's Order to Show Cause, which response falsely stated that Defendants had neither produced the document nor "indicated when or under what circumstances they intend to do so." (Doc. 207, page 2). *See* Exhibits A (invoice for copying) and B (proof of delivery), annexed to this response.

The "graphic power consumption chart prepared by Ms. Steinberg and her staff" was actually produced to Plaintiffs' counsel as Exhibit 4 to Defendants' Supplemental Status Report (Doc. 204) on January 5. Despite this, Plaintiffs have falsely stated that the Defendants have failed to produce that chart. (Doc. 207, page 2).[2]

In its minute entry order of January 3, 2018 (Doc. 203), the Court also granted Plaintiffs' request that Defendants respond to Plaintiffs' questions (1) When did Defendants' counsel first learn of the possible existence of the missing documents, and (2) did Defendants' counsel withhold any documents based on any purported privilege.

---

[2] If Plaintiffs are referring not to that chart but to the additional electrical usage chart that was in the Supplemental Status Report (Doc. 204, page 5), that chart too was made available for inspection, was inspected on January 19, was copied, and was produced to Plaintiffs on January 26, before Plaintiffs' latest filing.

2028903.v1

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

Defendants' Supplemental Status Report did so. *See* Supplemental Status Report (Doc. 204), at 2-3, 5. Plaintiffs' assertion that "none of the documents submitted as 'Exhibit 1' to Defendants' Supplemental Status Report were ever either disclosed or produced to Plaintiffs in the course of pretrial discovery" (Doc. 207, page 3) (original emphasis omitted) is so blatantly misleading as to be false. As explained in the Supplemental Status Report (Doc. 204, page 2), those documents were in fact produced to Mr. Montoya's predecessor, Dennis Wilenchik, in response to Mr. Wilenchik's public records requests.[3]

## Plaintiffs' Second Motion to Compel Lacks Any Basis

As a part of their Second Motion to Compel, Plaintiffs seek to conduct a far-ranging inquiry on immaterial matters (for example, "Where is the machine that printed the documents") that they never showed any interest in pursuing, as to any other documents, while discovery was still open in this case. They also seek depositions – of "the County's custodian of records regarding the criminal accusations against Austin and Logan"[4] and of prosecutor Shawn Steinberg – that they never took while discovery was still open in this case. And they seek a deposition of Det. Trombi, having already taken her deposition, in which they:

- examined Det. Trombi extensively about the SRP records that form the basis of the electrical usage chart and in which she testified as follows:

Q. . . . Did you tell the prosecutors that the Salt River Project report showed that the air conditioning in the animal room was working all night?

[Objection]

A. So they had a chart and, like I said, we had a meeting. We had least one that I recall and we brought in charts. They had the SRP report. They had the forensic expert report. They had all of that. I submitted all of that with my report and they went over it. And then they decided, based on the information that I gave them, whether to charge or not.

(Deposition of Marie Trombi, July 20, 2016, page 204) (annexed as Exhibit C); and

---

[3] Mr. Wilenchik, who filed this action, was subsequently disqualified by order of Judge Rayes (Doc. 18) for a conflict of interest, and was succeeded by Mr. Montoya (Doc. 22).

[4] There is no such position or job description as a Maricopa County custodian of records concerning "criminal accusations."

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251–3693

- failed to examine her at all about the very phone records – *contained within the Investigative Report* – that form the basis of the large phone records chart.

What Plaintiffs avoid, however, is any explanation of the materiality of the documents they have now seen. Having both reviewed and been provided copies of the documents, as well as the additional electrical usage chart, Plaintiffs do not even attempt to explain how possessing any of these documents could possibly have affected the outcome of the trial.

With respect to the telephone chart, Plaintiffs say that it contains "hundreds of records of unexplained telephone communications potentially involving Plaintiffs . . . ." (Doc. 204, page 3). They have pointed to nothing, though, that suggests that the chart contains *additional* material evidence. The chart shows a graphic depiction of telephone records that are contained in the MCSO Investigative Report; that Plaintiffs have had in their possession since mid-2016; that *Defendants* sought to admit at trial (Defendants' original Exhibit 30) over Plaintiffs' objection; and most of which Plaintiffs successfully sought to exclude at trial.

With respect to the electrical usage chart, Plaintiffs say only that it "undermines Defendants' claim that they actually believed that the SRP records showed that the air conditioning unit was 'working all night'" and that "no *reasonable* person could have reached that conclusion" (emphasis original). Plaintiffs do not explain how that is so. Plaintiffs *had* a graphic representation of the SRP data concerning power consumption, showed that graphic representation to the witnesses, and examined the witnesses – who did not take issue with it – about it. Based on that evidence, Plaintiffs argued that Detective Trombi was "really dumb or a liar" and that Deputy County Attorney Steinberg was "a double liar," and either "a liar or an idiot." (Transcript of Closing Argument, pages 24-25, annexed as Exhibit D). What Plaintiffs do not do is to even attempt to explain what the chart now at issue actually shows, or whether it differs from or is the same or similar to the charts that Plaintiffs successfully introduced at trial, or how their position or proof would be materially altered.

