Stephen Montoya (#011791)
Richard J. Trujillo (#002730)
**Montoya, Lucero & Pastor, P.A.**
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
602-256-6718 (telephone)
602-256-6667 (fax)
stephen@montoyalawgroup.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Austin Flake and Logan Flake, <br><br> Plaintiffs, <br><br> vs. <br><br> Joseph Michael Arpaio, et al., <br><br> Defendants. | No. CV 15-01132-PHX-NVW <br><br> **PLAINTIFFS' HEARING MEMORANDUM ON THE COURT'S ORDER TO SHOW CAUSE** <br><br> (Hearing scheduled for March 2, 2018 at 10:00 a.m.) |

Plaintiffs hereby submit the following Hearing Memorandum in connection with the hearing on the Court's Order to Show Cause of January 12, 2018, Clerk's Docket No. 206.

Respectfully submitted this 28th day of February 2018.

**MONTOYA, LUCERO & PASTOR, P.A.**

_____
Stephen Montoya
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
Attorneys for Plaintiffs

## MEMORANDUM OF POINTS AND AUTHORITIES

### A. What we still don't know about the documents revealed for the first time at trial:

On December 13, 2017, soon after it was revealed for the first time during the trial cross-examination of former Deputy County Attorney Shawn Steinberg that Defendants had failed to produce (1) a large chart regarding the case allegedly created by Detective Marie Trombi, and (2) a graph of the electrical usage at the Hughes' home in June 2014 created by Ms. Steinberg, the Court stated that it wanted to "*know everything about*" the missing documents and ordered Defendants to search for and produce them to Plaintiffs. See Trial Trans., 12/13/17, p. 122, line 22, attached as Exhibit A (emphasis added).

Notwithstanding the Court's express desire to "know everything about" the missing documents and the passage of over two months since their existence was first revealed to Plaintiffs, Defendants remain silent regarding the most basic facts regarding the documents. Specifically, here's what we still don't know about the documents.

**What we still don't know about the telephone chart:**

- We still don't know who made the eighteen foot telephone chart;
- We still don't know when the telephone chart was made;
- We still don't know where the telephone chart was made[1];
- We still don't know why the telephone chart was made;
- We still don't know how, when and where the telephone chart was used;
- We still don't know what the majority of data on the telephone chart means;
- We still don't know if the telephone chart was altered in any way; and
- We still don't know when Defendants' counsel first learned of the telephone

---

[1] This issue is important because Defendants' counsel claimed to the Court that the telephone chart and power usage graph were both too big to copy, see Defendants' Supplemental Status Report, p. 3, lines 5-7, which begs the question of how the County printed them in the first place. Although Defendants refuse to answer this question, they nevertheless presented Plaintiffs with a bill of $713.50 for copying the two documents at a third-party vendor. See attached "Exhibit B."

chart.[2]

**What we still don't know about the three (3) new SRP Graphs:**

- We still don't know who made any of the three new SRP Graphs[3];

- We still don't know when any of the three new SRP Graphs were made[4];

- We still don't know where any of the three new SRP Graphs were made;

- We still don't know why any of the three new SRP Graphs were made;

- We still don't know if any "expert" or professional associated with Defendants reviewed or analyzed the three new SRP Graphs;

---

[2] Defendants' counsel appears to suggest that he first learned of the telephone chart by means of five emails of mid-July 2014 between MCSO "criminal intelligence analyst" Jim Young and MCSO Detective Robert Kalinowski that mention both a telephone chart *and* a power usage graph. See Defendants' Supplemental Status Report, at p. 3, lines 8-11, and Exhibit 1, pp. 2, 4-6. (For the Court's convenient review, copies of the five emails are attached as "Exhibit C.") The five emails were apparently provided by Defendant Maricopa County to Plaintiffs' criminal defense counsel Dennis Wilenchik in March of 2015 pursuant to a public records request *before* this civil action was even filed on June 19, 2015. Id.

