**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Austin Flake and Logan Flake, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>Joseph Michael Arpaio, in his official capacity as Sheriff of the Maricopa County Sheriff's Office, and in his personal capacity along with his wife Ava J. Arpaio; Maricopa County, a political subdivision of the State or Arizona; Marie Trombi, in her personal capacity,<br><br>Defendants. | No. CV-15-01132-PHX-NVW<br><br>**ORDER** |

Before the Court is Plaintiffs' Motion for a New Trial (Doc. 247) and Memorandum in Support (Doc. 254), the Response, and the Reply. The Motion will be denied.

**I. BACKGROUND**

**A. The Action Through Summary Judgment**

Jesse and MaLeisa Hughes (the "Hugheses") ran a dog kennel business. In June 2014, Austin Flake and Logan Brown (collectively, the "Flakes") were helping the Hugheses, Logan's parents, by watching the dogs when the Hugheses went out of town. (Doc. 134 at 1-2.) "The first five days passed without incident." (*Id.* at 2.) But at 5:30 a.m. on June 20, 2014, Austin went to check on the dogs and found twenty-one of them were either dead or seriously ill. (*Id.*)

Deputies from the Maricopa County Sheriff's Office (the "Sheriff's Office"), then headed by Sheriff Joseph Arpaio ("Arpaio"), came the next day to investigate. (*Id.*) Defendant Marie Trombi ("Trombi"), a deputy sheriff, was the appointed investigator. (*Id.* at 4.) Although initially referring to the incident as a "tragic accident," on June 23, 2014, the Sheriff's Office issued a press release promising a full investigation into the deaths of the dogs. (*Id.* at 2-3.) As part of the resulting investigation, electrical engineer George Hogge provided the Sheriff's Office with a report. (*Id.* at 3-4.) "Hogge concluded that the air conditioning system in the kennel was 'inadequate and improperly configured' for the room, but he also said the air conditioner operated all night." (*Id.* at 4.)

Months later, on September 9, 2014, Arpaio held a twenty-two minute press conference. (*Id.*) He announced that he was recommending to the Maricopa County Attorney's Office (the "County Attorney's Office") that the Flakes and Hugheses be charged with twenty-one felony counts and six misdemeanor counts of animal cruelty. (*Id.*) He was "very confident" the Sheriff's Office had the proper evidence, adding, "I always said it doesn't meet the smell test when you put 28 dogs in a 9-by-12 room." (*Id.*)

On October 10, 2014, the County Attorney's Office went to a grand jury to obtain an indictment of the Flakes and Hugheses. (*Id.*) Trombi testified to the grand jury that the electric records showed the air conditioning was on and working all night. (*Id.* at 5.) Hogge's report, to which Trombi had access, concluded the kennel's air conditioning unit was "inadequate and improperly configured" for the room, but it also concluded there was "no evidence of any electrical or mechanical failure of the [ ] system." (*Id.*) When specifically asked by the grand jurors if the air conditioner was on, Trombi said the electrical records indicated it was on all night. (*Id.*) The grand jury indicted the Flakes on all counts. Later, during her deposition in this case, Trombi said she believed the Flakes "did not purposefully or intentionally harm any of the dogs and that they were not responsible for the kennel's poor ventilation." (*Id.* at 6.)

The Flakes filed a motion on December 2, 2014, to return the case to the grand jury in light of Trombi's "material misrepresentations and omissions." (*Id.* at 5.) Three weeks later, the County Attorney's Office voluntarily dismissed the case. (*Id.*) The County Attorney told the press that "the theory of the case as initially presented to the Grand Jury did not take into account the possibility that there were issues with an air conditioning unit." (*Id.*) Dismissing the case, the County Attorney said, was the result of their "ethical and professional duty as prosecutors to review information presented" and to evaluate its impact on the case. (*Id.*)

Arpaio then issued another press release and posted an online video statement. (*Id.*) He stated that he believed charges would be re-filed because of facts uncovered in the Sheriff's Office's investigation. (*Id.* at 5-6.) No such charges were filed. (*Id.* at 6.)

