Stephen M. Dichter, 004043
sdichter@cdslawfirm.com
J.P. Harrington Bisceglia, 026606
jphbisceglia@cdslawfirm.com
**CHRISTIAN DICHTER & SLUGA, P.C.**
2700 North Central Avenue, Suite 1200
Phoenix, Arizona 85004
Telephone: (602) 792-1700
Facsimile: (602) 792-1710
*Attorneys for Defendant Marie Trombi*

Jeffrey S. Leonard (SBN 003809)
Jeffrey.Leonard@SacksTierney.com
Evan F. Hiller (SBN 028214)
Evan.Hiller@SacksTierney.com
**SACKS TIERNEY P.A.**
4250 N. Drinkwater Blvd., 4th Floor Scottsdale, AZ 85251-3693
Telephone:  480.425.2600
*Attorneys for Defendant Maricopa County*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Austin and Logan Flake, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>Joseph Michael Arpaio; et al.,<br><br>Defendants. | Case No. CV-15-01132-PHX-NVW<br><br>**DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' UNAUTHORIZED IMPROPER REPLY TO RESPONSE TO MEMORANDUM REGARDING CONSTITUTIONAL BASIS; ALTERNATIVELY, SUR-REPLY TO UNAUTHORIZED REPLY** |

Defendants Marie Trombi and Maricopa County move, first, to strike Plaintiffs' unauthorized and, therefore, improper Reply to Defendants' Response to Plaintiffs' Memorandum Regarding the Constitutional Basis for a Malicious Prosecution Claim (Doc. 299). In its order directing what the Parties should file and by what date, the Court did not authorize Plaintiffs to file a Reply. (Doc. 291). This motion to strike is authorized by LRCiv 7.2(m)(1) in that Plaintiffs' reply was not authorized by court order.

Defendants also note the unauthorized reply improperly raises new arguments, which could have, and should have been raised in the initial filings due on June 20, 2018 and June 27, 2018.

Legal arguments raised for the first time in reply are deemed waived. *See United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). The rule that a party must present all of its evidence or raise all of its legal arguments in a substantive brief, rather than in reply, is grounded in the notion of fairness. Each time a party is permitted to raise new arguments or present new evidence in reply, absent the Court granting leave for the non-moving party to file a sur-reply brief, the non-moving party is essentially deprived of the opportunity to address these new contentions. It is obvious that the Court, having not invited Plaintiffs to file a Reply also did not grant Defendants leave to file a Sur-Reply. The most appropriate ruling would therefore be to strike Plaintiffs' unauthorized Reply and, if so, Defendants' Sur-Reply as well, making its ruling based upon the papers it ordered filed and nothing else.

However, the trial is only a few days away. There is little time for the Court to decide, if it does, to permit the Plaintiffs leave to file the unauthorized Reply, to then grant leave to the Defendants to file a Sur-Reply, and to then decide the newly raised constitutional issue, all in time to start trial while also having to decide other issues still undecided.

Consequently, recognizing that we have not been given permission to do so, in the event that the Motion to Strike is not granted, we are going to chance addressing the new basis for a constitutional claim.

Plaintiffs' Reply is, most of all, a recognition that the "due process" basis Plaintiffs urged as the basis for their §1983 malicious prosecution claim cannot stand. There is no constitutional right to not be maliciously prosecuted that can be vindicated by a malicious prosecution suit.

Plaintiffs state that the newly proposed basis is not all that new, having been raised earlier in their Response to Defendants' Motion for Summary Judgment. It is true that the issues were raised but it is equally true that the Court was not convinced that the claims were meritorious enough to forestall the entry of summary judgment.

In short summary, a restriction on the First Amendment "right to travel," which is not even explicitly addressed in the Constitution and, interestingly enough, was explicitly rejected for

2145102.v1

inclusion in the Constitution (though present in the Articles of Confederation) has not, so far as we have been able to find, ever actually supported a Federal malicious prosecution action. Rather, the cases that have examined travel restrictions in the context of a subsequent malicious prosecution lawsuit have considered the Fourth Amendment prohibition against illegal "seizure" of the person.

Travel restrictions are a normal component of being charged with an offense. In Arizona, the Supreme Court requires that every person charged with a crime – felony or misdemeanor – not leave the State without court approval:[1]

**Rule 7.3. Conditions of Release**

**(a) Mandatory Conditions.** Every order of release must contain the following conditions:
(1) the defendant must appear at all court proceedings;
(2) the defendant must not commit any criminal offense;
(3) the defendant must not leave Arizona without the court's permission; and
(4) if a defendant is released during an appeal after judgment and sentence, the defendant will diligently pursue the appeal.

