Stephen M. Dichter, 004043
sdichter@cdslawfirm.com
J.P. Harrington Bisceglia, 026606
jphbisceglia@cdslawfirm.com
CHRISTIAN DICHTER & SLUGA, P.C.
2700 North Central Avenue, Suite 1200
Phoenix, Arizona 85004
Telephone: (602) 792-1700
Facsimile: (602) 792-1710

Attorneys for Defendant Marie Trombi

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Austin and Logan Flake, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>Joseph Michael Arpaio; et al.,<br><br>Defendants. | Case No. CV-15-01132-PHX-NVW<br><br>**DEFENDANT TROMBI'S RESPONSE TO PLAINTIFF'S JULY 13, 2018 FILING** |

**INTRODUCTION**

Following the scheduling conference conducted on July 6, 2018, Plaintiffs switched gears and elected to ignore what they were instructed to do in Doc. 304. Instead, Plaintiffs proposed an entirely new theory of Constitutional fault. In Doc. 306, dated 7/18/2018, the Court rejected Plaintiffs' attempt.

The post-hearing Order, Doc. 304, stated in material part:

IT IS FURTHER ORDERED, pursuant to Federal Rule of Civil Procedure 56(f), that Plaintiffs show cause why summary judgment should not be entered against them for lack of evidence of each and any of the following:

(1) Evidence that Defendant Trombi acted with the purpose of depriving Plaintiffs of the federal constitutional right of due process;
(2) Evidence that Defendant Trombi acted with the purpose of depriving Plaintiffs of the federal constitutional right of interstate travel;
(3) Evidence that Defendant Trombi acted with the purpose of depriving Plaintiffs of the federal constitutional right of gainful employment;
(4) Evidence that would make the release condition of approval for interstate travel a deprivation of federal constitutional right to interstate travel, in general or in the actual circumstances of Plaintiffs' case, where permission was granted;

(5) Evidence that the release condition of not working in caring for dogs deprived Plaintiffs of the federal constitutional right to employment, including where Plaintiffs never worked in caring for dogs or ever planned to work in caring for dogs; and

(6) Evidence that a release condition excluding specific employment is ever a denial of the federal constitutional right to employment when all other employment is available, including every form of employment the plaintiff has ever had.

The Court ordered Plaintiff to show that there existed genuine issues of material fact precluding an award of summary judgment in favor of Defendant Trombi on the three alleged Constitutional claims.

The Court did not invite Plaintiffs to advance three new theories of liability and has denied the attempt. Nevertheless, the fact that Plaintiffs sought to amend the Third Amended Complaint to add what is called a *Devereaux* claim and to change the First Amendment travel and employment claims into Fourth Amendment claims, impliedly conceded that, as pleaded, the present claims could not sustain Plaintiffs' burden.

Plaintiffs were also not invited to file brand new Declarations of Plaintiffs Austin Flake and Logan Brown, especially if, as we predicted, they would attempt to inject hitherto undisclosed factual allegations that were undisclosed in all the prior testimonial, discovery, and disclosure opportunities available to Plaintiffs.

The Defense objects to the new Declarations under Local Rule 7.2(m) in so far as they fall into the "sham affidavit" category because they deviate from prior sworn deposition and/or trial testimony. *See*, e.g., *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262 (9th Cir.1991).*See also*, *Hardge v. Golden Eagle Distributors*, 2010 WL 5343285 (D. Ariz. 12/22/2010) (Snow, J.); *Chrzaszcz v. United States*, 2015 WL 2193713 (D. Ariz. 5/11/2015)(Teilborg, J.); *Detholoff v. Buchanan*, 2008 WL 4277643 (D. Ariz. 5/16/2008) (Murgia, J.) (re Rule 7.2(m) being the proper procedural vehicle to object, as opposed to a separate motion to strike). Discovery has long since closed. Disclosures are closed. The new facts are not in the Joint Pretrial Order.

What Plaintiffs should have done was to have addressed the Court's numbered paragraphs, one-by-one, setting forth the existing evidence that could sustain one or more of the existing Constitutional claims.

Plaintiffs failed to even address their existing due process or First Amendment claims. Plaintiffs' now-rejected attempt to change due process theories was in an attempt to avoid the ramifications of *Albright v. Oliver*, 510 U.S. 266, 271 (1966) and its progeny, namely that the 14th Amendment does not permit a suit based upon the "right" to not be maliciously prosecuted.

After abandoning the prior contentions, Plaintiffs' summarized their "final" position at p. 13, ll. 2-11 of their July 13, 2018 Pleading.

