**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Austin Flake and Logan Flake, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>Joseph Michael Arpaio, in his official capacity as Sheriff of the Maricopa County Sheriff's Office, and in his personal capacity along with his wife Ava J. Arpaio; Maricopa County, a political subdivision of the State or Arizona; Marie Trombi, in her personal capacity,<br><br>Defendants. | No. CV-15-01132-PHX-NVW<br><br>**ORDER** |

Before the Court are the parties' responses to its order to show cause pursuant to Federal Rule of Civil Procedure 56(f). (Docs. 305, 309, 311.) For the reasons below, summary judgment will be granted in favor of Defendant Marie Trombi.

**I.  BACKGROUND**

   **A.  Factual Background**

Plaintiffs Austin Flake and Logan Brown (collectively, the "Flakes") sued Defendants Joseph Michael Arpaio ("Arpaio"), Maricopa County (the "County"), and Marie Trombi ("Trombi") under 42 U.S.C. § 1983 and Arizona state tort law. (Doc. 101.)

Logan's parents, Jesse and MaLeisa Hughes, ran a dog kenneling business. (Doc. 134 at 1.) The kennel was a small, air-conditioned room, roughly nine by twelve feet in size, attached to the Hugheses' home. (*Id.* at 2.)

| | |
|---|---|
| 1 | When the Hugheses went out of town in June of 2014, the Flakes watched the |
| 2 | dogs. (*Id.* at 1-2.) The Flakes stayed in the main house, which had its own air |
| 3 | conditioning system. (*Id.* at 2.) Although the "first five days passed without incident," at |
| 4 | around 5:30 a.m. on June 20, 2017, Austin went to the kennel and "found the room so hot |
| 5 | that the twenty-one dogs had either died or grown seriously ill." (*Id.*) |
| 6 | The Maricopa County Sheriff's Office, then led by Arpaio, promised a full |
| 7 | investigation of the incident. (*Id.* at 2.) Trombi, a deputy sheriff, was the appointed |
| 8 | investigator. (*Id.* at 4.) She repeatedly briefed Arpaio on the investigation's status. (*Id.*) |
| 9 | As part of the investigation, an electrical engineer prepared a report concluding the air |
| 10 | conditioning unit was "inadequate and improperly configured" but had been operating all |
| 11 | night. (*Id.* at 3-4.) |
| 12 | The investigation progressed for several months. On September 9, 2014, Arpaio |
| 13 | held a twenty-two minute press conference where he announced he was recommending |
| 14 | the Hugheses and Flakes be charged with twenty-one felony counts and six misdemeanor |
| 15 | counts of animal cruelty. (*Id.*) |
| 16 | On October 10, 2014, a grand jury indicted the Hugheses and the Flakes on those |
| 17 | charges. (*Id.* at 4-5.) Trombi had testified before the grand jury. (*Id.* at 5.) She was |
| 18 | specifically questioned about whether the air conditioning was on and answered that, |
| 19 | according to the electrical records, it was on all night. (*Id.*) The Flakes were not |
| 20 | arrested, but they were prevented from leaving the State of Arizona without permission, |
| 21 | which was granted when requested. (*Id.*; Doc. 309-2, Ex. B at 69, 76.) They were also |
| 22 | prohibited from having "custody or control over another person's animal/pet." (Doc. 134 |
| 23 | at 5.) |
| 24 | On December 2, 2014, the Flakes moved to "return the case to the grand jury in |
| 25 | light of 'material misrepresentations and omissions' in Trombi's testimony." (*Id.*) "It |
| 26 | turned out that the electric company records did show the air conditioner may have |
| 27 | failed." (*Id.*) Three weeks later, the County Attorney's Office voluntarily dismissed the |
| 28 | case against the Flakes. (*Id.*) The County Attorney told the press that the original theory |

of the case, as presented to the grand jury, did not take into account possible problems with the air conditioning unit. (*Id.*)

**B.     This Lawsuit Through Trial**

On June 19, 2015, the Flakes filed this lawsuit, alleging malicious prosecution under state and federal law, defamation, false light invasion of privacy, and First Amendment retaliation. (*Id.* at 6.) After discovery closed, Defendants moved for summary judgment. (Doc. 107.) The Flakes moved for partial summary judgment. (Doc. 114.) The Court granted summary judgment to Defendants on the defamation, false light invasion of privacy, and First Amendment retaliation claims. (Doc. 134 at 19-20.)

The only other claim was malicious prosecution. The Flakes had pleaded malicious prosecution against Arpaio under state law and under federal law, 42 U.S.C. § 1983. They failed to meet Arizona's notice-of-claims deadline against Trombi, so they pleaded malicious prosecution against her only under § 1983.