4

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

Having nothing to argue from the documents themselves, Plaintiffs choose to conduct an inquest into the prior lack of the documents. In so doing, they have chosen to ignore positions taken and issues raised during the course of the litigation, while attempting to gain advantage from those positions previously taken and issues raised years later, when they see an opportunity for advantage. Thus:

- The chart of phone records was referred to in several emails between Mr. Young and Detective Kalinowski, which were produced to the Flakes' lawyers in March of 2015 pursuant to public records requests. *See* Letter from Michael Hall, Legal Liaison, Compliance Division, Maricopa County Sheriff's Office, to Dennis I. Wilenchik (March 26, 2015), at 3-7 (Doc. 204, Exhibit 1). On July 16, 2014, for example, Mr. Young states (to Det. Kalinowski): "I have a large chart for you showing the calls." (*See* Doc. 204, Exhibit 1 at page 5).

It appears that when the large chart was delivered to MCAO, a second printout was not made or kept by MCSO, and so was not found in the MCSO files. Both Plaintiffs' counsel and Defendants' counsel should have been more alert to the reference in the MCSO correspondence. Plaintiffs' counsel said and did nothing.

The underlying data, however, was contained in the MCSO files and was included in the Investigative Report that was proffered as Exhibit 30 by Defendants at trial, opposed in large part by Plaintiffs, and largely excluded.

- In response to Plaintiffs' request for investigative files and documents supporting probable cause, Defendants clearly articulated, more than two years ago, that they were producing the MCSO file, and not the MCAO file:

The Maricopa County Sheriff's Office ("MCSO") has assembled its files reflecting its investigation of the death of the dogs at the Green Acre Dog Boarding facility. Those files are now being reviewed for statutorily non-disclosable information and for privileged information. The documents will be produced as soon as that review is completed.

\* \* \*

MSCO has assembled its files reflecting its investigation of the death of the dogs at the Green Acre Dog Boarding facility. Those files are now being reviewed for statutorily non-disclosable information and for privileged

5

> information. The documents will be produced as soon as that review is completed. *The Maricopa County Attorney's Office, not MCSO, was the prosecuting agency in the case. MCSO does not have, or have access to, the MCAO files.*

*See* Plaintiffs' May 17, 2016, document request (Doc. 204, Exhibit 5) and Defendants' June 20, 2016, response (Doc. 204, Exhibit 6) (emphasis added).

The initial response was followed, on July 8, 2016, by Defendants' First Supplemental Response to Plaintiffs' First Set of Requests for Production of Documents (Doc. 204, Exhibit 7), and, on July 13, 2016, by Defendants' Second Supplemental Response to Plaintiffs' First Set of Requests for Production of Documents (Doc. 204, Exhibit 8), each explicitly incorporating the prior responses. During the course of making these responses, Defendants produced the entire MCSO Investigative file. *See, e.g.* Defendants' Second Supplemental Response to Plaintiffs' First Set of Requests for Production of Documents (Doc. 204, Exhibit 8) at page 2, referring to MCSO_001270 through MCSO_003333 (the Investigative Report).

Plaintiffs made no protest that the documents produced were incomplete, insufficient, or non-responsive, or that Defendants' clearly articulated statement that what was being produced were the records of MCSO and not MCAO was improper or unacceptable. Had Plaintiffs done so, any dispute would have been resolved by the Court if necessary in a timely manner. [5]

In articulating the history of this case and Plaintiffs' failure to raise any question over a period of two years concerning the scope or content of production, Defendants are *not* suggesting that it was not their responsibility to conduct an adequate document search. They *are* suggesting, however, that it is wrong for Plaintiffs to try now to raise issues and

---

[5] Plaintiffs argue (Second Motion to Compel, page 4) that MCSO and MCAO are merely "departments" within Maricopa County. The Court is aware of the County's position with respect to the structure of County government in Arizona, and of the County's contention with respect to the distribution of powers pursuant to the Tenth Amendment to the United States Constitution. Here, however, the point is immaterial. If this were an issue that Plaintiffs wished to pursue – other than to take belated advantage – they would have pursued it two years ago, not now. In the event the Court were to disagree, Defendants would respectfully urge the Court to certify the matter to the Supreme Court of Arizona pursuant to A.R.S §12-1861, et seq.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

2028903.v1

arguments that they had no interest in raising before, simply because they believe it to their advantage now to do so.

Unable to articulate any materially adverse effect of their prior lack of the documents in question, Plaintiffs have created a laundry list of additional discovery they now want, without any basis for obtaining it. Plaintiffs' laundry list of new discovery they want from Defendants would be oppressively overbroad if it were timely, but it is not.

Plaintiffs' have not demonstrated why their Second Motion to Compel should be granted. That motion should be denied.

Respectfully submitted,

DATED February 9, 2018.

SACKS TIERNEY P.A.

*s/Jeffrey S. Leonard*
Jeffrey S. Leonard
Evan F. Hiller
Attorneys for Defendants

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

2028903.v1

CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2018, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Stephen Montoya
Richard Trujillo
MONTOYA, LUCERO & PASTOR, P.A.
The Great American Tower
3200 North Central Avenue, Suite 2550
Phoenix, AZ 85012
*Attorneys for Plaintiffs*

*s/ Michelle L. Curtsinger*

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693