However, Defendants' counsel continues to refuse to disclose when they first reviewed the five emails and thereby allegedly learned of the chart and graphs. See attached Exhibit D. Thus, the question of when Defendants' counsel first learned of the missing documents remains unanswered. Defendants' counsel's repeated failures to answer this basic question suggests obfuscation.

In any event, Defendants did *not* provide the emails (or the related chart and graphs) to Plaintiffs during the course of discovery in this case.

[3] The three new SRP Graphs are reproduced at Defendants' Supplemental Status Report, at Exhibit 1, p. 4, Exhibit 4, and Exhibit 9 respectively. It appears (but is *not* certain) that at least one of the graphs was made by MCSO criminal intelligence analyst Jim Young in July 2014. See Defendants' Supplemental Status Report, Exhibit 1, pp. 4-6. However, Defendants have *not* submitted any affidavits or other testimony providing foundation to any of the documents they have produced post-trial. We are thus left only with the vague (and self-serving) assertions of Defendants' counsel to understand the documents.

[4] As mentioned above, it appears that at least one of the graphs was created in July 2014 at the MCSO.

3

- We still don't know if any of the three new SRP Graphs were altered in any way; and
- We still don't know how, when and where any of the three new SRP Graphs were actually used.

**What we also still don't know:**

- We also still don't know specifically or generally what Defendants' counsel did to determine that his clients had complied with Plaintiffs' discovery requests by producing "every document in [their] possession or control regarding Logan Flake, Austin Flake, Jeff Flake, and/or Jesse and MaLeisa Hughes." See attached Exhibit E, at p. 5, ¶ 4;
- We also still don't know if there are other documents responsive to Plaintiffs' discovery requests that Defendants have failed to produce;
- We also still don't know if the MCSO provided the MCAO other as of yet undisclosed documents regarding the allegations against Plaintiffs and thereby further commingled the MCSO's file with the MCAO's file. (Although Defendants attempt to draw a distinction between the "MCSO file" and the "MCAO file," in fact, the MCSO and the MCAO are two departments within the same government entity, namely, Defendant Maricopa County. Thus, the MCAO and MCSO's files are both "County files" and the County is indisputably a defendant in this case);
- Moreover, and in any event, because Trombi gave "MCSO's file" to Steinberg, there is really only one file for all practical purposes. In order to determine whether or not there are other material undisclosed documents in the so-called "MCAO file," that file needs to be produced by Defendants and examined by Plaintiffs' counsel.

**B.     Why these questions are important:**

Even at this early juncture, it is clear that the three belatedly disclosed power usage graphs alone would have seriously cracked the credibility of Trombi and Steinberg's

4

respective trial testimony. Specifically, if Trombi and Steinberg had access to any of the three new SRP graphs during the grand jury proceedings against Plaintiffs, that fact would have *shattered* their claim at trial that they believed that the SRP records demonstrated that the air conditioning in the dog room was "working fine all night" when the dogs died on Friday, June 20, 2014.

In fact, all three of the new SRP graphs illustrate that the electrical consumption at the Hughes' home was uniquely and singularly low during the early hours of June 20, 2014, thus corroborating Plaintiffs' claim that the air conditioning unit cooling the dog room unexpectedly failed on the night of June 20th. If any of the three graphs were created *before* Steinberg and Trombi persuaded the grand jury to indict Plaintiffs, Steinberg and Trombi's failure to disclose the graphs to the grand jury would be compelling evidence of lack of candor and bias on their part. Indeed, as the Court observed at trial during a discussion of the undisclosed graphs outside of the presence of the jury, *"[i]f [Steinberg's] graph was the same as Mr. Wilenchik's graph, wow."* See Exhibit A, p.122, lines 2-6.[5]

This conclusion is underscored by the fact that the grand jury repeatedly and explicitly asked Trombi if the SRP records showed that the AC in the dog room was "on all night." Specifically, in response to a direct question by a grand juror—and in the presence of Steinberg—Trombi testified that:

> GRAND JUROR: I'd like to clarify also. So the air was working and on until 5:30 that morning when he tried to fix it, Austin Flake tried to fix it, correct? *That's what SRP said?*
>
> MARIE TROMBI: *That's going by SRP records, yes.*
>
> GRAND JUROR: That it was on?