The Flakes sued in this Court on June 19, 2015, naming Arpaio, Trombi, and Maricopa County (the "County") as Defendants. (*Id.*) They claimed malicious prosecution, defamation, false light invasion of privacy, and First Amendment retaliation. (*Id.*) For various reasons not relevant here, the Court entered summary judgment in favor of Defendants on the defamation, false light, and First Amendment retaliation claims. (*Id.* at 21.)

The Flakes brought both state and federal malicious prosecution claims against Arpaio. (*Id.* at 13.) The Court concluded as a matter of law that there was no probable cause to believe the Flakes "knowingly or intentionally subjected the dogs to cruel neglect or abandonment," as Arizona law required. (*Id.* at 11-12 (internal quotation marks omitted).) But the Flakes also needed to prove malice. In the federal context, that meant intent to deprive the Flakes "of a specific constitutional right." (*Id.* at 13.) The Flakes failed to carry that burden. But Arizona law does not have the constitutional right requirement, and it was "readily inferable that Arpaio reached out to prosecute the Flakes for the primary improper purpose of garnering publicity." (*Id.*) Finally, the Court also noted that it was a triable question whether Arpaio was entitled to qualified immunity.

(*Id.* at 20-21.) Under Arizona law, the inquiry was whether "Arpaio knew or should have known that he was acting in violation of established law or acted in reckless disregard of whether his activities would deprive another person of their rights." (*Id.* (quoting *Chamberlain v. Mathis*, 151 Ariz. 551, 558, 729 P.2d 905, 912 (1986) (internal quotation marks omitted).) The inquiry is therefore subjective. Because a reasonable factfinder could find Arpaio acted primarily to garner publicity, the Court could not conclude he was entitled to qualified immunity. (*Id.* at 21.)

By contrast, the Flakes brought only a federal law malicious prosecution claim against Trombi. The Court at first found that "a finder of fact could not reasonably conclude that Trombi knew she was conveying false information to the grand jury and to prosecutors." (*Id.* at 12.) The record showed, at most, that she misunderstood animal cruelty law but not that she offered a knowing falsehood. (*Id.* at 9.) Further, there was "no evidence that she acted for the specific purpose of denying the Flakes a federal right." (*Id.* at 12.) Finally, federal law carries an "independent judgment presumption"—that the prosecutor exercised independent judgment in determining there was probable cause, "absolving from liability any law enforcement officers who may have aided pre-indictment." (*Id.* at 7.) To overcome the presumption, the officer must have exerted undue pressure, knowingly provided misinformation, or concealed exculpatory evidence. (*Id.* at 8.) The Court found no evidence suggesting Trombi "exhibited an improper motive that interfered with the prosecutors' decision. As a matter of law, on the record here only Arpaio could have exerted improper influence over the County Attorney's Office." (*Id.* at 9.) Having already concluded summary judgment in Trombi's favor was appropriate, the Court did not reach the question of her possible qualified immunity.

Thus, only the state law malicious prosecution claim against Arpaio (and the County), with its attendant qualified immunity defense, remained for trial.

## B. The Trial and Other Subsequent Events

At trial, the jury was instructed as follows:

> Plaintiffs allege that Defendants are liable for malicious prosecution. For Defendants to be found liable for malicious prosecution, Plaintiffs must prove by a preponderance of the evidence:
> 1. That the defendant initiated or took active part in the prosecution of a criminal action against the plaintiff;
> 2. That the defendant acted for a primary purpose other than to bring an offender to justice;
> 3. That the criminal action was brought without probable cause;[1] and
> 4. That the plaintiff was damaged by the criminal action.
>
> The defendant initiated or took active part in the prosecution if (1) his desire to have the proceedings initiated, expressed by direction, request, or pressure of any kind, was the determining factor in the prosecutor's decision to commence the prosecution or (2) he knowingly furnished false or materially incomplete information to the prosecutor.