Of course, anyone under the Court-imposed, mandatory, travel restriction, may ask for relief and, in this case, the Plaintiffs asked to leave the State between Christmas and New Years and the unopposed request was granted. Had their counsel asked at the initial appearance, which was also the arraignment, interstate travel permission could obviously have been granted *ab initio*.[2]

Similarly, the Federal Bail Reform Act of 1984, 18 U.S.C. §3142, also authorizes District Courts to restrict a defendant's travel up to and including a presumption of pretrial detention. While not initially "mandatory," it cannot reasonably be argued that the powers of State judges

---

[1] In the case of misdemeanors, the conditions of release are required to be reconsidered within 10 days of arraignment but nothing requires the interstate travel restriction to be relaxed. *See* Ariz. R. Crim P., Rule 7.4(f).

[2] One must ask, since it would appear axiomatic that the damages, if any exist, must flow from the denial of a specific constitutional right, that, perhaps, it is well and good that Plaintiffs have now identified as the supposed constitutional right violated, one that can produce no more than nominal damages.

and District Court judges are any different in this regard. Both the State and Federal systems allow most persons charged to be held in pretrial confinement or to be released on bail. In many cases, release is accompanied by many liberty restrictions: home confinement, ankle bracelets, monetary bail requirements, providing detailed financial disclosures, surrender of passports, mandatory reporting to pretrial services, surrender of weapons, and even waiver of Fourth Amendment rights to be free from warrantless search, are all sometimes imposed.

If Plaintiffs' argument is correct, then every time a Court orders a Defendant held without bail or sets bail in an amount the defendant cannot post, or restricts a person's right to travel, or imposes some other restriction upon personal liberty, a constitutional violation of the Defendant's "right to travel" occurs. And, of course, the fact of the restrictions, including the imposition of a travel ban would seemingly authorize a follow-on Federal malicious prosecution action. Yet, there have been very few such cases.

*Karam v. City of Burbank*, 352 F.3d 1188 (9th Cir. 2003) was one such "travel" case. *Karam* established that travel restrictions do not rise to the level of Fourth Amendment "seizures,"[3] at least they do not in cases involving misdemeanors. Here, the Flakes were charged with misdemeanors but also with felonies. For felonies, the rule is not hard and fast but appears to be examined based upon, and with an eye towards, the nature of the pretrial restrictions at issue.

In *Santana v. County of Yuba*, 2016 WL 1268107 (E.D. Cal. 3/31/2016), the District Court analyzed and applied *Karam* in the case of persons charged with felonies who, like the Flakes, had been released on their own recognizance with no restrictions other than on interstate travel. The reasoning of Judge Kimberly Mueller, while not binding on this Court, provides a sound basis for concluding that the Flakes do not have a constitutional claim. The judge looked beyond the mere fact that felonies had been charged, to the conditions of release and concluded that persons

---

[3] Cases that deal with travel are analyzed under the Fourth Amendment; not the First Amendment.

released on recognizance and facing travel restrictions had not been "seized" for purposes of the Fourth Amendment.[4]

Another District Court's analysis of *Karam* worthy of the Court's attention is Judge Robert Coyle's decision in *McCabe v. Hart*, 2004 WL 7333020 (E.D. Cal. 12/09/2004). It reviewed the holdings in courts across the Nation and concluded,

> There is nothing so severe in Plaintiff's case or alleged in the proposed FAC that elevates it into the realm of Evans, Gallo and Murphy. In considering what actually happened to Plaintiff, as those courts did, there is a marked contrast in these cases. Plaintiff did not have to post a bond, meet with pretrial services or furnish financial information to the authorities. Plaintiff's prosecution lasted one month, during which time he had to appear in court only twice, and only once under the authority of the pretrial restrictions. In contrast, the plaintiffs in Murphy and Gallo who had to make numerous appearances over the course of nearly a year.

Before reaching that conclusion, the Judge discussed the split among the Circuits.

> As discussed in Karam, 352 F.3d at 1193, the Fourth and Seventh Circuits have rejected the notion that pretrial release restrictions may constitute a seizure. In Riley v. Dorton, 115 F.3d, 1159, 1164 (4th Cir. 1997), and Wilkins v. May, 872 F.2d 190, 194 (1989), both courts held that a seizure occurs only when there is an actual detention.