> In summary, the "specific constitutional right" that Trombi intentionally violated is the right not to be subjected to criminal charges based upon fabricated evidence by a law-enforcement officer under the Due Process Clause of the Fourteenth Amendment. This violation in turn proximately caused the violation of Plaintiffs' Fourth Amendment rights by depriving them their constitutional right to interstate travel and their right to care for the animals of third parties. And of course, Trombi's unlawful misrepresentations and omissions proximately caused Plaintiffs severe emotional distress.
>
> These facts give rise to claims for (1) the deliberate fabrication of evidence, and (2) malicious prosecution—both of which arise under the Due Process clause of the Fourteenth Amendment

The fact that the Plaintiffs' "best and final" position was to identify as the basis for relief, claims they did not, do not, and will not have, means that they have conceded the Constitutional claims upon which they prosecuted this lawsuit against Defendant Trombi are unsupportable. Nonetheless, even though Plaintiffs did not address the existing Constitutional claims, we will.

## PLAINTIFF'S EXISTING CONSTITUTIONAL CLAIMS

In the Third Amended Complaint, Plaintiffs alleged that the *result* of Defendant Trombi's alleged misconduct, was that the Plaintiffs were denied their rights to due process – that is, being prosecuted maliciously – along with their right to travel and their right to work in a chosen occupation, namely, watching animals. (Doc. 101 at ¶78). With respect to due process, as mentioned, *Albright*, *supra.*, and its progeny defeat Plaintiffs' position. There is no Federal Constitutional Due Process right to not be maliciously prosecuted.

Second, Plaintiffs have heretofore contended that the violations of Plaintiffs' due process rights and *First* Amendment rights of interstate travel and to engage in an occupation were the *result* of Defendant Trombi's alleged "lie" and not that the *purpose* underlying her "lie" was to

deliberately or recklessly deny Plaintiffs due process or the right to travel or watch animals (under the First Amendment). Given the chance to support the claims with *evidence* sufficient to defeat summary judgment, they failed to do so and instead urged an entirely new due process claim – one for fabrication of evidence. All the case law cited by Plaintiffs are in support of the rejected fabrication claim. Even the provocative cases cited on p. 12 of Plaintiffs' filing were urged in support of the theory that Plaintiffs' damages were the proximate result of the alleged fabrication. For example, Plaintiffs cited *McRorie v. Shimoda*, 795 F.2d 780, 783 (9th Cir. 1983). In *McRorie*, prison guards assaulted a prisoner with a baton and not in the usual and customary manner. The Court held that the intentional act, if proved, was both an 8th Amendment and a 14th Amendment violation. *McRorie* was not a malicious prosecution claim. Had the Flakes been arrested, they would have been able to have claimed a 14th Amendment violation. Had they been brutalized during an arrest or while in custody, they would have been able to claim both an 8th and a 14th Amendment violation, as in *McRorie*. The facts of that case are incomparable to the facts of this case and the underlying bases of the cases are totally disparate.

Plaintiffs' failure to address the claims they have actually asserted is fatal to their action being permitted to go forward. The types of minimal restrictions placed by a Court on Plaintiffs between mid-November until just after New Years have never been found sufficient to support a Federal malicious prosecution lawsuit under the First Amendment.

Given that Plaintiffs have done nothing to address what the Court required, the Defense needs to add little, if anything, to the points and authorities presented in their Motion to Strike and Sur-Reply (Doc. 300). We incorporate by reference, as if fully set forth herein, Doc. 300 in support of our positions.

**THE NEW DECLARATIONS**

In order to appropriately discuss the Plaintiffs' new declarations, it will be helpful to briefly revisit the Arpaio Motion in Limine Number 1 (Doc. 144 dated 10/27/17), the response (Doc. 155 dated 11/7/17), the transcript of the final pretrial conference (11/14/17), and the Court's Order (Doc. 159 dated 11/14/17).

First, in Doc. 56 (dated 5/11/2016), the Court had modified the scheduling order, setting a December 23, 2016 deadline for all fact discovery. On November 8, 2016, Defendants filed Doc. 105, their Notice of Service of Discovery of Non-Uniform Interrogatories and Second Request for Production on Plaintiffs. When Defendants served their discovery, 45 days still remained in which to complete fact discovery. There was more than sufficient time for Plaintiffs to have objected to the discovery or to have answered it. Under Rules 33(b)(2) and 34(b)(2), responses and/or objections were due within 30-days. Importantly, the discovery was sent out several months *after* the Plaintiffs were deposed. Answers to the discovery were intended to expand upon, flesh out, finalize, and tied-down Plaintiff's claims and damages. The pertinent interrogatories were:

**Interrogatory No. 19**

State in detail all factual and legal (as applied to the facts of this case) bases for Your allegations that the Flakes have been damaged in their reputations and careers, that they have endured death threats, undue stress, anxiety, embarrassment and humiliation, public disrepute, contempt, ridicule, repeated threats of violence, lost income, lost educational opportunities, fear, and depression.