The Court granted summary judgment to Trombi for the § 1983 malicious prosecution claim. The Court found, at the time, that no reasonable finder of fact could conclude that Trombi "lied to or materially misled the prosecutors." (*Id.* at 9.) "At most the evidence in the record show[ed] she misunderstood the law of animal cruelty but pursued charges against the Flakes in good faith. It [was] not inferable that she knew what she said was false as opposed to mistaken or incomplete." (*Id.*)

In addition, the Flakes failed to offer any evidence that Trombi or Arpaio intended to deny them a specific constitutional right. (*Id.* at 12-13.) The intent-to-deny element is necessary under § 1983, so the federal malicious prosecution claims against both Trombi and Arpaio failed.

The intent-to-deny element, however, is not part of the state-law tort, and the Court found there was enough evidence for the state-law malicious prosecution claim against Arpaio to proceed. A reasonable finder of fact could have concluded from Arpaio's statements to the press "that prosecutors brought charges because of the

pressure from Arpaio and the representations he and his office made about the investigation." (*Id.* at 9.) The Court also determined, as a matter of law, that the prosecutors did not have probable cause to charge the Flakes. (*Id.* at 11.) No reasonable person could have concluded that the Flakes, as the statute required, "knowingly or intentionally" subjected the dogs "to cruel neglect or abandonment." (*Id.* at 12.) The Court therefore granted partial summary judgment to the Flakes on that element. (*Id.* at 21.)

The action thus proceeded to trial only on the state-law malicious prosecution claim against Arpaio and the County. On December 15, 2017, the jury returned a general verdict of no liability for the defendants. (Doc. 187.)

During the trial, new evidence surfaced as to Trombi. Graphs prepared by the Sheriff's Office and the County Attorney's Office suggested the air conditioning unit failed during the night. Trombi had seen the graphs prior to her grand jury testimony. Thus, a reasonable finder of fact could have concluded that Trombi knew what she said to the grand jury was false or misleading. Accordingly, the Court vacated the portion of its order granting summary judgment to Trombi on the § 1983 malicious prosecution claim. (Doc. 182.)

### C. Events Following the Trial

In § 1983 malicious prosecution actions, a plaintiff must prove "that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). In the Court's discretion, it would have been unfair in reconsidering Trombi's Motion for Summary Judgment to rely only on the lack of intent-to-deny evidence from the stale, pre-trial record. The Court therefore allowed limited additional discovery and set a firm trial date of July 9, 2018, for the claim against Trombi. (Docs. 203, 218, 281.)

At the June 7, 2018 final pretrial conference, the Flakes failed to produce jury instructions that identified the specific constitutional right Trombi purposefully violated.

The Court ordered them to submit "an instruction on the substantive law of the constitutional right" they intended to prove satisfied that element of the claim. (Doc. 288 at 2.) In response, they provided the Court with "the unsupported assertion that the Fourteenth Amendment guarantees a due process right to be free from malicious prosecution." (Doc. 291 at 1.) The Court gave the Flakes another chance, ordering them to produce "a brief with legal authorities establishing the existence of their claimed constitutional right." (*Id.* at 1-2.)

The Court held a further final pretrial conference on July 6, 2018, to discuss the briefing submitted on the issue. (Doc. 303.) In their brief, the Flakes argued that "Trombi's repeated misrepresentations and omissions to the County Attorney proximately resulted in a deprivation without due process of the Flakes' liberty interests to travel and engage in an occupation," namely the ability to care for the pets of third parties. (Doc. 299 at 4.) The Court concluded that the Flakes "still could not identify, before the July 9, 2018 trial date, evidence supporting a cognizable violation of a federal right." (Doc. 304 at 1.) It then gave notice under Rule 56(f) that it was disposed to grant summary judgment and ordered the Flakes "to show cause why summary judgment should not be entered" in Trombi's favor. (*Id.*) It required them to submit evidence to a summary judgment standard that Trombi acted with the purpose of depriving the Flakes of the constitutional rights of due process, interstate travel, or gainful employment. (*Id.* at 2.)

The Court now considers the evidence submitted and the accompanying brief. (Doc. 305.)

## II. ANALYSIS

"After giving notice and a reasonable time to respond, the court may consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f)(3). Summary judgment should be granted if the evidence reveals no genuine dispute about any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one that

might affect the outcome of the suit under the governing law, and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> **A. The Flakes Have Failed to Raise a Genuine Issue of Material Fact About Whether Trombi Intended to Deprive Them of a Constitutional Right**

"Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citation omitted).

The Court ordered the Flakes to produce evidence that Trombi acted with the purpose of depriving them of the constitutional rights of due process, interstate travel, or gainful employment. The sole portion of the Flakes' brief that is responsive to the Court's order focuses only on travel restrictions. (Doc. 305 at 10-12.) Travel restrictions in § 1983 cases are analyzed for whether they constituted unlawful seizures under the Fourth Amendment. *See Karam v. City of Burbank*, 352 F.3d 1188, 1193 (9th Cir. 2003). The Court of Appeals has found travel restrictions "de minimus," and therefore not an unlawful seizure, where (1) the plaintiff was not charged with a felony, (2) the plaintiff was not required to report to anyone, and (3) the plaintiff could obtain the court's permission to leave the state. *Id.* at 1194.