---

[5] The Court also commented that, "if [Steinberg] generated a graph [of the SRP records] that could be highly probative about what she did, what she believed, what she had gotten from Detective Trombi. This is highly potentially relevant . . . ." Exhibit A, p. 121, lines 10-12.

5

MONTOYA, LUCERO & PASTOR
A PROFESSIONAL ASSOCIATION OF LAWYERS
3200 NORTH CENTRAL AVENUE, SUITE 2550
PHOENIX, ARIZONA 85012

> MARIE TROMBI: *It was on, all night.*
>
> GRAND JUROR: All night?
>
> MARIE TROMBI: *All night.*
>
> GRAND JUROR: Thank you.

Exhibit F, p. 98, line 23 to p. 99, line 8, (emphasis added). Similarly, Trombi also testified to the grand jury that:

> Q. So the SRP report shows that the air was working *fine all night*?
>
> A. *Yes*.

Id. at p. 92, lines 19-21 (emphasis added). In response to these repeated, direct questions from the grand jury itself, why didn't Trombi and Steinberg simply show the grand jury any of the three graphs? Their failure to do so is compelling evidence of their deception.[6]

This conclusion is confirmed by the fact that the five MCSO's emails referencing the power usage graphs are dated July 15, 17, and 21, 2014 respectively, see attached Exhibit C—months *before* Trombi and Steinberg presented the case to the grand jury on October 10, 2014. Thus, in all probability, *Trombi and Steinberg possessed the three graphs before the grand jury proceedings*, *but nevertheless chose not to present any of them to the grand jury notwithstanding the grand jury's explicit interest in the SRP records*.[7]

---

[6] Of course, as an Officer of the Court, Steinberg had a duty to correct Trombi's false testimony to the grand jury, but nevertheless failed to do so.

[7] As the Court recalls, Steinberg testified during cross-examination at trial that she also made a graph of the electrical consumption of the Hughes' home during the relevant time period. At this juncture, it is unclear which of the three graphs (if any) were created by Steinberg. The emails regarding the graphs suggest that they were all made at the Sheriff's Office. Perhaps Steinberg's graph has yet to be produced. Defendants' counsel elected *not* to provide the Court (or Plaintiffs' counsel) with an affidavit explaining the authorship of any of the three graphs. That is just one reason why Plaintiffs' Second Motion to Compel seeks to take the depositions of Trombi, Steinberg and the County's

Although Plaintiffs' counsel accused Trombi and Steinberg of dishonesty in his closing argument, having objective, graphic *evidence* created by Trombi and Steinberg themselves would have done more to undermine their credibility than any contentions by counsel. See, e.g., Ninth Circuit Manual of Model Civil Jury Instructions, 1.10 ("Arguments and statements by lawyers are *not* evidence" [emphasis added]).

Plaintiffs intend to move for a new trial based upon the undisclosed materials after the Court enters a final judgment in this case. However, Plaintiffs prefer to move for a new trial only *after* they receive the information requested in their Second Motion to Compel for the reasons stated above. The only way to accurately determine if there are other undisclosed documents responsive to Plaintiffs' discovery requests is to allow Plaintiffs to review the MCSO and the MCAO's files regarding the investigation and prosecution of Austin Flake and Logan Flake. The only way to understand the relevance of the missing documents is to allow Plaintiffs to conduct discovery (including appropriate depositions) regarding them.

Respectfully submitted this 28th day of February 2018.

**MONTOYA, LUCERO & PASTOR, P.A.**

_____
Stephen Montoya
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
Attorneys for Plaintiffs

---

custodian of records regarding these issues.

I hereby certify that on February 28, 2018, I electronically transmitted the foregoing document to the Clerk of Court using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrants:

Jeffrey S. Leonard
Evan F. Hiller
Sacks Tierney, P.A.
4250 North Drinkwater Blvd., 4th Floor
Scottsdale, Arizona 85251
Attorneys for Defendants

/s/ Stephen Montoya
_____