(Doc. 185 at 2-3.) The instructions further explained that the "defendant's desire to have the proceedings initiated was not the determining factor in the prosecutor's decision to commence the prosecution if the defendant made full and truthful disclosure of all material and relevant facts known to him and the prosecutor made an independent decision to prosecute." (*Id.* at 3.) "A decision to prosecute is not independent if the prosecutor's decision was influenced by the defendant's desire to have the proceedings initiated for a purpose other than to bring an offender to justice, whether or not the prosecutor shared in the improper purpose." (*Id.*)

On December 15, 2017, the jury returned a general verdict for Defendants. (Doc. 187).

During the trial, the Court vacated the portion of its order granting summary judgment to Trombi. (Doc. 182.) Vacating that part of the order meant that the 42 U.S.C. § 1983 claim for malicious prosecution could now proceed in a separate trial. The

---
[1] The Court explained that this element was already satisfied as a matter of law.

- 5 -

Flakes discovered, late in the first trial, graphs prepared by the Sheriff's Office and the County Attorney's Office that, they say, suggest Trombi was aware the air conditioning failed during the night. Therefore, it was no longer true that there was no evidence Trombi misled the prosecutor or the grand jury when she swore the air conditioning was on all night. If she did so, the malice requirement under federal law would be satisfied.

The Flakes now move for a new trial against Arpaio under Rule 59.[2]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 59 provides that the Court "may, on motion, grant a new trial on all or some of the issues—and to any party." Fed. R. Civ. P. 59(a)(1). If a jury trial has concluded, the Court may grant request for a new trial "for any reason for which a new trial has heretofore been granted in any action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).

As is clear, the Rule "does not specify grounds on which a motion for a new trial may be granted." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). Instead, it contemplates "grounds that been historically recognized." *Id*. "Historically recognized grounds include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)) (internal quotation marks omitted). Thus, the "trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Id.* at 729 (quoting *Passatino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000)).

---

[2] The Flakes now ask the Court to vacate the portion of its Summary Judgment Order finding they failed to carry their burden in making a federal claim against Arpaio. (Doc. 278 at 6 n.4) The jury verdict against the Flakes on the state law claim, which has the same elements, proves the federal claim would have failed at trial.

## III. ANALYIS

### A. The New Evidence Is Irrelevant as to Arpaio

Before turning to the *Molski* bases for a new trial, it is worth commenting on the general futility of this Motion. Both parties appear to misunderstand the Motion's purpose.[3] The Flakes will have a trial against Trombi. That trial is not a new trial; Trombi was not a defendant in the first trial. This Motion is about whether to grant a new trial against Arpaio under Rule 59.

There were four elements the Flakes needed to prove by a preponderance against Arpaio: (1) that he "initiated or took active part in the prosecution of a criminal action" against them; (2) that he "acted for a primary purpose other than to bring an offender to justice"; (3) that he brought the action without probable cause; and (4) that his actions damaged the Flakes. The Court directed the jury to find element (3) was satisfied. Thus, the jury must have concluded the Flakes failed to carry their burden on at least one of the other three elements. Because the general verdict returned for Arpaio does not say exactly what the jury thought about each element, the Court must analyze each.

As to element (1), initiating or prosecuting a criminal action, a reasonable juror could have concluded the Flakes did not carry their burden. Arpaio's lengthy press conferences and repeated personal involvement in the case do strongly suggest he was involved in the prosecution. But if the jury was unconvinced on this element, which Defendants contend is plausible for a number of reasons (Doc. 275 at 7-8), the previously undisclosed evidence has nothing to do with whether Arpaio took part in the prosecution and is not a basis for a new trial.