> The Second, Third, and Fifth Circuits have all concluded that pretrial release restrictions may, at some point, amount to a seizure. In Evans v. Ball, 168 F.3d 856, 860–61 (5th Cir. 1999), the plaintiff faced an eight–count felony indictment for knowingly making and using a false document. The Fifth Circuit held that the plaintiff's "summons to appear in court, coupled with the requirements that he obtain permission before leaving the state, report regularly to pretrial services, sign a personal recognizance bond, and provide federal officers with financial and identifying information, diminished his liberty enough to render him seized under the Fourth Amendment." Id. at 861.

> In Gallo v. City of Philadelphia, 161 F.3d 217, 224–25 (3rd Cir. 1998), the Third Circuit also found a seizure. In Gallo, the plaintiff's liberty was restricted by the following: "he had to post a $10,000 bond, he had to attend all court hearings including his trial and arraignment, he was required to contact Pretrial Services on a weekly basis, and he was prohibited from traveling outside New Jersey and

---

[4] The Flakes were charged with Class 6 felonies. Had they been convicted, the sentencing judge had the authority to enter judgments for Class 1 misdemeanors, rather than felonies, if she or he viewed the felony convictions as too harsh. *See* A.R.S. §13-604.

Pennsylvania." Id. at 222. The Court concluded that because the plaintiff's "liberty was restrained through travel restrictions and mandatory court appearances over an eight and a half month period," he was seized. Id. at 225.

In Murphy v. Lynn, 118 F.3d 938 (2d Cir. 1997), the Second Circuit also held pretrial release restrictions to be a seizure. There, the plaintiff was facing two felony charges and was ordered to "return to court whenever his presence was required" and to not leave the State of New York while the charges were pending. Id. at 942. Over the course of a year the plaintiff made eight court appearances, as required. Id.

Since *McCabe, supra.,* decided in 2004, there have been other holdings worthy of consideration.

In *Bielanski v. County of Kane,* 550 F.3d 632, 637 (7th Cir. 2008), the Court found that although the defendant, who had been falsely accused of sexual abuse of a 6 year old, had been required to be interviewed by a probation office and whose travel was restricted, had not been "seized" under the Fourth Amendment:

> Other circuits have addressed whether a summons, alone or in combination with pre-trial restrictions, constitutes a seizure, and the answer varies, depending largely on the severity of the restrictions on freedom of movement. The Tenth Circuit declined to recognize a Fourth Amendment claim based on a groundless charging decision "absent a significant restriction on liberty." *Becker v. Kroll*, 494 F.3d 904, 915–16 (10th Cir.2007). Becker was a physician subjected to a baseless investigation and prosecution for Medicaid fraud. Her records were subpoenaed, and she was threatened with criminal prosecution if she failed to pay a requested settlement, even though an independent review of her records demonstrated that she had not engaged in any wrongdoing. When Becker refused to settle, the state first filed a civil suit against her and then pursued criminal charges. She was subjected to a preliminary hearing and was bound over for trial, but was never taken into custody. The civil and criminal cases were dismissed but Becker was then subjected to an administrative proceeding that resulted in a finding that she had not engaged in fraud. Because Becker never was required to post bond or appear in court, and alleged no specific restrictions on her freedom of movement (such as travel restrictions), the court found that she was not seized for Fourth Amendment purposes. *Becker*, 494 F.3d at 915–16. See also *Kingsland v. City of Miami,* 382 F.3d 1220, 1235–36 (11th Cir.2004) (finding no seizure for Fourth Amendment purposes when plaintiff was required to post $1000 bond, appear at her arraignment, and travel twice from New Jersey to Florida to defend herself in court); *Karam v. City of Burbank,* 352 F.3d 1188, 1193–94 (9th Cir.2003) (required signing of "own recognizance" agreement which obligated woman falsely accused of a misdemeanor to obtain court's permission before leaving state, and which compelled her appearance in court amounted to de minimis

2145102.v1

restrictions not constituting a Fourth Amendment seizure); *Nieves v. McSweeney,* 241 F.3d 46, 56 (1st Cir.2001) (declining to find a seizure based on compelled presence at numerous pre-trial court appearances and at trial, in the absence of a required bond or travel restrictions); *DePiero v. City of Macedonia,* 180 F.3d 770 (6th Cir.1999) (finding no Fourth Amendment seizure where government conduct consisted of an officer issuing a citation that required a court appearance); *Riley v. Dorton,* 115 F.3d 1159, 1162 (4th Cir.1997) (refusing to apply Justice Ginsburg's continuing seizure theory to a claim of excessive force against pre-trial detainees, instead applying the Due Process Clause of the Fourteenth Amendment, and collecting cases that analyze at what point, short of arrest, an individual may have suffered a deprivation of personal freedom sufficient to implicate the Fourth Amendment).