**Interrogatory No. 22**

Provide a calculation of every element of damage You claim to have suffered as a result of the acts of the Defendants, as alleged in this case.

Plaintiffs were in sole and exclusive control of all sources of evidence necessary to provide the required damages disclosure and respond to the interrogatories and document demand. While F.R.Civ.P. Rule 37 provides *an* avenue for a Party to compel responses to discovery, the threat of sanctions is merely the way to either force the information to be provided or punish the refusal to do so after an order. However, it is not the only way to solve the problem. Another way to punish Plaintiffs' refusal to observe the Rules was, and remains, turning their conduct back against them directly.

In a civil case, where a Party refuses to provide information, whether due to the invocation of certain privileges or due to a Party's suppression of evidence (also called "spoliation"), the fact-

finder may adopt an adverse inference from the refusal to provide information. We urge the Court to adopt such an inference here. Doing so is the first of several reasons to disregard the new Declarations. A party cannot refuse to answer the interrogatories and *then* supply, at a Party's own pace and volition, the answers it chooses to supply later.

It seems clear that, if the Flakes had provided a proper disclosure statement and had responded to the interrogatories and RFP's – which were served when the Federal malicious prosecution claim still existed – we would not now face a situation in which new evidence has been forwarded in support of the Constitutional claims. Plaintiffs should have supplied all such evidence before the middle of December, 2016. Respectfully, were the court to decline to draw a negative inference here, it would, seemingly, compound the Plaintiffs' defiance. And, here, we also note that Plaintiffs have never offered a timely excuse for neither objecting nor responding.

The right of the fact-finder to draw an adverse inference from, for example, the invocation of the 5th Amendment privilege against self-incrimination, is embodied in cases such as *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *see also*, *S.E.C. v. Jasper*, 678 F.3d. 1116, 1125 (9th Cir. 2012). Adverse inferences may also be drawn in cases involving spoliation. *See*, e.g., *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1008 (D. Ariz.2011) (Campbell, Judge) and cases cited therein. As Judge Campbell observed, spoliation is considered an abuse of the judicial process and courts are entitled to impose sanctions as part of their inherent powers to manage their own affairs.

During the final pretrial conference on November 14, 2017, the Court and counsel discussed the motion in limine that sought to restrict the presentation of damages. Arpaio and the County, had brought to the Court's attention Plaintiffs' refusal to answer the interrogatories and their failure to disclose their damages or damages theories. The required disclosure is stated below:

> A computation of any category of damages claimed by the disclosing party, making available for inspection and copying under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.

The Plaintiffs' disclosure statement stated as follows:

> Plaintiffs seek awards of nominal, compensatory, and punitive damages against Defendants, in addition to attorney fees and costs. Plaintiffs have also suffered emotional distress as a proximate result of Defendants' misconduct. The amount to be attributed to Plaintiffs' pain and suffering— like any appropriate measure of punitive damages— can only be reasonably calculated by the finder-of-fact at trial.

The Court permitted Plaintiffs to proceed to trial against Arpaio and the County without having complied with disclosure requirements and without having answered the interrogatories and the document demand, because Plaintiffs avowed that they were seeking damages based solely upon emotional distress. Transcript, 11-14-17, pp. 10-13.

The First Amendment Right to Travel and Right to Employment claims require proof of economic loss to go forward. However, the law of the case with respect to damages is that Plaintiffs can only seek damages for emotional distress. Judicial estoppel also applies, since the Plaintiffs won their argument. This is because the sole excuse to not have made disclosure of damages (claims, theories, and dollar amounts) both in the Disclosure Statement and in answers to discovery was because only emotional distress were sought. And, having won the "right" to have not answered discovery or made disclosure, they cannot contend that the restrictions emanating therefrom are no longer applicable.