The Flakes were not unlawfully seized. They were released on their own recognizance and were able to seek permission to leave the state—permission they sought and received. (Doc. 309-2, Ex. B at 69, 76.) They were also not required to report to anyone other than for court proceedings. (*Id.* at 69.) Although the Flakes were charged with felonies, that is not dispositive. *See McCabe v. Hart*, 357 F. App'x 151, 153 (9th Cir. 2009) ("The contours of the holding in *Karam* are not entirely defined as to the significance, by itself, of the felony charge. Further, our sister circuits are not in accord."). As a matter of law, the Flakes suffered no Fourth Amendment violation.

Moreover, despite many opportunities, the Flakes still offer no evidence that Trombi acted with the *intent* to deny them any constitutional right, Fourth Amendment or otherwise. Without the purpose or intent to deprive a person of his federal constitutional rights, there is no federal tort. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 919 (9th Cir. 2016) (en banc). Notwithstanding the Flakes' assertions, the Constitution does not contain a substantive due process right to be free from malicious prosecution. *Albright*, 510 U.S. at 273-75. Otherwise, all state-law malicious prosecution claims against a state actor could also be brought in federal court as a federal § 1983 claim.

In properly pleaded § 1983 malicious prosecution cases, the plaintiff will point to particular constitutional rights deliberately infringed upon by the defendant—such as the First Amendment right to free speech in an election campaign or the Fourteenth Amendment right to equal protection free from racial animus. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1070-71 (9th Cir. 2004). The Flakes have failed and continue to fail to present any evidence that Trombi intended to infringe upon any such right.

For these reasons, the Flakes have not raised a triable issue of fact as to whether Trombi purposefully deprived them of a constitutional right. They cannot prove an element of their § 1983 malicious prosecution claim. Summary judgment must be granted in Trombi's favor.

**B.** **The Flakes' Claim of Deliberate Fabrication Is Belated and Prejudicial**

The Flakes focus their brief almost entirely on a new cause of action: fabrication of evidence. (Doc. 305 at 2-10.) They even ask for leave to amend to plead the claim. (*Id.* at 9.) The Flakes rely on *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc), where the Court of Appeals explained "that there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."

The Court has already denied the Flakes leave to amend (Doc. 306), but some additional comments are warranted. As a threshold matter, the motion was procedurally flawed. The Flakes styled their motion as one to conform to the evidence under Federal

Rule of Civil Procedure 15.  (Doc. 305 at 9.)  "There has been no trial as against Defendant Trombi to which the pleadings could be conformed."  (Doc. 306 at 2 (citing Fed. R. Civ. P. 15(b)(2).).  The Flakes also failed to attach a proposed amended complaint, in violation of the Local Rules.  LRCiv 15.1(a).

But even if the Flakes had presented a proper motion to amend the complaint, the Court would have denied it.  "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).  Those factors weigh strongly against allowing amendment here.  If the Flakes believe Trombi fabricated evidence, they should have so alleged earlier.  Nothing explains the Flakes' failure to attempt to plead a *Devereaux* claim before the eve of trial.

The proposed fourth amendment is highly prejudicial to Trombi.  Discovery was not conducted with deliberate fabrication in mind, and rebutting deliberate fabrication would require different evidence and reopening discovery.  The Court of Appeals has stated, in dictum, that deliberate fabrication is "similar to the tort of malicious prosecution," but it has not held that they are the same.  *Bradford v. Scherschligt*, 803 F.3d 382, 388 (9th Cir. 2015) (citing *Awabdy*, 368 F.3d at 1066).  Nor should the torts be construed as the same, as they have distinct elements and lines of cases.  *Compare Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) ("To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty."), *with Freeman*, 68 F.3d at 1189 (Section 1983 malicious prosecution actions require a plaintiff to prove "that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another specific constitutional right.").

The cases the Flakes cite do not override the *Johnson* amended-pleading factors—they apply them.  *See, e.g., Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024,

1038 n.4 (9th Cir. 2016); *Desertrain v. City of L.A.*, 754 F.3d 1147, 1154-55 (9th Cir. 2014). Further, all of the cases cited address grants of leave to amend at the summary judgment stage, well in advance of trial, not on the eve of trial. *Johnson* makes clear that the Court has discretion regarding whether to allow leave to amend, 356 F.3d at 1077, and the Court's discretion is not to allow the Flakes' new, belated claim.

IT IS THEREFORE ORDERED that the Clerk of Court enter judgment in favor of Defendant Marie Trombi against Plaintiffs Austin Flake and Logan Brown and that Plaintiffs take nothing.

All claims against all parties having been disposed of, the Clerk shall terminate this case.

Dated this 6th day of August, 2018.

_____
Neil V. Wake
Senior United States District Judge