As to element (4), that the Flakes suffered damage is beyond reasonable denial. There was a good deal of undisputed evidence about the distress and other damages the

---

[3] The Motion and supporting Memorandum focus almost exclusively on Trombi. (Doc. 254 at 4-7.) Inexplicably, Defendants spend much of their Response defending Trombi. (Doc. 275 at 3-6, 14-16.) These are arguments for the trial against Trombi. Not until their Reply do the Flakes discuss Arpaio in any depth. (Doc. 278 at 6-9.)

two suffered as a direct result of the prosecution. That element having been established as a matter of law, the new evidence could have no bearing on whether Arpaio should be brought into a new trial.

That leaves element (3), acting with a purpose other than bringing an offender to justice. The primary question is whether the Flakes' new evidence that Trombi allegedly intentionally misled the grand jury could have convinced the jury that Arpaio acted for a purpose other than bringing an offender to justice.

The answer must be no. The Court already explained in its summary judgment order that a reasonable juror could conclude Arpaio brought the case for an improper purpose. The Flakes made that case at the first trial. Evidence of Trombi's potential wrongdoing, unmoored from further connection to Arpaio, is not sufficient for a new trial against Arpaio. It is not evidence of *his* ulterior motive, even if Trombi were doing it to earn her boss's favor.

In their Reply, the Flakes point out that Arpaio was extensively involved in press conferences and argue that his behavior at those conferences, including showing pictures of the dead dogs, went beyond "law enforcement." (Doc. 278 at 6-7.) They also note that Trombi "testified at trial that she repeatedly briefed Arpaio about the investigation . . . ." (*Id.* at 7.) As the Flakes concede, all of this evidence was presented to the jury at the first trial. They offer no connection between the new evidence and Arpaio.

Finally, the Flakes contend that Arpaio should be subject to vicarious liability for Trombi's potentially violating the Flakes' "constitutional rights if he acted with reckless indifference to those constitutional rights." (*Id.* at 7.) A supervisor may be liable for subordinates' unconstitutional acts if the supervisor engaged in "culpable action or inaction in the training, supervision, or control of his subordinates." *Larez v. City of L.A.*, 946 F.2d 630, 646 (9th Cir.1991). The Flakes do not demonstrate that Arpaio knew about the undisclosed/withheld charts. That new evidence does not suggest that Arpaio

knew of or participated in Trombi's alleged misconduct or that he was recklessly indifferent to Trombi's alleged misconduct.

### B. There Is No Legal Basis to Grant a New Trial Against Arpaio

Under *Molski*, there are three bases for granting a new trial: (1) the verdict "is contrary to the clear weight of the evidence," (2) the verdict "is based upon false or perjurious evidence," or (3) there is a need to "prevent a miscarriage of justice." 481 F.3d at 729. Plaintiffs argue only for the first and third basis. (Doc. 247 at 1-2.)

The Flakes argue that the jury's verdict was against the weight of the evidence because "the evidence at trial overwhelmingly supported Plaintiffs' testimony that the air conditioning unit cooling the dog room unexpectedly failed" and "there was absolutely no evidence whatsoever that either Austin or Logan Flake intentionally or purposely subjected the dogs to 'cruel neglect'." (Doc. 247 at 1.) But there was other evidence that other elements failed, so the verdict as a whole could not have been against the weight of the evidence, a demanding standard.

The Flakes also argue the verdict is a miscarriage of justice because "Defendants failed to produce two graphs" created by the Sheriff's Office and the County Attorney's Office. (Doc. 247 at 1.). The relevance of this, according to the Flakes, is that it refutes "Trombi's claim that she (or anyone, including Steinberg [the prosecutor]) could have reasonably believed" the electrical records showed the air conditioning was "working fine all night." (*Id.* at 2.) In their supporting Memorandum, the Flakes say the graphs impeach Trombi's and Steinberg's trial testimony. (Doc. 254 at 3, 7-12.) Perhaps so. But the Flakes do not link their miscarriage-of-justice theory to Arpaio.

///
///
///
///
///

IT IS THEREFORE ORDERED that Defendants' Motion for a New Trial (Doc. 247) is denied.

Dated this 31st day of May, 2018.

_____
Neil V. Wake
Senior United States District Judge