*Id.* at 639. The *Bielanski* court went on to state:

> The Fifth Circuit, like the Third, concluded that a summons, combined with certain onerous pre-trial restrictions, may constitute a seizure for Fourth Amendment purposes. *Evans v. Ball,* 168 F.3d 856, 861 (5th Cir.1999), overruled on other grounds by *Castellano v. Fragozo,* 352 F.3d 939 (5th Cir.2003). In response to a summons, Evans appeared in court to answer charges he later alleged were baseless. He was fingerprinted, photographed, and required to sign a personal recognizance bond. He was required to report to pretrial services once a month, was prohibited from traveling outside the state without the permission of the court, and was required to provide federal officers with financial and identifying information. 168 F.3d at 860–61. The court found that the summons, in combination with these pretrial restrictions, diminished Evans' liberty enough to render him seized under the Fourth Amendment. 168 F.3d at 861. **However, because it was not clearly established that a summons and pretrial restrictions constituted a Fourth Amendment seizure, the court found the defendants were entitled to qualified immunity. 168 F.3d at 862.**

*Id.* at 640 (emphasis added).[5]

In this District, Judge David Bury reached the same conclusion in *Kaufman v. Pima County*, 2014 WL 12538174 (D. Ariz. 1/21/2014). In *Palmer v. Savona*, 2013 WL 4478945 (D. Ariz. 8/21/2013), Judge Teilborg similarly found that pretrial conditions not amounting to more than *de minimis* restrictions on liberty, did not rise to the level of a Fourth Amendment seizure. While Judge Teilborg noted the absence of a claim that pretrial travel had been restricted, he

---

[5] We highlighted the portion of the quote from *Bielanski* because it suggests that, were the Court to permit the Plaintiffs to proceed on the basis of a "travel restriction," the qualified immunity issue, which the Court has seemingly taken out of this case, would have new merit.

adopted the view, which he concluded was widely accepted, that *Karam* stood for the proposition that a seizure had not occurred when someone's right interstate travel had occurred. It is observed that *Palmer* was a misdemeanor case but, as the caselaw indicates, the weight of authority bends against the label of the offense with which someone is charged, and instead focuses on liberty restrictions.

If the Court recognizes, as apparently do Plaintiffs, that they have no more legs upon which to stand in urging "due process" as their alleged constitutional underpinning the 1983 malicious prosecution claim and is willing to afford the Plaintiffs the opportunity to now assert a Fourth Amendment violation as their sole constitutional "claim," then the Court should still summarily dismiss the case.

Plaintiffs' release orders, which are listed as Plaintiffs' Exhibits 7 and 8 for trial, are attached to Plaintiffs' "Reply." The modification orders permitting Plaintiffs' interstate travel during the 2014 holiday season, which are attached hereto as **Exhibits A and B**, have been listed as Defendants' Exhibits 93 and 94 for trial. Plaintiffs were thus released ROR. They had no bail or pretrial services reporting requirements. The only court appearance they ever made was for the initial appearance/arraignment. Aside from the travel restriction, they were prohibited from controlling or possessing someone else's animals. While Plaintiffs muse that this forbade them from offering their services as dog watchers, such a claim cannot possibly be taken seriously. Over twenty dogs died in their care, custody, and control. Whether or not they ought to have been held criminally liable, *query* whether undertaking to watch someone else's animal without disclosure would have amounted to fraud or at least negligent misrepresentation by omission. Both Plaintiffs described the night the dogs died as the "worst" day in their lives. There is and has never been a scintilla of evidence that Plaintiffs *ever* wanted to be in the business of animal sitting and, this aside, there is no constitutional right to be an animal sitter for pay.

In conclusion, the Plaintiffs previously raised this argument in opposition to summary judgment, where it was not affirmatively adopted by the Court. When the Plaintiffs were, thereafter, twice directed by the Court to state the constitutional right of which Detective Trombi

2145102.v1

intended to deprive them, they chose "due process." If nothing else, doing so clearly signaled their intent to abandon the travel claim until they finally realized, we suppose, that the Court had clearly signaled that "due process *qua* due process" was circular and unsupportive of a compensable constitutional claim.