Whether based upon the contention, tepidly advanced, by Austin Flake with respect to watching animals[1] or the inability of Austin Flake to take on-line credits from BYU after he had been invited to cease and desist physically attending classes (based upon other, earlier, transgression that he refused to disclose), damages for the loss of employment or employment opportunities require actual *proof* of damages, not merely an impassioned plea to a jury. And, actual proof is required, so too was disclosure and answers to pertinent discovery.[2] *See*, e.g., *Felder v.*

---

[1] Any attempt by Mr. Flake to conduct an animal watching service based upon representations of his prior "experience" that failed to disclose the incident of June 19-20, 2014 might well wind him up in the same position as his former in-laws and for the same reason.

[2] We cannot overlook the creeping insertion into the single existing claim for loss of employment – the brief Court order that the Plaintiffs not watch other people's animals - of Mr. Flakes tortured trail at BYU. For reasons he steadfastly refused to discuss at his deposition (*see*, Exhibit A), he had been physically banished from attending classes at BYU. Of course, this refusal, standing alone, has to result in a complete disallowance of any discussion regarding BYU. There is no such thing

*Physiotherapy Associates*, 215 Ariz. 154, 164-166 (App. 2007). Thus, Plaintiffs' excuse for not needing to provide damages discovery and disclosure, which excused its prior failure to do so, and which permitted the December 2017 trial to proceed, now provide the petard by which Plaintiffs are justly hoist. Here, Plaintiffs *need* an economic damages theory and proof of economic damages in order to proceed and, aside from all of Plaintiffs' other problems, it is too late for them to propose and forward either.

In sum, viewed in the context of First Amendment Claims, Plaintiffs' refusal to respond to Interrogatories 19 and 22 and to provide the required disclosures concerning damages must be viewed differently than with respect to claims for mere emotional distress. While, as *Felder* teaches, there may be some uncertainty in the quantum and quality of evidence necessary to place a claim for loss of employment opportunity to a jury, there has to be actual *evidence* of the loss. In *Felder*, which concerned the effect of an injury on the Plaintiff's future employability as a major league baseball player, the evidence consisted of expert testimony.[3] Here, nothing has been claimed; nothing has been disclosed and it is too late to correct the prior refusal.

The First Amendment "right to travel" claim, fares no better. Interrogatory 19 required Plaintiffs to have presented all of their theories of Constitutionally based damages and to have supported them with evidence, including documents. Further, in answering Interrogatory 22, Plaintiffs were required to advance a damages theory, including a calculation, based upon the alleged Constitutional violation. The disclosure statement requirements mandated much of the same. Like the loss of employment, employment opportunity, and loss of educational opportunity - proposed as Constitutional torts - loss of the ability to travel is compensable only if there is some claim of consequential damages proximately related to the actor's deliberate or reckless conduct.[4]

---

as an "it's too private and I won't discuss it" objection at a deposition. He did not seek a protective order after all. If he did not want to discuss it fully then, he cannot be permitted to do so here.

[3] Curiously, beyond stating that emotional distress claims were not capable of precise description, Plaintiffs' counsel have never offered any explanation for why they completely ignored the timely November 2016 discovery.

[4] Which as we have stated in Doc. 300, were conditions *not* imposed by Defendant Trombi, but by the Superior Court. What comes along with permitting these theories to be brought forward are causation and comparative fault – with respect to gaining employment watching animals – and causation and failure to mitigate with respect to the former "travel claim" and present "seizure of

Independent of declining to consider the Plaintiffs' new Declarations because of the Plaintiffs' refusal to answer Interrogatories 19 and 22, an independent reason to decline to accept the new Declarations rests within the "sham affidavit rule." *See*, this Response, *infra*, p. 2, ll. 20-28. Any material differences between the depositions and trial testimony and the current Declarations must be resolved by striking the parts of the Declarations that differ from the prior under oath testimony. There are several material differences. In Exhibit A, we compare the new Austin Flake Declaration with his deposition and trial testimony. Exhibit B does the same for the new Logan Brown Declaration.[5]

As can be seen from Exhibits A and B and their attached sub-exhibits, even if the Court were to accept the Plaintiffs' new Declarations *in toto*, they do not ease, let alone resolve, Plaintiffs' problems. They do not propose that there were any specific (or even general) animal watching opportunities that Plaintiffs forwent during the Thanksgiving to New Year's timeframe in 2014 in which they were under the Court's release order. This failure "answers" the Court's numbered paragraphs 3, 5, and 6, however, unfortunately, for Plaintiffs, the manner in which the new Declarations answer those parts of the Court's order is to not answer them at all.

The same result ought to be observed with respect to the travel contention. Mr. Flake recalls that he declined to ask the Court for permission to visit his parents in Washington, D.C. His recollection faulty. He did ask and the court granted the request. In sum, Plaintiffs' new Declarations do not come anywhere close to adequately responding to Paragraphs 2 and 4 of the Order, which deal with the travel issue.