If Plaintiffs were permitted to so proceed now, more issues would be raised than would be resolved. As the Court's Order of June 15 (Doc. 288, at 2) noted, quoting *Freeman v. City of Santa Ana,* 68 F.3d 1180, 1189 (9th Cir. 1995), "[t]o prevail, the plaintiff must show that the defendants prosecuted her with malice . . ., *and* that they did so for the purpose of denying her equal protection or another specific constitutional right." Plaintiffs have failed to demonstrate that Defendant Trombi had any such purpose. Defendant Trombi did not forbid the Plaintiffs from traveling, a Court did. This implicates causation. Plaintiffs neglected to ask the Court to not impose the travel restriction at initial appearance, which raises the issue of comparative fault. And, finally, since it seems almost axiomatic that the constitutional violation must be causally and proximately linked to the damages claim – which is, after all – what the suit seeks, Plaintiffs have never raised, let alone disclosed, the nature, kind, or quantum of damages they seek based upon their supposed "seizure" in violation of the Fourth Amendment.

In short, Plaintiffs have, in desperation reached to grasp at some other constitutional right upon which to frame their case. The new basis they chose to raise was unauthorized because it was not raised where it should have been raised. It had been abandoned after the Court bypassed the argument in summary judgment. It is not in the approved Joint Pretrial Order.

It was raised only in an unauthorized Reply to an invited Response which, obviously, convinced Plaintiffs that their confidence in their "due process" position was misplaced, whereupon they abandoned the due process argument in favor of a Fourth amendment argument. If nothing else, this made their position even worse, because, by grasping for a straw, they grabbed no more than a straw. Their new (or revived) Fourth Amendment seizure claim is no better than their due process claim and the case should be dismissed.

RESPECTFULLY SUBMITTED this 4th day of July, 2018.

CHRISTIAN DICHTER & SLUGA, P.C.

By: /s/ *Stephen M. Dichter*
Stephen M. Dichter
J.P. Harrington Bisceglia
*Attorneys for Defendant Marie Trombi*

SACKS TIERNEY P.A.

By: /s/ *Jeffrey S. Leonard*
Jeffrey S. Leonard
Evan F. Hiller
*Attorneys for Defendant Maricopa County*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 4, 2018 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and for transmittal of Notice of Electronic Filing to the following CM/ECF registrants:

Stephen Montoya
Richard Trujillo
Montoya, Lucero & Pastor, P.A.
The Great American Tower
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
*Attorneys for Plaintiffs*

/s/ Evan F. Hiller

2145102.v1

# Exhibit A

Michael K. Jeanes, Clerk of Court<br>
*** Electronically Filed ***<br>
12/22/2014 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR2014-002799-003 DT                    12/18/2014

COMMISSIONER RICHARD L. NOTHWEHR        CLERK OF THE COURT
                                        K. Miller
                                        Deputy

STATE OF ARIZONA                        SHAWN LYNN STEINBERG

v.

AUSTIN LANE FLAKE (003)                 DENNIS I WILENCHIK

MINUTE ENTRY

The Court has reviewed and considered Defendant's Motion to Modify Release Conditions, and good cause appearing;

IT IS ORDERED granting Defendant's motion at this time.

IT IS FURTHER ORDERED permitting Defendant to travel to California on or about 12/25/2014 through 12/28/2014.

# Exhibit B

Michael K. Jeanes, Clerk of Court<br>
*** Electronically Filed ***<br>
12/22/2014 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

| | |
|---|---|
| CR2014-002799-004 DT | 12/18/2014 |

| | |
|---|---|
| COMMISSIONER RICHARD L. NOTHWEHR | CLERK OF THE COURT<br>K. Miller<br>Deputy |

| | |
|---|---|
| STATE OF ARIZONA | SHAWN LYNN STEINBERG |
| v. | |
| LOGAN LAINE FLAKE (004) | DENNIS I WILENCHIK |

MINUTE ENTRY

The Court has reviewed and considered Defendant's Motion to Modify Release Conditions, and good cause appearing;

IT IS ORDERED granting Defendant's motion at this time.

IT IS FURTHER ORDERED permitting Defendant to travel to California on or about 12/25/2014 through 12/28/2014.