---

the person" attempted claim. The two requests to travel were approved by the Court. Though Mr. Flake states that he wanted to go to D.C. to visit his parents, but did not ask the Court, his recollection is faulty. When he was arraigned on November 13, 2014, he asked and was granted leave to travel to Washington, D.C. for the December 7-9 period. But, assuming he wanted to go again, his failure to ask would be a failure to mitigate damages. And, if, perchance, he wanted to be able to watch someone else's animals, he could have asked that as well. During the 6 weeks he spent under Court release conditions, Austin Flake asked for permission to travel twice and twice was that permission granted. *See*, Sub-Exhibits to Exhibit A.

[5] We have summarized in **bold italics** in Exhibits A and B, the precise manner in which paragraphs of the new Declarations disagree with prior under oath testimony and other documentary evidence, e.g., Superior Court release orders and minute entries.

9

# MOTION TO AMEND UNDER RULE 15(b)

Plaintiffs asked the Court to permit the amendment of the Third Amended Complaint to "conform with the evidence." The request was denied in Doc. 306.

# CONCLUSION

The Plaintiffs failed and refused to address the Court's six points. The new "facts" sought to be added through the Plaintiffs' declarations ought to be disallowed but, even if the Declarations are accepted, they do not and cannot assist the Plaintiffs. Plaintiffs put all their eggs in the single basket of trying to further amend the Third Amended Complaint in order to change the existing Federal Constitutional claims into new Federal Constitutional claims. Plaintiffs failed. Their attempt proved, parenthetically, that Plaintiffs never met the necessary probable cause standard they needed in order to prosecute their case against Marie Trombi, whose career they have ruined.

In seeking to add the *Devereaux* claim, Plaintiffs continued to unfairly malign Detective Trombi's character. The Court's denial of the Motion to Amend obviates the need to respond to these scandalous allegations, though the temptation to do so remains.

Suffice to state that the heart of the Plaintiff's theory is that the A/C filter was fouled, therefore the A/C/coil froze, and therefore the dogs died. This theory, embraced in the warmth of the absolute judicial privilege, has been used to pummel a good and decent police woman. But, the truth is that theory is, and has always been, completely inaccurate. George Hogge could have had no idea what the A/C filter looked like on June 20, 2014 which was three weeks *before* he saw it on July 9th. But Logan Brown *did*. She testified, with utter clarity, that on Friday, June 13, 2014 only 6 days before the dogs died, she personally observed her father change the A/C filter in Britain's room. (Deposition of Logan Brown at 268:22-269:9; attached as Exhibit C; Trial Day 4 Testimony of Logan Brown at 809:20-810:1, attached as Exhibit D). Consequently, unless she *twice* perjured herself[6] Logan Brown, Austin Flake, and their lawyers have all known that the frozen coil theory was unsupportable.

In final conclusion, the Third Amended Complaint's existing due process claim does not

---

[6] Had she been mistaken in her deposition, she could always have sought to correct her deposition but did not. The fact that she twice testified to the filter being changed on Friday, June 13, 2014 means that she is absolutely certain as to what she saw. There was no conflicting evidence.

support a malicious prosecution action. The Court has already so stated. With respect to the travel and employment claims, it is clear that even Detective Trombi "lied," if the *result* of the conduct in which she is alleged to have engaged was that the Plaintiffs' were not allowed to travel without permission or to watch other peoples' animals, then that *result* is insufficient to support the Federal malicious prosecution charge. Rather, her *purposeful* or *reckless* intent must to have been to deny Plaintiffs the Constitutional rights they asserted in the Third Amended Complaint. No cases have permitted malicious prosecution suits on such grounds. For these reasons, the Court should award summary judgment in Marie Trombi's favor.

RESPECTFULLY SUBMITTED this 19th day of July, 2018.

CHRISTIAN DICHTER & SLUGA, P.C.

By: /s/ Stephen M. Dichter
Stephen M. Dichter
J.P. Harrington Bisceglia
Attorneys for Defendant Marie Trombi

**CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2018 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and for transmittal of Notice of Electronic Filing to the following CM/ECF registrants:

Stephen Montoya
Richard Trujillo
Montoya, Lucero & Pastor, P.A.
The Great American Tower
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
Attorneys for Plaintiffs

Jeffrey S. Leonard
Evan F. Hiller
Sacks Tierney, P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Attorneys for Defendant Maricopa County

/s/ Yvonne Canez